# EXHIBIT 9

# In the Matter of:

# ONF Enterprises, LLC v. USA

*February 15, 2024*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**1**

```
 1        IN THE UNITED STATES COURT OF FEDERAL CLAIMS
 2
 3
 4   ONF ENTERPRISES, LLC,          ) Case No.
 5             Plaintiff,           ) 23-704L
 6        vs.                       )
 7   THE UNITED STATES OF AMERICA,  )
 8             Defendant.           )
 9
10
11
12                  Courtroom 4
13        Howard T. Markey National Courts Building
14              717 Madison Place, N.W.
15                 Washington, D.C.
16            Thursday, February 15, 2024
17                    2:00 a.m.
18                  Oral Argument
19
20
21        BEFORE:  THE HONORABLE STEPHEN S. SCHWARTZ
22
23
24
25   Reported by:  Karen Willoughby, CER, Digital Reporter
```

**2**

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFF:
 3             THOMAS L. HALKOWSKI, ESQ.
 4             KURT GLITZENSTEIN, ESQ.
 5             Fish and Richardson (DC)
 6             901 15th Street, NW
 7             Washington, DC 20005
 8             (202) 783-5070
 9             halkowski@fr.com
10
11
12   ON BEHALF OF THE DEFENDANT:
13             BORISLAV KUSHNIR, ESQ.
14             MATTHEW LEWIS, ESQ.
15             U. S. Department of Justice - Civil Division
16             Post Office Box 480
17             Ben Franklin Station
18             Washington, DC 20044
19             (202) 616-1061
20             jenna.e.munnelly@usdoj.gov
21
22   ALSO PRESENT:
23        Gayle Nix-Jackson
24        Jeffrey Landou, NARA
25
```

**3**

```
 1             P R O C E E D I N G S
 2             -  -  -  -  -
 3        (Proceedings called to order, at 2:02 p.m.)
 4        THE CLERK:  The United States Court of Federal
 5   Claims is now in session, the Honorable Stephen S.
 6   Schwartz presiding.
 7        THE COURT:  Please be seated.
 8        Afternoon, everyone.
 9        MR. KUSHNIR:  Afternoon, Judge.
10        MR. HALKOWSKI:  Good afternoon.
11        THE COURT:  We're here for argument on the
12   Government's motion to dismiss in ONF Enterprises, LLC
13   versus United States, Number 23-704L.
14        Can counsel please identify themselves for the
15   record, starting with the Plaintiff.
16        MR. HALKOWSKI:  Good afternoon, Your Honor.  My
17   name is Tom Halkowski.  I'm with Fish and Richardson on
18   behalf of the Plaintiff.  And with me today is Kurt
19   Glitzenstein, also with Fish.  He'll be doing the bulk of
20   the argument this afternoon.  And joining with us this
21   afternoon, also, is Ms. Gayle Nix-Jackson, actually the
22   granddaughter of Orville Nix, the person who actually,
23   you know, took the film that this is all about.
24        THE COURT:  Good to meet you all.  Mr.
25   Halkowski, what's your colleague's name?
```

**4**

```
 1        MR. GLITZENSTEIN:  It's Kurt Glitzenstein, Your
 2   Honor.
 3        THE COURT:  Glitzenstein, all right.
 4        MR. GLITZENSTEIN:  Yes.  Also with Fish and
 5   Richardson, Your Honor.
 6        THE COURT:  Okay.  And for the Government?
 7        MR. KUSHNIR:  Good afternoon, Your Honor.
 8   Borislav Kushnir for the United States.  I'm joined by
 9   Matthew Lewis, also from the Department of Justice, and
10   by Jeffrey Landou from the National Archives.
11        THE COURT:  Good to meet you all.
12        All right.  I thought today I'd hear first from
13   the United States because it's their motion and then from
14   the Plaintiff.  Usually what I do, since I'm familiar
15   with the pleadings and the briefs, is I suggest that you
16   take a couple minutes to focus on anything in particular
17   that you'd like to amplify or add and then I'll give you
18   a few moments for that before I start jumping in.
19        MR. KUSHNIR:  Sure, thank you, Your Honor.
20   Good afternoon.  Your Honor, this takings case, which
21   concerns a recording of the assassination of President
22   John F. Kennedy in 1963, was filed with this Court 45
23   years after the Government initially retained the
24   recording, 30 years after the Government allegedly
25   appropriated the recording for the United States, and
```

5

1   seven and a half years after the predecessor to the
2   Plaintiff in this case, Ms. Gayle Nix-Jackson, knew
3   everything she needed to know to file a virtually
4   identical takings claim in the wrong forum. Any way you
5   look at this case, Your Honor, it is well outside the
6   six-year statute of limitations within 28 USC Section
7   2501.
8           Now, in a takings case like this one where the
9   Government is not challenging, at least not at this
10  stage, whether the Plaintiff has a cognizable property
11  interest in the property that's being disputed, the
12  Federal Circuit tells us that the first thing that has to
13  happen, the very first thing that the Plaintiff has to
14  do, is they have to pinpoint the precise governmental
15  action that amounts to a taking of property in the case.
16          Now, it's not entirely clear from ONF's
17  position so far in the litigation what that precise
18  governmental action is, but from their complaint and from
19  their response to the motion to dismiss, it appears as
20  though they're alleging that the taking was done through
21  the JFK Records Act, a statute that was passed by
22  Congress in 1992. And there's two major problems with
23  that argument.
24          The first one is that the JFK Records Act does
25  not appropriate anything. It does not use language of

6

1   appropriation. It doesn't say anything about
2   appropriating or acquiring items for the United States.
3   It doesn't talk in terms of transferring title or rights
4   or ownership in items. It doesn't say any of that. All
5   it says when it comes to records of the assassination is
6   that agencies that have those records must transfer those
7   records to the National Archives, so a physical transfer
8   from one agency to another.
9           To see that the JFK Records Act does not have
10  language of appropriation, all the Court has to do is to
11  compare that statute with Public Law 89-318, another
12  statute that Congress passed in 1965. That statute
13  expressly talks about acquiring records for the United
14  States. It talks about acquiring title, acquiring rights
15  to records. It sets up a procedure for which the
16  Government can identify the records it would like to
17  acquire. It even sets up a process for getting just
18  compensation for the records that the Government will
19  acquire. None of that is in the JFK Records Act.
20          And what Public Law 89-318 shows is that when
21  Congress wants to appropriate records, and even more
22  specifically, records of the assassination of President
23  John F. Kennedy, it knows what language to use and knows
24  how to do that. And the fact that it did not use any of
25  that language in the JFK Records Act shows that the JFK

7

1   Records Act does not appropriate anything and does not
2   authorize the appropriation.
3           The other major issue with their argument is
4   that any claim based on the JFK Records Act is now
5   untimely. The Federal Circuit has said time and again
6   that legislative takings, that is a taking that is done
7   through the passage of legislation, accrues as soon as
8   the legislation becomes law. Here, the JFK Records Act
9   became law in 1992. That means that the six-year statute
10  of limitations on any claims under the JFK Records Act
11  expired in 1998, six years later. It seems as though ONF
12  is trying to argue that the claim perhaps -- the accrual
13  of the claim perhaps was suspended until a later point,
14  maybe 2021, when they received additional information
15  from Aerospace, the laboratory that reviewed the Nix film
16  in the 1970s.
17          But what we know is that for accrual suspension
18  to apply, the standard is knew or should have known that
19  the claim existed. The Federal Circuit articulated that
20  standard in Martinez.
21          What we know from the complaint and from the
22  exhibits to the complaint is that the predecessor to ONF,
23  Ms. Nix-Jackson, knew, or in this case believed, that the
24  Government continues to possess the original Nix film.
25  She sent a letter to the National Archives in 1991

8

1   demanding the return of the Nix film. That's Exhibit 2
2   to the complaint. She filed a complaint in D.C. District
3   Court, again, demanding the return of the original Nix
4   film. That's Exhibit 27 to the complaint. Those things
5   show that Ms. Nix-Jackson knew of her claim or at least
6   understood that there was a claim well before 2017, which
7   is six years before the claim was filed.
8           So even when we apply the knew-or-should-have-
9   known standard from Martinez, the claims are still
10  untimely.
11          THE COURT: So let's talk about the -- let's
12  talk about the substantive issue first and then we'll
13  talk about the statute of limitations issue. So the
14  allegation that the Government is in possession of the
15  Nix film, that's a factual claim that I have to assume to
16  be correct at this stage, right?
17          MR. KUSHNIR: Yes, that's correct.
18          THE COURT: All right. So right now, assuming
19  the Nix film exists and that it's in the possession of
20  the Archives, who owns it?
21          MR. KUSHNIR: Well, that's a tricky question,
22  Your Honor, because the Government does not possess the
23  Nix film, but I -- and I understand you have to assume --
24          THE COURT: Yeah, and don't fight the
25  hypothetical at this --

2 (Pages 5 to 8)

9

1      MR. KUSHNIR:  Right.
2      THE COURT:  Who owns it?
3      MR. KUSHNIR:  I think it might depend on how
4  the Nix film would have reached the Government if the
5  Government had had the film.  If it had reached the
6  National Archives through the Warren Commission, after
7  the Warren Commission reviewed it, then it is possible
8  that Public Law 89-318 would apply and the film would be
9  appropriated to the Government through that Act.
10     THE COURT:  But I don't think that's the
11 allegation in the complaint.
12     MR. KUSHNIR:  It's not the allegation, that's
13 right.
14     THE COURT:  Okay.  So -- okay.  So who owns it?
15     MR. KUSHNIR:  So if that were to apply, then
16 the Government would not own it and it would have to
17 return it to ONF, as long as ONF truly is the successor-
18 in-interest.
19     THE COURT:  I'm sorry.  So if the Public Law,
20 whatever it is, 318 doesn't apply, then ONF -- then ONF
21 owns, assuming the allegations in the complaint about --
22 about the transfer from Ms. Nix-Jackson to ONF are true?
23     MR. KUSHNIR:  Yes, I think that's right.  Then
24 the Government would have to return the film to Mr. Nix's
25 heirs.

10

1      THE COURT:  Okay.  So the JFK Records Act seems
2  to say that the Government will keep permanent possession
3  of the assassination records, though, doesn't it?  At
4  least that's the interpretation advanced by the Plaintiff
5  and I don't think you've disagreed with that.
6      MR. KUSHNIR:  I have not disagreed with that,
7  but what the JFK Records Act says is keeping permanent
8  possession of what's defined as an assassination record,
9  and what's defined as an assassination record is a record
10 that is in the possession -- already in the possession of
11 a government agency, and that's simply not the case with
12 the JFK Records Act.
13     THE COURT:  Wait.  Is that fighting a
14 hypothetical again or is that --
15     MR. KUSHNIR:  Well, it's --
16     THE COURT:  Because, I mean, assume that the
17 Nix tape found its way into the Government's possession
18 by the time of the -- by the time of the JFK Records Act
19 -- I mean, in that case, the JFK Records Act -- I mean,
20 the Government's in permanent possession, right?
21     MR. KUSHNIR:  Yes.  If we assume that the
22 original Nix film was in the possession of a government
23 agency before the JFK Records Act became law, then, yes,
24 the JFK Records Act would apply.
25     THE COURT:  Okay.  And in that case, the

11

1  Government would have permanent possession of it, even if
2  ONF owns it, in some sense?
3      MR. KUSHNIR:  That sounds like a reasonable
4  interpretation of the JFK Records Act, but, again, I just
5  want to clarify, the way we read the JFK Records Act, it
6  doesn't say anything about appropriating items from
7  outside for the Government.
8      THE COURT:  Well, your briefing rests in part
9  on the distinction between ownership and possession and
10 so I'm trying to suss that out a little bit.  Where I
11 think you're coming out is if the JFK -- I'm sorry, if
12 the Nix film came into the Government's possession before
13 the time of the JFK Records Act, the Government has
14 permanent possession of it, but not title, and if the
15 Government got possession of it after the JFK Records
16 Act, it doesn't have title and it would have to return it
17 on demand.  Is that right?
18     MR. KUSHNIR:  So if I can just say one thing
19 before responding directly to the Court's question?
20     THE COURT:  Okay.
21     MR. KUSHNIR:  I think this distinction between
22 possession and ownership is not quite as clear-cut as ONF
23 made it out to be.  There's the recent Jenkins case from
24 the Federal Circuit, in which the Federal Circuit said if
25 the Government takes something, even appropriately, let's

12

1  say pursuant to the police power, and then keeps
2  possession of that thing after the need for its
3  possession no longer holds true, that can amount to a
4  taking.
5      And so in this hypothetical scenario in which,
6  let's say, the Nix film, the original Nix film, made it
7  to the Government, the Government kept possession of it,
8  even before the JFK Records Act was established, then
9  there could be takings liability under the Jenkins line
10 of reasoning.
11     Now, of course, then ONF would rung headlong
12 into a timeliness issue, an even greater timeliness issue
13 than it has now.
14     THE COURT:  Yeah, yeah, if the taking arose
15 because of the subpoena, I assume.
16     MR. KUSHNIR:  That's right, that's right.
17     THE COURT:  Right.
18     MR. KUSHNIR:  Because the Government obtained
19 the original Nix film pursuant to the House Select
20 Committee subpoena in 1978.  The House Select Committee's
21 need for the original Nix film evaporated in 1979 when
22 the House Select Committee concluded its investigation
23 and published the final report.  So the claim, based on
24 possession, just like the claim that the Federal Circuit
25 recently described in Jenkins, that would have accrued in

3 (Pages 9 to 12)

13

1    1979, which is even before the JFK Records Act ever came
2    into existence.
3         THE COURT:  Okay.  But one way or another, it
4    seems to me that you are not arguing that the Government
5    owns the tape.  You're simply saying that if the
6    Government -- the Government can be assumed to be in
7    possession of the tape based on the allegations in the
8    complaint and that that possession may or may not be
9    permanent, depending on when the -- when the Government
10   got possession relative to the passage of the JFK Records
11   Act.
12        MR. KUSHNIR:  I think that's right, Your Honor.
13   But, again, I do want to emphasize one thing.  That's
14   part of the reason why it's so important for a Plaintiff
15   to pinpoint the precise governmental action that's
16   alleged to be the taking.  I think what ONF is trying to
17   do is they're trying to get past the 1970s era and into a
18   closer period of time and that's why they're attaching
19   their takings claim to the JFK Records Act.  And that's
20   why when we're talking about a taking, we're talking
21   about it in terms of the JFK Records Act and what we're
22   saying is the JFK Records Act itself does not talk about
23   taking property.  It does not --
24        THE COURT:  Right, right, at least not
25   explicitly compared with the 1965 law.

14

1         MR. KUSHNIR:  Exactly, exactly.
2         THE COURT:  So the -- but here's another thing
3    about the JFK Records Act, are you familiar with the In
4    re Connick case from the 5th Circuit?
5         MR. KUSHNIR:  I am not.
6         THE COURT:  Okay.  So in that case -- so the
7    cite is 124 F.3d 718.  It's a very short case.  It seems
8    to hold that the JFK Records Act allows NARA to seize
9    records owned by entities other than the Federal
10   Government.  And that was a 1997 case, so it developed
11   well after the passage of the JFK Records Act.  In that
12   case, you know, it was the Government, NARA, arguing that
13   it could use the JFK Records Act to go out and take
14   control -- and I'm using "take" kind of colloquially --
15   but go out and take control and possession of documents
16   held elsewhere, in that case by Mr. Connick, the
17   prosecutor in New Orleans.  You're not familiar with
18   that?
19        MR. KUSHNIR:  No.
20        THE COURT:  Okay.
21        MR. KUSHNIR:  I'm not, Your Honor.  What I do
22   know is through my conversations with the National
23   Archives today, my understanding of the JFK Records
24   Act is that it does not authorize the appropriation of
25   records or itself appropriate records in the way that has

15

1    been alleged in this case.
2         THE COURT:  Well, then they need to explain
3    In re Connick in some way.
4         MR. KUSHNIR:  Okay.
5         THE COURT:  I mean, they might even be estopped
6    -- judicially estopped from making that argument if it's
7    inconsistent with In re Connick because they prevailed in
8    that case.
9         MR. KUSHNIR:  Okay.  I'll have to take a look
10   at that certainly.
11        THE COURT:  Okay.  Would you have a look?
12        MR. KUSHNIR:  Yes.
13        THE COURT:  All right.  And related to In re
14   Connick, are you aware of -- are you aware that the
15   Assassination Records Review Board promulgated
16   regulations implementing the JFK Records Act?
17        MR. KUSHNIR:  I'm not familiar with the
18   regulations themselves.  I am familiar with its work with
19   the Zapruder film and its assessment that the Zapruder
20   film can be acquired pursuant to authority under the JFK
21   Records Act.
22        THE COURT:  Yeah.  I'm asking about the Board's
23   regulations.
24        MR. KUSHNIR:  I'm familiar with those, but I'm
25   not.  I haven't looked at them in some time.

16

1         THE COURT:  Okay.  So are you aware of how they
2    define "assassination records" and where they can be
3    found?
4         MR. KUSHNIR:  No.  I imagine the definition
5    would probably be at least close to the definition in the
6    JFK Records Act --
7         THE COURT:  Yeah.
8         MR. KUSHNIR:  -- which also defines the term.
9         THE COURT:  Well, I mean, it's -- I can
10   represent to you that it's broader in a couple of
11   respects because it refers to records that are in private
12   hands.
13        MR. KUSHNIR:  Okay.
14        THE COURT:  So if that's right, then it
15   complicates your argument somewhat, kind of the way In re
16   Connick does.  You can find them at 36 CFR 1290.1 and
17   following, I believe.
18        MR. KUSHNIR:  Okay.  And I'll certainly take a
19   look at that, Your Honor.  I would suggest that the
20   Review Board's regulations don't necessarily mean much
21   for the way this Court interprets the plain meaning of
22   the JFK Records Act because that's simply a matter of
23   statutory construction, and if the plain meaning of the
24   JFK Records Act means something, this Court has to follow
25   that meaning regardless of what a government agency may

4 (Pages 13 to 16)

17

1 have thought about.
2      THE COURT: Well, wouldn't that be obligated to
3 defer to the ARRB regulations, at least as long as
4 Chevron is around?
5      MR. KUSHNIR: I don't think the Court would
6 have to defer as long as the plain meaning of the statute
7 is clear. If there's an ambiguity, then, as you said,
8 Your Honor, while Chevron is around, then perhaps, but
9 we're arguing that the text of the JFK Records Act is
10 clear on its face. There is no ambiguity. And in that
11 case, the Court wouldn't need to defer to anyone.
12      THE COURT: Well, the ARRB regulations
13 actually, if I understand right, they might have
14 sunsetted when ARRB sunsetted, but then they were
15 repromulgated by NARA later, in which case you'd be
16 arguing that the regulations defended by your client --
17 or promulgated by your client's organization over there
18 are invalid, which would be another thing for you to
19 think about at a client service level, obviously.
20      MR. KUSHNIR: Yes.
21      THE COURT: Okay.
22      MR. KUSHNIR: And if that becomes an issue that
23 the Court is inclined to rule on, then I'd certainly like
24 an opportunity to take a look at it --
25      THE COURT: Okay.

18

1      MR. KUSHNIR: -- go back to the National
2 Archives, and perhaps submit some supplemental briefing
3 on that.
4      THE COURT: You know, what I often do in these
5 circumstances when there are issues that end up -- that
6 end up -- that might turn out to be relevant that the
7 parties haven't had -- the parties haven't developed in
8 the briefing, what I'll often do is send the parties back
9 to do supplemental briefing.
10      MR. KUSHNIR: Okay.
11      THE COURT: We can talk about that at the end
12 of the hearing if that would be helpful.
13      MR. KUSHNIR: Right.
14      THE COURT: All right. So you've talked about
15 the exercise of police power a lot in your motion to
16 dismiss, but I take it the parties seem to agree now that
17 the subpoena didn't lead to the taking. So if that's
18 right, then I don't really need to worry about whether
19 the subpoena was a valid exercise of the police power or
20 Congress' investigatory power and so on, would I?
21      MR. KUSHNIR: I think that's right, Your Honor,
22 you do not.
23      THE COURT: Okay. So we can revisit that if it
24 comes up on the Plaintiff's side, but --
25      MR. KUSHNIR: Sure.

19

1      THE COURT: And one more thing about the
2 Zapruder film, which you brought out. So you argue in
3 your reply brief, especially, that the acquisition of the
4 Zapruder film was different from the case at hand here,
5 but I don't really understand why. Could you spell that
6 out a little bit?
7      MR. KUSHNIR: Sure. So the Zapruder film, the
8 Review Board invoked authority under the JFK Records Act,
9 but it took an additional post-enactment action by the
10 Review Board to acquire the Zapruder film. There was
11 an arbitration proceeding, or perhaps it was mediation
12 -- I don't remember exactly, but there was an ADR -- some
13 sort of ADR proceeding in which price was established and
14 then --
15      THE COURT: Like how was the ADR process
16 invoked? Who invoked it?
17      MR. KUSHNIR: So I believe the Review Board
18 made a decision to acquire the Zapruder film. They
19 reached out to the heirs of Abraham Zapruder and they
20 decided on an ADR proceeding to determine the value of
21 the film. And through that ADR proceeding, at the
22 conclusion of it, the Government acquired the film. So
23 it took post-enactment action. The Government did
24 something affirmative in order to appropriate the Nix
25 film -- I'm sorry, the Zapruder film --

20

1      THE COURT: The Zapruder film.
2      MR. KUSHNIR: -- and paid compensation to the
3 heirs of Mr. Zapruder as a result.
4      THE COURT: So who had possession of the
5 Zapruder firm at the time that the Review board decided
6 to take that action?
7      MR. KUSHNIR: The Government did.
8      THE COURT: Okay.
9      MR. KUSHNIR: And it was undisputed that the
10 Government had actual possession of the original Zapruder
11 film.
12      THE COURT: Okay. So in what way did it
13 formalize its decision to take ownership of the Zapruder
14 film? It published something in the Federal Register?
15 What did it do?
16      MR. KUSHNIR: I'm not sure exactly what they
17 did to formalize their decision, but I know they did
18 reach out to the heirs with an expression of intent to
19 acquire the Zapruder film for the United States.
20      THE COURT: I mean, that's -- it's hard for me
21 to see how that could be what makes it -- like, I mean,
22 what the 5th Amendment says is you can't take it without
23 just compensation. So you can take it and you have to
24 give just compensation.
25      MR. KUSHNIR: Right.

5 (Pages 17 to 20)

| 21 |
|---|

1    THE COURT: So, I mean, I can't tell from the
2 account you've just given whether reaching out to the
3 Zapruders was part of what made it a taking or if it's
4 just kind of the good manners to talk to the property
5 owner about the valuation process before you make the
6 taking formal.
7    MR. KUSHNIR: So I'm not sure whether it's one
8 or the other.
9    THE COURT: Okay.
10    MR. KUSHNIR: But the reason it matters is
11 because the Government took affirmative action to
12 appropriate -- to take this item pursuant to the 5th
13 Amendment. They didn't do it --
14    THE COURT: But you don't know what the formal
15 action looked like.
16    MR. KUSHNIR: I don't know what the formal
17 action looked like.
18    THE COURT: Okay. So unless you know what the
19 formal action looked like and what it constituted, the
20 only difference you have between this case and the
21 Zapruder situation, there was an informal process that
22 led to payment, and in this one there hasn't been.
23    MR. KUSHNIR: Well, I think it goes beyond an
24 informal process that goes to payment.
25    THE COURT: Yeah, I get it, exactly. Okay.

| 22 |
|---|

1 I'm sorry, how does it go beyond just an informal process
2 that goes to payment?
3    MR. KUSHNIR: So even if there's nothing beyond
4 reaching out to the heirs of Mr. Zapruder, that alone is
5 some affirmative action that the Government took in order
6 to appropriate the Zapruder film.
7    THE COURT: But no, no, no, no, no, but there
8 -- now you're -- I don't know if that's right because the
9 whole question that I'm asking is whether reaching out to
10 the Zapruders was something that affected the acquisition
11 or whether it was just a good manners way of starting the
12 compensation process. Because, remember, in the 5th
13 Amendment, the taking of property and the payment, those
14 are different things.
15    MR. KUSHNIR: Sure.
16    THE COURT: So paying -- so if you take it, you
17 have to pay.
18    MR. KUSHNIR: Right.
19    THE COURT: So whether -- so the fact that ARRB
20 reached out to the Zapruders about starting a valuation,
21 that's analytically separate from what it is that
22 involved taking the property.
23    MR. KUSHNIR: I don't disagree with that.
24    THE COURT: Okay.
25    MR. KUSHNIR: I don't disagree with that. But

| 23 |
|---|

1 what I'm saying is, unlike here, in the Zapruder film,
2 the Government made an affirmative decision to acquire
3 the film, even before we get to the point about how much
4 is the film worth and how much is the Government going to
5 pay just compensation. The Government reached an
6 affirmative decision to acquire that film. We don't have
7 something like that here.
8    THE COURT: But then you don't know what the
9 affirmative decision looked like exactly. You don't know
10 how that decision was made or how it was announced or
11 formalized?
12    MR. KUSHNIR: I don't standing here. That's
13 certainly something I can provide, Your Honor.
14    THE COURT: All right, all right. If you don't
15 -- unless you know that, then it's hard for me to
16 distinguish between the Zapruder situation and this
17 situation. If you come back and you tell me that, okay,
18 the ARRB decides to appropriate property by taking a vote
19 and publishing a notice in the Federal Register, that's
20 one thing. But if the difference is just more like,
21 okay, we have it and we're going to ask the Zapruders
22 about paying for it and not ask the Nixes about paying
23 for it, that makes it harder for me to understand the
24 distinction.
25    So you need to kind of -- if you want to say

| 24 |
|---|

1 that the Zapruder process was more formal and involved an
2 official decision, you need to document that and kind of
3 justify it theoretically and procedurally.
4    MR. KUSHNIR: Okay. That's fair, that's fair.
5 The only thing I would say about that is with the
6 Zapruder film -- and let's assume for a moment that there
7 was a formal decision made by the Review Board to acquire
8 the film, because I think there was such a decision.
9 Unfortunately, I don't know what form that decision took
10 standing before you today, but I'm happy to provide that
11 to you.
12    But if we assume for a moment that there was
13 such a decision made, that's the moment at which a
14 takings claim would have accrued because that's the
15 moment that the taking is taking place. That's why this
16 case is different because, here, there is no such
17 decision and so for the accrual date, ONF has to rely on
18 something way earlier. Here, they're relying on the JFK
19 Records Act because there is no decision by the
20 Government to appropriate or to acquire the Nix film.
21    THE COURT: Can you talk about the statute of
22 limitations now as long as you bring it up or is there
23 anything about the substance that you'd like to amplify?
24    MR. KUSHNIR: That might be a very good segue.
25    THE COURT: Okay. So you're presenting your

25

1  motion as a 12(b)(6) motion, but obviously the statute of
2  limitations here is jurisdictional, right?
3         MR. KUSHNIR:  Yes.
4         THE COURT:  Okay.
5         MR. KUSHNIR:  I think it should be a 12(b)(1)
6  motion, Your Honor.  In fact, I noticed that as I was
7  preparing for today's argument.
8         THE COURT:  So with the accrual date, it seems
9  like the statute of limitations argument comes down to
10  whether the accrual date is postponed in some way, and as
11  I understand the law at least, the accrual date can be
12  postponed essentially if the Government was concealing
13  information from ONF or if the fact of taking was
14  inherently unknowable to them.  The Federal Circuit case
15  have used formulations kind of like those.  Is that about
16  right?
17         MR. KUSHNIR:  That's about right.  My only
18  caveat was that -- is that the first part of what you
19  said, where the Government conceals something from the
20  other side, I think it's a little more nuanced than that.
21  It's when the Government conceals something such that the
22  Plaintiff would be unaware of their claim.  If you would
23  like, Your Honor, I can find the specific passage from
24  Martinez that says that to give you the exact
25  formulation.

27

1  pleadings?
2         MR. KUSHNIR:  Your Honor, in a way, it is.  I
3  would point you to the fact that in Martinez, which is
4  the seminal accrual suspension case from the Federal
5  Circuit in which the Court articulated the standard for
6  accrual suspension, that claim was very similar to this
7  one.  It was a claim where a service member brought a
8  claim to modify their service record and what they
9  claimed is that they have a letter from their ex-wife
10  showing the veracity of their claim.
11         And what the Federal Circuit said is that
12  that letter doesn't actually suspend the accrual date
13  because you can see from earlier proceedings, before that
14  letter from the ex-wife ever came into being, that the
15  Plaintiff maintained all along the veracity of their
16  position.  And --
17         THE COURT:  Okay.
18         MR. KUSHNIR:  -- if I could just say one final
19  thing about it.
20         THE COURT:  I'm sorry, go ahead.
21         MR. KUSHNIR:  The reason that matters is
22  because Martinez was dismissed on a motion to dismiss by
23  the Court of Federal Claims.
24         THE COURT:  That was actually the question I
25  was going to ask, the --

26

1         THE COURT:  Oh, okay.  So what you're saying is
2  that even if the Government concealed it, the Plaintiff
3  has to, in fact, be unaware?
4         MR. KUSHNIR:  Exactly.
5         THE COURT:  All right.
6         MR. KUSHNIR:  And, here, if we assume for a
7  moment that the Government did conceal possession of the
8  Nix film, which, again, the Court has to assume for the
9  purposes of this motion, it was not concealed in a way
10  that made the Plaintiff unaware because, again, the
11  complaint shows us that Ms. Nix-Jackson continuously
12  demanded the Nix film and continuously told the
13  Government that it has possession of the Nix film.  So
14  that shows us that the accrual date cannot be suspended
15  that way.
16         THE COURT:  So the -- it's a bit of a puzzle
17  what the pleadings say about what the Plaintiff and its
18  predecessors knew and when, but, I mean, you don't seem
19  to be challenging the factual accuracy of anything in the
20  complaint, are you?  It seems like even for purposes of
21  jurisdiction, you're treating it all as true.
22         MR. KUSHNIR:  Yes.
23         THE COURT:  Okay.  So why does that make this
24  any more than a factual dispute about the truth of the
25  pleadings and the inferences I can draw from the

28

1         MR. KUSHNIR:  And the Federal Circuit affirmed
2  that dismissal in a motion to dismiss.  So even in a
3  motion to dismiss, if we assume almost all facts in the
4  complaint, this being a jurisdictional issue, you know,
5  maybe that has something to do with it, but you can look
6  at the allegations in the complaint, at what's in the
7  exhibits that are appended to the complaint, and you can
8  draw an interference of what -- what was known to the
9  Plaintiff.
10         THE COURT:  But then I could also -- I mean,
11  does that foreclose me from looking at the pleadings and
12  assuming that the allegations about the diligence of the
13  search are true and assuming that allegations about the
14  knowledge in ONF and its predecessors are true?  I could
15  also do that, right?
16         MR. KUSHNIR:  You certainly could.
17         THE COURT:  Okay.
18         MR. KUSHNIR:  But at the end of the day, the
19  timeliness issue is really the only thing the Court has
20  to rule on.  It's a jurisdictional matter.  It's the
21  first thing the Court would have to rule on.  And for
22  that, all you have to do is look at Exhibit 2 and Exhibit
23  27 to the complaint.  Those layout specifically Ms. Nix-
24  Jackson's belief as early as 1991, before the JFK Records
25  Act even became law, that the Government, and

29

1    specifically the National Archives, continues to possess
2    the original Nix film. That's the only thing that
3    matters because if their allegation of a taking is based
4    on the idea that the Government continues to possess the
5    original Nix film, that actual knowledge -- and, again, I
6    call it knowledge; it's not really knowledge because the
7    Government doesn't have the film, so let's call it belief
8    instead -- that belief, as early as that belief is
9    demonstrated, that alone defeats the takings claim under
10   Section 2501.
11        THE COURT: But then I would have to -- what do
12   I do if they're jurisdictional and the facts in the
13   complaint that seem to conflict with each other or that
14   were -- contradict each other in some way? Like on the
15   one hand, you have the fact of a lawsuit against NARA for
16   the return of it, and on the other hand, you have this
17   letter to NARA in 1991 and so forth, but then you also
18   have allegations in the complaint that -- say that ONF
19   and its predecessors just didn't know.
20        So if you have factual allegation about ONF's
21   knowledge and its search that point in different
22   directions, how do I resolve those in your favor at the
23   pleadings stage?
24        MR. KUSHNIR: So I'll respond to that in two
25   ways, Your Honor. I don't think there is any

30

1    disagreement in the complaint between our position and
2    the Plaintiff's position. The reason is because if you
3    look at the one place in the complaint that talks about
4    the 2021 phone call -- and, Your Honor, I'll direct your
5    attention to paragraph 1-14 of the complaint on page 35.
6        THE COURT: Yep.
7        MR. KUSHNIR: Okay. So that reads on May 12th,
8    2021, a representative of Aerospace contacted counsel for
9    Plaintiff stating that Aerospace had, in fact, sent the
10   Nix film to NARA, not to the HSCA or UPI, as had been
11   previously reported. This seems to say that in 2021,
12   Plaintiff had received information that in 1978,
13   Aerospace returned the Nix film to NARA. This says
14   nothing about who has possession of the film in 1992,
15   when the JFK Records Act became law, and supposedly the
16   Nix film was appropriated for the United States. So even
17   this standalone allegation in no way makes this case
18   timely.
19        But the other thing I wanted to say is to the
20   extent you believe there --
21        THE COURT: Though I don't follow that, because
22   if what they're saying is they just had no idea who would
23   -- they didn't have a clear idea of who had it until
24   2021, getting more information about what happened to it
25   after Aerospace had it, I don't see why that's

31

1    irrelevant. Could you explain that a little bit more?
2        MR. KUSHNIR: Sure. The reason that matters is
3    because, according to ONF, the accrual date, the original
4    accrual date would be 1992 because that's the date on
5    which the JFK Records Act supposedly gave the Government
6    authority to appropriate the film. So what I think we
7    should be looking at is whether the Government possessed
8    the film in 1992, and this representation or alleged
9    representation from 2021, doesn't speak to that. It
10   doesn't say anything.
11        THE COURT: Oh, it just says -- it just says it
12   was given to NARA in 1978 and then there's a question
13   about what happened with 1978 and 1992?
14        MR. KUSHNIR: That's right, that's right.
15        THE COURT: Is there any evidence that NARA
16   returned any JFK records to anybody between 1978 and
17   1992?
18        MR. KUSHNIR: I'm not sure, Your Honor.
19        THE COURT: Okay. Then I don't understand why
20   -- I don't understand what you're doing other than raise
21   kind of a theoretical -- an unjustified hypothetical
22   about what could have happened in the gap.
23        MR. KUSHNIR: Well, I mean, I certainly
24   understand the Court's hesitance with this.
25        THE COURT: Okay.

32

1        MR. KUSHNIR: All I would say is what we should
2    care about is who possessed the film as of the date of
3    accrual, and this allegation says nothing about who
4    possessed the film as of the date of accrual.
5        THE COURT: Because it involves facts too far
6    before the date of accrual.
7        MR. KUSHNIR: That's right, that's right. But,
8    Your Honor, I'd like to point you to the evidence that's
9    directly contradictory to this.
10        THE COURT: Okay.
11        MR. KUSHNIR: As I said --
12        THE COURT: Please.
13        MR. KUSHNIR: -- Exhibit 2 to the complaint to
14   start. So that's at ECF 1-3.
15        THE COURT: Yep, I've got it.
16        MR. KUSHNIR: A letter from April 15th, 1991,
17   from Ms. Gayle Nix-Jackson to Mr. William Murphy at the
18   National Archives.
19        THE COURT: Yeah, they refer to that in the
20   complaint.
21        MR. KUSHNIR: That's right. And the very first
22   sentence says, "Per our telephone conversation on today's
23   date, this letter will serve as an unambiguous request
24   for the return of the original film footage taken by the
25   grandfather" -- I'm sorry -- "my grandfather, Orville O.

8 (Pages 29 to 32)

33

1   Nix, of the John F. Kennedy assassination."
2         THE COURT:  Mm-hmm.
3         MR. KUSHNIR:  So as early as 1991, we know that
4   Ms. Nix-Jackson believed that the Government, and
5   specifically the National Archives, had possession of the
6   Nix film.  That's bolstered by Exhibit 1 to the
7   complaint, which is a letter from UPI.  That's dated June
8   4th, 1992, so just a few months after Ms. Nix-Jackson
9   sent her letter to NARA.
10        And there in the third paragraph on the first
11  page, the second sentence reads, "In 1967, the United
12  States Government acquired title to the Nix film for use
13  in connection with the Warren Commission investigation
14  concerning the assassination of President John Kennedy
15  and" -- and this is the important part -- "the film,
16  which was in UPI's possession, is housed in the National
17  Archives in Washington, D.C."
18        THE COURT:  But then NARA responded to the 1991
19  letter and they say, yeah, we found something, but it
20  looks like it's just the copy, we don't seem to have the
21  original.  What's the effect of that, if anything, on the
22  accrual date?
23        MR. KUSHNIR:  I'm not sure it has an effect on
24  the accrual date because the accrual depends on what the
25  Plaintiff knew or should have known.

34

1         THE COURT:  But then if NARA says, yeah, we've
2   looked at it and this just looks like a copy, it doesn't
3   look like the original, how does that bear on the
4   question of what the Plaintiff knew or should have known?
5         MR. KUSHNIR:  I would suggest to you, Your
6   Honor, that as early as 1991, Ms. Gayle Nix-Jackson could
7   have brought this claim, before --
8         THE COURT:  Yeah, but then if NARA says all we
9   have is a copy, how does that bear on what Plaintiff knew
10  -- what she knew or should have known?
11        MR. KUSHNIR:  Right.  So perhaps that would
12  have dissuaded her, but we know it didn't because
13  later, in 2015 -- and, Your Honor, we can now look at
14  Exhibit 27 --
15        THE COURT:  Okay.
16        MR. KUSHNIR:  -- to the complaint, this is the
17  complaint that Ms. Gayle Nix-Jackson filed in D.C.
18  District Court.  And on the very first page, the very
19  first line of the first paragraph says, "This is an
20  action for return of a historical film of the John F.
21  Kennedy assassination filmed by Dallas native, Orville
22  Nix, on November 22nd, 1963."
23        And then that is repeated at the end as well on
24  page 16, the first paragraph of the prayers for relief
25  section.  There, Ms. Gayle Nix-Jackson stated that the

35

1   very first thing, the most important thing she wants to
2   accomplish through this DDC action is for the Court to
3   direct the United States Government and those agencies
4   involved in the original Nix film to produce it without
5   further delay.
6         So we see that Ms. Nix-Jackson continued to
7   believe that the Government continues to possess the Nix
8   film, and with the standard being knew or should have
9   known, we can discern from this her actual knowledge --
10  in this case, belief of when she could have brought this
11  case against the Government.
12        THE COURT:  Are there any other possible
13  interpretations of her filing a complaint other than that
14  she actually knew where it -- where the tape was?  I
15  mean, is she using the -- could you use -- could you
16  interpret the complaint as part of an investigation as
17  opposed to revealing knowledge?
18        MR. KUSHNIR:  I'm sorry, the DDC complaint?
19        THE COURT:  Could you view -- exactly.  Could
20  you view the DDC complaint as part of an investigatory
21  process rather than as an illustration of existing
22  knowledge?
23        MR. KUSHNIR:  I don't think so, Your Honor,
24  because the DDC complaint, not only did it have a
25  replevin cause of action in which she tried to obtain the

36

1   Nix film, it also had a takings cause of action in which
2   she alleged many of the same allegations she alleges
3   here.  If she was able to bring a takings claim in 2015
4   with the information she had in 2015, there's no reason
5   why she couldn't bring a takings claim in the proper
6   forum before this court in 2015, as well.  So to wait
7   until 2023, it simply doesn't make sense with everything
8   we know about this case.
9         THE COURT:  Okay.  One more question.  So if
10  NARA did have the Nix tape, say at the time of the JFK
11  Records Act, it would have been obligated to disclose it
12  by now, right, or --
13        MR. KUSHNIR:  It --
14        THE COURT:  I'm sorry, go on.
15        MR. KUSHNIR:  Yes, it would have been obligated
16  to make it publicly available, absolutely.
17        THE COURT:  Okay.  Anything you'd like to add
18  before I shift to your colleague?  I'll give you a chance
19  for a reply at the end.
20        MR. KUSHNIR:  In that case, I think I'm okay.
21  Thank you, Your Honor.
22        THE COURT:  Okay.  Thank you, Mr. Kushnir.
23  Mr. Glitzenstein?
24        MR. GLITZENSTEIN:  Yes, Your Honor.  Thank
25  you.

9 (Pages 33 to 36)

37

1      May it please the Court, Your Honor. I'd like
2 to take the issues in the same order that my colleague
3 did --
4      THE COURT: Of course.
5      MR. GLITZENSTEIN: -- with regard to the
6 statutory construction issue and then the statute of
7 limitations issues, if I may.
8      And to begin, I'd like to address directly the
9 hypothetical that you posed to the Government with regard
10 to assuming the allegations in the complaint to be
11 correct that NARA is currently in possession of the film,
12 would that mean that the Government has taken ownership
13 possession of the film? Our position is unambiguously
14 yes.
15      I wasn't entirely clear on the caveats with
16 regard to how the Government is addressing that issue
17 today on this motion, but I will note that in 2015, in
18 moving to dismiss Ms. Nix-Jackson's original complaint in
19 the District Court District of Columbia, they asked --
20 they posed that hypothetical themselves and they answered
21 it quite clearly saying we would be unable to return the
22 film, i.e., in effect, we own the film, assuming that we
23 have it. And that was in their motion to dismiss, which
24 is part of our complaint.
25      This is Exhibit 28 to our complaint, Docket

38

1 Number 1. In particular, at page 18 -- and this is the
2 Government's motion at that time -- first, they
3 interpreted the JFK Records -- Assassination Records Act,
4 the 1992 Act, in the same way effectively that Plaintiff
5 interprets it in this matter. And they say, To the
6 contrary, the JFK Act requires assassination records to
7 be "preserved, protected, archived, and made available to
8 the public at the National Archives."
9      THE COURT: Mr. Kushnir, take your seat.
10      MR. GLITZENSTEIN: Hmm?
11      MR. KUSHNIR: I just wanted to ask what page
12 we're on.
13      MR. GLITZENSTEIN: It's page 18.
14      MR. KUSHNIR: Thank you.
15      MR. GLITZENSTEIN: Continuing, the Government
16 says -- after quoting the statute at Section 4(d)(1), the
17 Government said, "Effectively preventing NARA from
18 releasing the actual assassination records in NARA's
19 collection to Plaintiff or anyone else." They can't
20 return it. And that's actually unambiguous from the
21 statute. In fact, the section that they quote, 4(d)(1),
22 includes that language of Congress -- the collection,
23 excuse me, shall be preserved, protected, archived, and
24 made available to the public. That's directly from the
25 statute and it's unambiguous. That preservation,

39

1 protection, and archiving, and availability is forever.
2      The Act doesn't specify any duration, no period
3 of time after which they had to return. That's a
4 permanent taking and that is taking ownership. There's
5 no distinction that I can see between ownership and
6 permanent retention. Those are precisely the same thing.
7      But as I said, the Government did more than
8 that in 2015. They answered the hypothetical that the
9 Court posed today. The Government continued, "Yet, even
10 if NARA did have the film, it would be an assassination
11 record under the JFK Act and the Act would preempt
12 Plaintiff's common law replevin claim seeking its
13 return." So in that hypothetical and the very
14 allegations that we make in our complaint, the Government
15 asserts ownership, full stop.
16      Again, it's not a -- there's no ambiguity, of
17 course, in the statutory language. And, moreover, I
18 mean, the Government's position, as I understand it,
19 rests on really the absence of certain language of
20 ownership or authorization of acquisition in the statute,
21 but, of course, that express language isn't required.
22      THE COURT: Do you have an authority on that?
23      MR. GLITZENSTEIN: Well, I mean, in general,
24 regulatory takings cases --
25      THE COURT: No, regulatory takings cases are

40

1 different. A regulatory -- you know the difference
2 between, I mean, like a physical taking of ownership and
3 a regulatory taking. There are takings and there are use
4 restrictions. We aren't in the world of use
5 restrictions.
6      MR. GLITZENSTEIN: Exactly, Your Honor. I was
7 just trying to reason of analogy. That even -- I mean,
8 in a physical taking case --
9      THE COURT: Well, no, but then -- then I'm
10 sorry, let's stick with the -- kind of the world of
11 physical takings. Do you have an example of any state or
12 federal statute or regulation that's been held to create
13 a transfer of ownership, but that doesn't talk in terms
14 of title and ownership? Like what's the best analogy you
15 have to this?
16      MR. GLITZENSTEIN: Well, Your Honor, I don't
17 think I need an analogy. I think the Government itself
18 has interpreted -- repeatedly interpreted the 1992 JFK
19 Records Act as conveying exactly that authority to the
20 Government. And it's in multiple different contexts in
21 connection with the Zapruder film and I can address
22 several of the Court's questions about that.
23      If you're asking do I have a case in a physical
24 takings context where the Court concluded that a statute
25 that lacks the words of acquisition or ownership in

41

1    substance conveys authority, I don't have a case cite on
2    that to offer the Court today.  I mean, I would be happy
3    to look further.
4         THE COURT:  Okay.
5         MR. GLITZENSTEIN:  Frankly, given the clarity
6    of this issue with regard to how the Government itself
7    has interpreted the Act -- ah, my colleague reminds me,
8    there is the 5th Circuit Connick case that Your Honor
9    mentioned, which I was looking at at counsel table a
10   moment ago.  But the Government here itself with regard
11   to the 1992 Act has taken this position.  There is, of
12   course, the ARRB itself having concluded that it had
13   authority under the 1992 Act to acquire ownership of the
14   Zapruder film, and this is in our complaint as well, Your
15   Honor.  I think I can address some of the Court's
16   questions about that process and how it unfolded.
17        This is Exhibit 37 to our complaint.  And we
18   have included with our complaint the report or decision,
19   excuse me, of the arbitration panel for the Zapruder film
20   and they explain -- and this is at page 4 of the exhibit,
21   that "On August 1st, 1988, the Assassination Research
22   Board, directed that the Zapruder film be transferred to
23   the records collection within the National Archives and
24   Records Administration.  That same day, August 1, 1998,
25   the Government seized the film itself, but not the

42

1    copyright to the film."  Continuing, "The panel said the
2    Government seizure of the film was pursuant to special
3    legislation enacted by Congress and signed into law by
4    the President."
5         THE COURT:  But what happened physically when
6    this was going on?  I mean, directed that it be
7    transferred to the National Archives, I mean, that's just
8    the operation of what goes on in the -- under the JFK
9    Records Act.  This is descriptive of where it went.
10        MR. GLITZENSTEIN:  Well, beyond the language of
11   seizure, Your Honor, I don't have any further specificity
12   about how the seizure was effected.
13        THE COURT:  Yeah.  How about directed?  Like
14   when the Board directed that it be transferred, how did
15   it direct?  Was there a vote?  Was there a publication in
16   the Federal Register?  What happened?
17        MR. GLITZENSTEIN:  I don't believe there was a
18   publication in the Federal Register.  I've never seen any
19   reference to that, Your Honor.
20        THE COURT:  Okay.
21        MR. GLITZENSTEIN:  So this is at least a little
22   more detail on what happened with the Zapruder film, but
23   continuing, it doesn't stop there.  That was the decision
24   of the arbitration panel and as we discussed in our
25   brief, the ARRB itself concluded that it had the

43

1    authority under the 1992 Act to effect such seizures.  So
2    for the question that's operative here today, the ARRB
3    first concluded that it did have the authority to seize
4    property in the hands of public citizens and, of course,
5    the consequence of that being just compensation.  So that
6    was the ARRB.  The arbitration panel agreed and then the
7    Department of Justice itself endorsed that.  And this is
8    page 2 of Exhibit 37.
9         The Department of Justice, in its release of
10   the arbitration panel decision, states -- it first
11   describes, in the second-to-last paragraph, the second
12   page of the exhibit, describes the 1992 Act, describes
13   the purpose, and then says, "Under that law, on August 1,
14   1998, the camera original of the film became public
15   property when it was transferred to the JFK records
16   collections at the Archives."
17        THE COURT:  So by operation of law, it became
18   -- the camera original became public property?
19        MR. GLITZENSTEIN:  That's right, Your Honor.
20        THE COURT:  Okay.  So the question, the
21   statutory --
22        THE COURT:  I'm sorry, though, that actually
23   raises a question in my mind about your briefing, because
24   what you say is that the enactment of the JFK Records Act
25   did not itself effect a taking.  Do you see the tension

44

1    there?
2         MR. GLITZENSTEIN:  Well, it's the enactment
3    coupled with the possession of the film, the acquisition
4    of the film by NARA.  It's not the enactment, per se.  I
5    mean, there has to -- it's the actions taken pursuant to
6    the enactment.
7         THE COURT:  Okay.  So what was the act taken
8    pursuant to the enactment?  So as you know, it's your
9    obligation to pinpoint what particular act or event
10   constituted the taking.  What was that in this case?
11        MR. GLITZENSTEIN:  It would be by operation
12   of the sequence of events -- by operation of the
13   provisions of the 1992 Act, the preexisting possession by
14   NARA, as the evidence now shows, of the original Nix
15   film, coupled with the enactment of the Act --
16        THE COURT:  Okay.
17        MR. GLITZENSTEIN:  -- those two things together
18   were the triggering event.
19        THE COURT:  Okay.  So given that the Government
20   was already in possession of the Nix film, allegedly, the
21   taking became effective at the moment the JFK Records Act
22   went into effect because, at that moment, given
23   possession, ownership transferred to the Government.
24        MR. GLITZENSTEIN:  Given -- yes, Your Honor.
25   Given what we learned through the diligence in 2021 and

11 (Pages 41 to 44)

45

1   the timeline that we established of the very important
2   issue of the chain of custody of the Nix film, which I'll
3   cite it more on a connection with the statute of
4   limitations issues, but given what we learned, at that
5   point, yes, the evidence that we have now available to us
6   leads us to the conclusion that NARA, not the House
7   Subcommittee, obtained possession of the original Nix
8   film from Aerospace in 1998, right?
9       So they had possession, they denied having
10  possession in 1991, as we've discussed, when Ms. Nix-
11  Jackson approached them, but then when the law came into
12  effect -- the 1992 Records Act came into effect, at that
13  point, by virtue of having preexisting possession, it's
14  that combination of events.
15      And, you know, this whole issue as we now see
16  in the Zapruder context whether the possession was before
17  or after, you know, we see that the Government has now
18  erased that distinction and has decided that it has the
19  authority, pursuant to the 1992 Act, to go out and take
20  ownership of private property that falls into the
21  definition of an assassination.
22      THE COURT:  And we know that from In re Connick
23  basically.
24      MR. GLITZENSTEIN:  And the Government's
25  treatment of Zapruder, both.

46

1       THE COURT:  Though who had the Zapruder film at
2   the time that the JFK Records Act went into effect?
3       MR. GLITZENSTEIN:  So our evidence and what we
4   have alleged in the complaint is that it was returned by
5   the House Subcommittee to -- I believe it was Mr.
6   Zapruder's son.  We have an affidavit in the complaint.
7   I think it would be Exhibit 9.
8       THE COURT:  So what you're saying is that the
9   Zapruder film was in -- it's a private property in the
10  possession of a private individual and that it became the
11  government property by operation of law?  But if that's
12  right, then how can you say that the JFK Records Act's
13  effect depends on the Nix film being in the Government's
14  possession at that time?
15      MR. GLITZENSTEIN:  Well, all I'm -- I'm saying
16  it doesn't matter ultimately.  One could read the statute
17  as saying it was preexisting, things in the Government
18  possession.  The Government has taken a broader view with
19  regard to Zapruder.  And I may have missed part of your
20  question, Your Honor, because I was looking for the
21  exhibit --
22      THE COURT:  Oh, but then -- then you've got an
23  even worse statute of limitations problem than you would
24  have had otherwise.  Let me explain why.  Because if you
25  are right that the JFK Records Act transferred ownership

47

1   from -- of the film, even though it wasn't even in the
2   Government's possession, then why wouldn't the JFK
3   Records Act also have transferred possession of the Nix
4   film to the Government's ownership even if it wasn't held
5   by the Government?
6       MR. GLITZENSTEIN:  So let me break this down,
7   and if I misspoke, Your Honor, I apologize.  As I say, I
8   was looking for the correct exhibit to answer Your
9   Honor's question.  So let me start with the question of
10  the Zapruder film --
11      THE COURT:  Okay.
12      MR. GLITZENSTEIN:  -- and where I -- based on
13  the information available, Exhibit 9 does include an
14  affidavit from a representative of the House Select
15  Committee, and it says that the Zapruder film was
16  returned to Mr. Henry Zapruder in 1978.  That was the
17  point I was hunting for previously.  And so I don't know
18  what happened -- you know, what happened from --
19      THE COURT:  But I thought the Tunheim report
20  said that Henry Zapruder gave it to the Archives in 1978,
21  even if legal ownership was retained by the Zapruder
22  family.  Am I wrong about that?
23      MR. GLITZENSTEIN:  I would have to look at
24  that, Your Honor.
25      THE COURT:  Okay.

48

1       MR. GLITZENSTEIN:  So I -- so if there was a
2   subsequent transfer, as I started to say, I can't speak
3   to the status of the Zapruder film after this date, and
4   if there was some further activity with that, I would
5   have to take a further look at that.  But my point with
6   regard to the timing issue, Your Honor, was just simply
7   that, as a matter of statutory construction and
8   application, the ARRB concluded that it could seize and
9   compensate the Zapruders for that film after the 1992 JFK
10  Records Act and the Government endorse that
11  interpretation of the 1992 Records Act.
12      THE COURT:  By the way, can we clarify just to
13  make sure I understand what you're arguing?  So I think
14  you aren't arguing that the House Subcommittee subpoena
15  effected a taking, are you?
16      MR. GLITZENSTEIN:  We are not, Your Honor.
17      THE COURT:  Okay.  And you aren't arguing that
18  it's a taking based on a withholding of the records from
19  the public.  It all comes down to the JFK Records Act?
20      MR. GLITZENSTEIN:  We are not arguing the first
21  part and, yes, it comes down to the JFK Records Act, Your
22  Honor.
23      THE COURT:  Okay.
24      MR. GLITZENSTEIN:  Yes, that's correct.
25      THE COURT:  So -- okay.  So that means that I

12 (Pages 45 to 48)

49

1  don't need to worry about things like whether the
2  subpoena was a valid exercise of the police power,
3  Congress' investigatory power?  There's a lot of it in
4  the briefing, but it seems like it's all irrelevant
5  unless I'm missing something.
6        MR. GLITZENSTEIN:  From our perspective, Your
7  Honor, for this motion, we don't see that as being --
8        THE COURT:  Okay.
9        MR. GLITZENSTEIN:  -- relevant.  And the fact
10  of the nondisclosure by NARA is not -- we've addressed
11  that in the briefing as well.
12        THE COURT:  So what you're saying is that given
13  that -- given that -- given your belief now that the Nix
14  film was in the Government's possession at the time the
15  JFK Records Act went into effect, the taking occurred
16  when the JFK Records Act went into effect and, at that
17  time, ownership was transferred to the Government, not
18  just possession, which the Government already had, but
19  ownership.
20        MR. GLITZENSTEIN:  Correct.  They were unable
21  to return it; it's permanent possession; and we acquaint
22  that with ownership, Your Honor.
23        THE COURT:  So the Government has said that you
24  have forfeited or waived, one or the other, the argument
25  that the Government took the right to possess as opposed

50

1  to taking ownership altogether.  Is the Government right
2  about that?
3        MR. GLITZENSTEIN:  I'm sorry, Your Honor.  I
4  didn't follow the question.
5        THE COURT:  So the Government seems to, at
6  least to some extent, draw a distinction between
7  ownership and possession or they think that you were
8  drawing a distinction between ownership and possession.
9  Are you arguing that -- say are you making an argument
10  that the Government retaining possession is a taking,
11  even if you have title in some nominal sense?  What if
12  you still have title in some nominal sense, but the JFK
13  Records Act says the Government will hold on to it
14  forever?  Are you arguing that that would be a taking?
15        MR. GLITZENSTEIN:  Yes, Your Honor.  To me, I
16  don't see a distinction there whatsoever.  Having title
17  to something but the complete inability to possess it,
18  handle it, analyze it.  As we've said in our complaint,
19  you know, we're deprived of our ability to do the
20  sophisticated scientific analysis that is possible in
21  2024.  So there's absolutely -- if you think of it from a
22  classic bundle of sticks perspective of ownership,
23  there's no property right of any relevance that would be
24  left to the Plaintiff in this case if the Government has
25  permanent possession of the original film.  So it's a

51

1  distinction without a difference.
2        I think maybe the discussion between temporary
3  possession and things like that, but from the perspective
4  of, you know, precisely what the Government has said in
5  its motion to dismiss in 2015, that they cannot return
6  it, effectively preventing NARA from releasing the actual
7  assassination records in NARA's collection to Plaintiff
8  or anyone else, there's no material right of ownership
9  that would be left to the Plaintiff, given the broad
10  sweep and unbounded-in-time provisions in the 1992 Act.
11  They have taken -- there's no question about that, about
12  the fact that the statute effects a taking.
13        THE COURT:  So going back to whether it's a --
14  the JFK Records Act leads to a transfer of title, I mean,
15  the Government points out that Public Law 89-318 is very
16  explicit that it's a transfer of title and ownership, but
17  the JFK Records Act doesn't have that.  How do you
18  explain that difference?  Is there any explanation?
19        MR. GLITZENSTEIN:  I don't have one from, for
20  example, the legislative history, Your Honor, to offer
21  the Court.  I mean, I think, though, that the established
22  practice of the Government, you know, on the authority of
23  the 1992 Record Act where they expressly use that Act to
24  seize the Zapruder film leaves it beyond genuine dispute
25  that that Act had the effect of authorizing the

52

1  Government to acquire private property.  It's the way
2  it's been enforced and it's been endorsed in that exact
3  sense by the Department of Justice.
4        THE COURT:  So essentially you don't need the
5  magic words, you look at the substance and what's
6  happened.
7        MR. GLITZENSTEIN:  I would be concerned if
8  there needed to be magic words.  I think, you know,
9  statutes often have consequences that, you know, that may
10  not be -- well, I don't -- I don't want to speak broadly
11  to statutes, but I don't think that there's any
12  requirement -- I'm not aware of any requirement that the
13  Government announce that it is taking private property.
14  I think you have to look at the substance of what the Act
15  accomplishes.  And we have the most tangible illustration
16  and the most on-point scenario here with the Zapruder
17  film.  They took private property and they compensated
18  for it, and the only authority they relied on was the
19  1992 Act.
20        THE COURT:  Okay.  Let's talk about the statute
21  of limitations now or is there anything about the
22  substance you'd like to add?
23        MR. GLITZENSTEIN:  If I can just check my
24  notes, Your Honor.  I think that was it, but -- those
25  were my points, Your Honor, on the statute.

13 (Pages 49 to 52)

53

1    THE COURT: On the statute of limitations, so
2  your response to the Government's motion to dismiss says
3  very little, if anything, about the statute of
4  limitations. What's your response?
5    MR. GLITZENSTEIN: Procedurally or on the
6  merits? I mean, the Government framed the issues as
7  12(b)(6) issues as the Court observed and the four
8  questions presented were not directly on the statute, but
9  we certainly want to respond on the merits.
10    THE COURT: So are you arguing that the
11  Government concealed its possession of the film or just
12  that you couldn't have known the Government had it?
13    MR. GLITZENSTEIN: Well, I think both, Your
14  Honor.
15    THE COURT: Both?
16    MR. GLITZENSTEIN: To start with the legal
17  point, I think Your Honor was perhaps quoting from the
18  Welcker decision, Federal Circuit, 752 F.2d 1577, which
19  does amplify on this issue of the principle that the
20  accrual rule is strictly and narrowly applied, and they
21  say, "Plaintiff must either show that defendant has
22  concealed acts -- concealed its acts with the result that
23  plaintiff was unaware of their existence or it must show
24  that its injury was inherently unknowable at the accrual
25  date." Both apply. We think both of those apply on the

54

1  facts that we have pleaded here extensively.
2    And, in fact, the Court -- excuse me, the
3  Government, pardon me -- you know, fails to address
4  really the key recent events here that have led to this
5  lawsuit. You know, there's a lot of -- of course, the
6  concealment that we would intend occurred was the
7  categorical response repeatedly from NARA and embraced by
8  the Government that NARA doesn't have the film. We've
9  even heard that, you know, today and in the Government's
10  brief.
11    THE COURT: So is that -- that's part of what
12  puzzles me. Yeah, NARA was denying that it had the film
13  in 1991 and it's denied it repeatedly, but then again
14  you've also -- I mean, not you personally, but your
15  client and your client's predecessors have repeatedly
16  dunned the Archives to hand it back. How do you -- if
17  your client did not know that NARA had it, why did NARA
18  sue, for example, to get it back? And if your client
19  predecessor and predecessor-in-interest didn't know that
20  NARA had it, why did your client write to NARA to hand it
21  back in 1991? Those facts are really hard to square with
22  the position that you couldn't have known it.
23    MR. GLITZENSTEIN: So with regard to writing to
24  NARA in 1991 and asking for the original film back,
25  there's -- it's part of the overall diligence process

55

1  that my client has been engaging in for decades. You
2  have to ask, and so they asked in 1991, by
3  correspondence. They asked again in 2014 with a formal
4  FOIA request and got the same response, but notably also
5  with a difference. Not only did the Government -- not
6  only did NARA in 2014, in response to that FOIA request
7  say they don't have the film, they also said something
8  else which is very important here. They said we also
9  don't have documents reflecting the chain of custody of
10  the film. That's a critical piece of this case, Your
11  Honor, because there's an enormous amount of information
12  that we're talking about here. It's a needle in a
13  haystack.
14    THE COURT: Oh, I can tell you're talking about
15  the visitor logs for this place and that place, right?
16    MR. GLITZENSTEIN: And that's the diligence
17  that has been pursued here or with which the film has
18  been pursued, I should say. But the chain of custody,
19  what -- where did the film go and when did it go there?
20  If you're looking for a needle in a haystack -- and that
21  is the exercise here -- you very well need to know the
22  path that the needle took into that haystack. Okay?
23    We can't go into the haystack. That's going
24  into NARA. NARA is not a library. We can't go in and
25  open all the doors. We need to know the path. Okay?

56

1    THE COURT: Mm-hmm.
2    MR. GLITZENSTEIN: And NARA denied in 2014
3  having any evidence in its records on the chain of
4  custody for the film.
5    THE COURT: But then you sued in 2015.
6    MR. GLITZENSTEIN: We did. They had the
7  information from Mr. Blakey, who was part of the House
8  Subcommittee, and he had information and that formed the
9  basis for that complaint. But, again, the Government, in
10  its motion to dismiss, again embraced the bottom line
11  assertion from NARA that they don't have the film. That
12  was in the Government's motion to dismiss. So they
13  adopted that. They ratified that representation, okay?
14    THE COURT: Well, but then there's the thing
15  with the -- just the facts -- it's not the response to
16  the complaint that bugs me. It's the fact that your
17  client filed it in the first place. I mean, so a rock
18  and a hard place. So the rock is your client knew enough
19  to think that NARA had it and was willing to sue over it
20  and, therefore, had enough knowledge. The hard place is
21  your client raised the allegations without it having
22  knowledge to back them up and violated Rule 11 by filing
23  the thing.
24    MR. GLITZENSTEIN: The --
25    THE COURT: What's the middle course here?

14 (Pages 53 to 56)

57

1    MR. GLITZENSTEIN:  The complaint -- I know the
2  Government has characterized this case as being virtually
3  identical -- this case in 20 -- today, in 2204, as being
4  virtually identical to the 2015 case.  That is -- these
5  are different cases, Your Honor.
6    And the complaint was actually very
7  categorical, very transparent about its level of
8  knowledge of the film and it's a very different level of
9  knowledge.
10    THE COURT:  Spell that out.
11    MR. GLITZENSTEIN:  Sure.
12    THE COURT:  Show me what the difference is.
13    MR. GLITZENSTEIN:  Sure, yeah.  So I'm going to
14  talk, Your Honor, about paragraph 6-46 and -50 in the
15  2015 complaint.
16    THE COURT:  Okay.  On Exhibit 27 we're talking
17  about?
18    MR. GLITZENSTEIN:  Confirming, Your Honor.
19  Yes.
20    THE COURT:  Okay.  I'm on paragraph 6.
21    MR. GLITZENSTEIN:  Paragraph 6, Paragraph 6,
22  "The HSCA was last in possession of the original Nix film
23  in 1978, and its whereabouts since has been a mystery."
24  So we didn't allege that NARA had it.  They were working
25  with the best information they had based on what they had

58

1  learned recently from Mr. Blakey.
2    THE COURT:  No, look at paragraph 5.
3  "Defendant NARA...was in possession and or control of the
4  property requested by Plaintiff which is the subject of
5  this action."  Are you really saying that it -- I'll let
6  you keep on going, but that looks like an allegation that
7  NARA has it.
8    MR. GLITZENSTEIN:  In 5, Your Honor?
9    THE COURT:  Yeah, paragraph 5.  Look at the
10  bottom of paragraph 5.  NARA is an agency within the
11  meaning of 5 U.S.C. 552 and was in possession and/or
12  control of the property requested by Plaintiff.
13    MR. GLITZENSTEIN:  And I think, Your Honor,
14  they were working with the information that they had, but
15  the specifics were fundamentally different in that case.
16    THE COURT:  Okay.  Keep on walking me through
17  the complaint.  If you want to say that the complaint
18  shows that -- your client's predecessor's lack of
19  knowledge, walk me through the complaint.  Keep on going.
20    MR. GLITZENSTEIN:  Yes, Your Honor.  And that
21  is -- I mean, the state of the complaint -- the
22  allegations in the complaint reflect the state of
23  knowledge as being significantly less than what it is on
24  the complaint before this Court.
25    Paragraph 6, "HSCA was last in possession of

59

1  the original" --
2    THE COURT:  Oh, I'm sorry, I just lost it.
3    MR. GLITZENSTEIN:  I apologize, Your Honor.
4    THE COURT:  Okay.  Paragraph 6, I'm there.
5    MR. GLITZENSTEIN:  And I'm looking at the --
6  it's the second-to-last sentence.
7    THE COURT:  Yeah, its whereabouts since has
8  been a mystery.
9    MR. GLITZENSTEIN:  Okay.  Yeah.  So that's --
10  again, the paragraph following paragraph 5, there's --
11  you know, that's what they understood at the time.
12  Paragraph 46, Your Honor, and the allegation there, in
13  the second sentence, was "An index of the chain of
14  custody of the original Nix film should have been
15  maintained by the NARA, but it, too, is apparently lost,
16  stolen, or destroyed."
17    THE COURT:  It, too?  But other than the chain
18  of custody, the film was stolen or destroyed?
19    MR. GLITZENSTEIN:  Well, I think it's referring
20  back to the prior paragraph, 45.  It's -- it cites --
21    THE COURT:  Oh, I see, I see, okay.  So
22  whatever happened is only magnified by the disappearance,
23  construction, or concealment of the Nix film after being
24  in the possession of -- HSCA was the last known
25  possessor.

60

1    MR. GLITZENSTEIN:  Correct, Your Honor.
2    THE COURT:  So what you're saying is that if
3  you look at the details of the allegations here, they're
4  saying that it's not clear, that you weren't actually
5  alleging that NARA had it?
6    MR. GLITZENSTEIN:  That's correct, Your Honor.
7  I didn't draft the complaint, so I can't speak to more
8  than what's written on the page, but when I look at the
9  specifics of the allegations, the complaint is very
10  transparent about what it knew.  And so it's -- the
11  Plaintiff in this case, Ms. Nix-Jackson, of course, had
12  to work with what she had, but was also very transparent,
13  as I said, about what they knew and it was based on
14  information that they had received recently from Mr.
15  Blakey.  But then we get -- the response is denials.  We
16  don't have -- NARA says we don't have the film.
17    And this complaint, if you look at the
18  substance of -- or the specifics of the allegation, it
19  never says they did directly, in terms of the -- I mean,
20  they're very transparent about saying, you know, our last
21  known awareness of it is with the House Subcommittee, and
22  that continues in paragraph 50 is the other one.  You
23  know, 1998 to present, Plaintiff has attempted to locate
24  the original Nix film with the last known chain of
25  custody of the original Nix film residing with the HSCA

15 (Pages 57 to 60)

61

1    to the detriment of the Plaintiff and confirmed in 2015.
2         THE COURT: Okay. So what you're saying
3    basically is that -- is that this complaint says we've
4    tracked it as far as the HSCA. At that point, the trail
5    runs dry, so NARA, you're up, you should either hand it
6    over or give it back.
7         MR. GLITZENSTEIN: I mean, that would be the
8    explanation for why paragraph 5 is -- an explanation for
9    why paragraph 5 says what it is. But the point here is
10   that the Plaintiff's --
11        THE COURT: Wait. But then so if they're -- if
12   they make this allegation about NARA being in possession
13   and/or control of the property, at what point described
14   in this complaint was NARA the one that was in possession
15   and/or control? Was it before it went over to the HSCA?
16        MR. GLITZENSTEIN: I don't believe this
17   complaint includes an allegation of any transfer at any
18   time to -- from the House to anybody.
19        THE COURT: Yeah, but, I mean, when it says
20   that NARA was in possession and/or control of the
21   property, what does it mean by that? How do you
22   reconcile that with the complaint also saying that HSCA
23   was the last place it's been tracked to? Is the
24   complaint saying that NARA had it before the HSCA or
25   what?

62

1         MR. GLITZENSTEIN: I cannot speak to more than
2    what is on the face of the complaint, Your Honor.
3         THE COURT: Okay.
4         MR. GLITZENSTEIN: I apologize for that to the
5    Court. I do believe, though -- I will go back to the
6    point that this is not -- this is a complaint which was
7    based on the best information available at the time,
8    which was the information about the House Subcommittee
9    and its possession of the film and then, again, being
10   very clear about what was known about the chain of
11   custody. And that issue, in paragraph 50 -- so the last
12   known chain of custody of the original Nix film residing
13   with the HSCA, that gets to the concealment aspect here,
14   Your Honor. The concealment aspect was not just the
15   denial by NARA or the fact that it holds the film, but
16   NARA's denial, at that time, that it lacked any records
17   with regard to the chain of custody.
18        And we know now, as of 2021, that that was
19   incorrect. That NARA itself had no idea -- we take them
20   at their word, but they had no idea that their own
21   records did, in fact, contain critical chain of custody
22   evidence.
23        THE COURT: And how did you find that out?
24        MR. GLITZENSTEIN: Well, a lot of hard work, a
25   lot of diligence, but, in particular, sort of the trail

63

1    was, I guess, exposed, the prospect exposed by virtue of
2    the information relayed by an Aerospace employee, that
3    for the first time revealed that the -- that Aerospace
4    had returned the film directly to NARA.
5         THE COURT: So, I mean, the chain of custody
6    information. Do you cite in your complaint or allege in
7    your complaint that NARA has the chain of custody
8    information?
9         MR. GLITZENSTEIN: Yes, yes, Your Honor, we do.
10        THE COURT: Can you point me to that?
11        MR. GLITZENSTEIN: Yes. So in general, Your
12   Honor -- and I'll turn to the specifics because there are
13   three pieces of evidence that I'll speak to, but in
14   general this is found in our complaint at paragraphs 1-09
15   through 1-29, and just -- those portions of the complaint
16   refer back to some of the earlier discussion about the
17   chain of custody documents. But I'll -- let me sort of
18   start with how all this came into being.
19        THE COURT: It's not -- not all that -- I don't
20   mind that -- oh, okay, this is what I was asking for,
21   like 120, Counsel for Plaintiff contacted NARA --
22        MR. GLITZENSTEIN: Yeah, Your Honor, so --
23        THE COURT: -- to request emergency
24   preservation, including box numbers and file numbers and
25   record numbers. Is that what you're talking about?

64

1         MR. GLITZENSTEIN: In part, yes.
2         THE COURT: Okay.
3         MR. GLITZENSTEIN: But the other allegation in
4    our complaint that's new is in 114 and that's the one
5    that I was just referring to. A representative of
6    Aerospace stated that Aerospace had, in fact, sent the
7    Nix film to NARA, not to HSC or UPI, as had been
8    previously reported.
9         THE COURT: Okay. So what we have is basically
10   this chunk of your complaint shows stuff that you think
11   should have been disclosed in response to the FOIA
12   request. You didn't find out until later and it shows
13   that NARA sent it to Aerospace and then you get the
14   information from Aerospace saying it was returned to
15   NARA.
16        MR. GLITZENSTEIN: It shows two things, Your
17   Honor.
18        THE COURT: Okay.
19        MR. GLITZENSTEIN: It shows that. It shows
20   that there was, in fact, in NARA's files, important chain
21   of custody evidence that -- and it matters, right? If
22   you're looking for something and you think I'm going to
23   go look to that big collection of files that we got from
24   the HSCA or NARA, we go look in our HSCA files and we
25   don't see something, you don't know that you're looking

65

1    in the wrong place. So when you're making a
2    representation that you don't have something, you've got
3    to be looking in the right place.
4            THE COURT: Mm-hmm.
5            MR. GLITZENSTEIN: And so it's really -- it has
6    two levels of import, we submit, Your Honor. One is it's
7    evidence that does reveal now that NARA received the
8    film, okay, not HSCA as had previously been thought back
9    in 2015. Okay?
10           The second point is it also showed us that the
11   representations of the Government could not be 100
12   percent credited. I don't mean any disrespect when I say
13   that, but they're making factual representations about
14   the absence of evidence. And they made two. In 1991 --
15   they made one in 1991, and they made two in 2014, in
16   response to the FOIA request. And the two were we don't
17   have the film, we don't have any records of chain of
18   custody. We know the second one is wrong now.
19           THE COURT: Mm-hmm.
20           MR. GLITZENSTEIN: That's a critical
21   revelation. We should be entitled, from the perspective
22   of accrual issues and this whole notion of concealment,
23   we should be entitled to take the Government at its word,
24   right? And we shouldn't be faulted for disbelieving the
25   Government. But now we have a tangible and documented

66

1    reason to disbelieve the representations by the
2    Government.
3            THE COURT: Can we talk about the 1991
4    exchange now? So, you know, the Government points me
5    to Exhibit 2. So Ms. Nix writes to the -- writes the
6    National Archives and says this is a -- this letter
7    will serve as an unambiguous request for the return of
8    the original film footage. So that doesn't have the
9    caveats that you pointed me to in the 2015 complaint
10   that says, okay, you've got it, now return it. Why
11   isn't that evidence of knowledge of who had the --
12   evidence of knowledge that NARA had it in 1991?
13           MR. GLITZENSTEIN: Well, I mean, a complaint is
14   a formal legal document. It's subject to Rule 11
15   considerations. The allegations do need to be, you know,
16   transparent and robust. This is -- I don't think we have
17   any record of what the telephone conversation was. I
18   mean, I could imagine that it was suggested that the
19   letter be phrased in this way, but this is an informal
20   request. It's a demand, sure, but I would say it's not
21   -- it's not being sort of sent under the auspices of a
22   lawyer, for example. It's not a -- it doesn't have that
23   level of -- or that imprimatur of authority.
24           So taking this letter and that one statement
25   and saying, ha, you must have known at that time -- I

67

1    mean, it really does, Your Honor, with all respect to the
2    Government's positioning, it flies in the face of what we
3    allege throughout the complaint and document throughout
4    the complaint about learning what we learned in 2014 from
5    Mr. Blakey.
6            THE COURT: If I understand right, this 1991
7    letter was based on a letter from UPI, also 1991, saying
8    UPI is no longer in possession of the Nix film, the
9    United States Government acquired title of the Nix film
10   and the film, which was in UPI's possession, is housed in
11   the National Archives. I mean, that sounds -- how do you
12   distinguish that from what you were told by Aerospace in
13   2021?
14           MR. GLITZENSTEIN: Thank you, Your Honor, for
15   reminding me of this. Yes, at Exhibit 1, we do have the
16   UPI letter to Ms. -- at that time, Gayle Jackson. So the
17   sequence of events here being -- as part of the diligence
18   process, Ms. Jackson reaches out to UPI for the return of
19   the film. UPI says what it says in this letter in
20   Exhibit 1. The film is housed at the National Archives
21   in Washington, D.C. Ms. Nix-Jackson approaches the
22   National Archives and says, I'd like my film, please, and
23   they say, we don't have it. And I think that's that
24   particular episode. And, again, that's an issue -- or
25   that's another example of concealment of the evidence.

68

1            And, I mean, I would add that even the
2    Government, in its arguments here in this motion, doesn't
3    seem to suggest that any accrual should begin with these
4    events. I mean, they, too, focus on what happened in
5    2015, but obviously --
6            THE COURT: But, okay, let's -- I mean, I was a
7    little more focused on 2015 than -- now, I'm going to
8    focus on this.
9            MR. GLITZENSTEIN: Yeah.
10           THE COURT: So let's draw the parallels between
11   1991 and 2021. It seems like in both -- on both
12   occasions, somebody writes to the then owner of the Nix
13   film and says, yeah, I know you're looking for it, we
14   don't have it, we gave it to NARA. So the parallels
15   seems pretty precise. So what is the difference between
16   1991 and 2021 --
17           MR. GLITZENSTEIN: Yeah.
18           THE COURT: -- that mean that no accrual took
19   place in 1991?
20           MR. GLITZENSTEIN: Yeah. By 2021, we realized
21   that there was concealment of the material facts. In
22   1991, there was no reason to disbelieve the
23   representations made by NARA. And so that is the
24   fundamental -- one of the fundamental distinctions. I'll
25   also add that in 20 --

17 (Pages 65 to 68)

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

69

1    THE COURT: So do you have authority saying
2 that the Government's denial of a fact like this can
3 delay accrual?
4    MR. GLITZENSTEIN: I think it's a direct
5 application of the Welcker principle. I mean, this is --
6    THE COURT: I'm not talking about an
7 application of principle. I'm talking about -- like
8 what's the closest case to this kind of situation where
9 -- okay, where we're trying to figure out when an accrual
10 took place, the Government denies some fact relevant to
11 accrual, and that tolls the accrual until you have more
12 information. Do you have a case like that?
13    MR. GLITZENSTEIN: Not at hand, Your Honor.
14 I'm sorry.
15    THE COURT: Okay. That would be lovely to have
16 because if you could point me to that, then maybe I could
17 follow you as far as distinguishing 1991 from 2021. But
18 if you don't have that, then the circumstances look very
19 similar.
20    MR. GLITZENSTEIN: Well, if I may respond to
21 that, Your Honor, I think they're very different. And we
22 had -- and I think the complaint or I would submit that
23 the complaint for all of its, what I would submit, is
24 rigor, I think, does establish a level of understanding
25 that goes far beyond the preliminary investigative

70

1 diligence that was being done in 1991.
2    And it is a matter of parsing the handwritten
3 notes and noting in the photo control log that the HSCA
4 maintained, parsing those notes and seeing that the Nix
5 and Muchmore films went out the door to California, but
6 only the Muchmore film was returned to HSCA. It's that
7 level of understanding that allows -- allowed the
8 Plaintiff to form a -- the -- at least some answers to
9 the mystery that they identify explicitly in their 2015
10 complaint.
11    THE COURT: So -- okay.
12    MR. GLITZENSTEIN: And I would add, Your Honor,
13 it really -- what I see to be a -- and I would submit is
14 a very important factor here is in 2021, we had clear
15 demonstrable evidence that the Government's
16 representations couldn't be taken at face value.
17    THE COURT: Yeah, but that only matters if the
18 Government denial is enough to toll accrual.
19    MR. GLITZENSTEIN: I would submit, Your Honor,
20 that that is --
21    THE COURT: It -- yeah --
22    MR. GLITZENSTEIN: If that's not concealment of
23 acts with the result that Plaintiff was unaware of the
24 existence of an injury, I don't know what is. And if you
25 say -- if you're asked a direct question and you make an

71

1 uncaveated categorical representation that you don't have
2 certain things and then you're shown to have those
3 things, that's a concealment.
4    THE COURT: I mean, maybe you're right. I'd
5 just like authority that backs you up on it. You
6 understand?
7    MR. GLITZENSTEIN: Understood, Your Honor,
8 yeah.
9    THE COURT: And if the -- I mean, there's lots
10 of things that make logical sense in the abstract that
11 don't turn out to be borne out by the case law. So I get
12 the distinction in theory. It would just be nice to have
13 -- to test it with what the case law says.
14    MR. GLITZENSTEIN: Understood, Your Honor.
15    THE COURT: So when -- going to kind of the
16 diligence of the search, when did ONF or its predecessors
17 first contact Aerospace about, you know, what Aerospace
18 had done with the film?
19    MR. GLITZENSTEIN: I don't believe the date
20 of first contact is in the complaint. May I confer on
21 that --
22    THE COURT: I don't think it was in the
23 complaint either.
24    MR. GLITZENSTEIN: If I could confer for a
25 moment, I can --

72

1    THE COURT: I don't think -- well, if it's not
2 in the complaint, it's not in the complaint, but that
3 strikes me as going to diligence. If you've got these --
4 got various actors involved, you've got the HSCA, you've
5 got NARA, you've got UPI, you've maybe got one or two
6 others, and one of them is Aerospace. If people had
7 awareness of Aerospace's analysis at some point earlier,
8 but your client or its predecessors didn't contact
9 Aerospace until later, that would go to diligence
10 potentially.
11    MR. GLITZENSTEIN: Potentially. I can imagine
12 how the Government might argue that, but just --
13    THE COURT: I'm not sure they have argued that.
14 I'm just kind of thinking about it.
15    MR. GLITZENSTEIN: Just to note one aspect that
16 is in the complaint --
17    THE COURT: Okay.
18    MR. GLITZENSTEIN: -- and that is the House
19 Subcommittee, the final report erroneously stated that
20 the Nix film had been subject to digital --
21    THE COURT: At Los Alamos.
22    MR. GLITZENSTEIN: At Los Alamos, right. So
23 even that required some level of sleuthing, if you will,
24 to determine that actually it was Aerospace Corporation,
25 a different state, a different company, right?

18 (Pages 69 to 72)

73

1      THE COURT: Mm-hmm.
2      MR. GLITZENSTEIN: And there were three
3  entities that were doing that digital -- I don't know if
4  you call it a forensic analysis, but digital analysis of
5  the original films and so -- the other one being San
6  Diego State, I think. So even the notion that there was
7  a -- sort of a trail of breadcrumbs here to follow is not
8  borne out by the basic facts.
9      And this does go to the other aspect of the
10  test in Welcker, I mean, you know, showing that the
11  existence of the injury was inherently unknowable. This
12  is a very challenging exercise for an outsider to do. As
13  I said, we don't have the luxury of being able to go
14  through the stacks, you know, and that's -- so all of
15  this has to be reconstructed from conversations. And I
16  actually -- I don't think that, in hindsight, anything
17  here looks easy, but in hindsight, most things look easy,
18  but it wasn't.
19      And that's why the complaint --
20      THE COURT: It's on a shelf next to the Ark of
21  the Covenant or something.
22      MR. GLITZENSTEIN: I was going to do the
23  Raiders of the Lost Ark analogy, but I --
24      THE COURT: I beat you to it.
25      MR. GLITZENSTEIN: -- was resisting.

74

1      THE COURT: So another line relevant to this
2  Aerospace thing that kind of puzzled me, you said, in
3  paragraph 14 -- 1-14 of your complaint, you said, "It had
4  been previously reported that Aerospace sent the original
5  to HSC or UPI," but what were those previous reports and
6  are they described in the complaint?
7      MR. GLITZENSTEIN: I'm looking, Your Honor, at
8  the discussion of the work of Aerospace that's recited in
9  paragraph 21, and I'm looking for -- oh --
10      THE COURT: If it's not coming to mind, it's
11  okay. I'm just trying to understand that particular
12  line.
13      MR. GLITZENSTEIN: And I'm looking as well,
14  Your Honor, at the information that was received from Mr.
15  Blakey --
16      THE COURT: Mm-hmm.
17      MR. GLITZENSTEIN: -- which, as recounted, you
18  know, in the complaint, that HSCA did have possession of
19  the original Nix film, not merely a copy. But, of
20  course, that's silent on the issue of whether that was
21  before or after the Aerospace work.
22      THE COURT: Okay.
23      MR. GLITZENSTEIN: So it is -- with apologies,
24  Your Honor, it's not immediately coming to mind.
25      THE COURT: Okay. So two more issues with the

75

1  statute of limitations.
2      MR. GLITZENSTEIN: Yep.
3      THE COURT: So one is -- I know you're aware of
4  In re Connick and that -- were you aware of the ARRB-
5  issued regulations implementing the JFK Records Act?
6      MR. GLITZENSTEIN: Not until Your Honor
7  mentioned that. I did have a look at the reference to
8  that. I have not reviewed those regulations other than
9  to note the characterization of the regulations as
10  extending to all assassination records whether private or
11  public.
12      THE COURT: Yeah, yeah, exactly.
13      MR. GLITZENSTEIN: That was the
14  characterization, but I haven't read the regulations to
15  confirm that characterization, Your Honor.
16      THE COURT: Okay. So it defined assassination
17  records to include all records public or private -- and
18  private and that assassinations could be found under the
19  control of persons who have themselves created or have
20  obtained such records. So what comes to mind is if
21  that's right, then it could be that the -- and if those
22  are valid, obviously, then the JFK Records Act and its
23  implementing -- together with its implementing
24  regulations could, by the operation of law, transfer to
25  government ownership items that aren't just in the

76

1  Government's possession, but items that are in the
2  possession of other individuals. And it seems at least
3  arguable that the In re Connick case from the 5th Circuit
4  endorses that, because when the Government came to New
5  Orleans looking for the New Orleans District Parish
6  Attorney's records, the 5th Circuit said, okay, you have
7  to fork them over.
8      So if that's right, then it wouldn't have
9  mattered where the Nix tape was in 1992 and, you know,
10  the statute of limitations would have started running
11  regardless of exactly where the film was.
12      I'm just -- the reason I bring it up is because
13  this is obviously jurisdiction. I had to think it
14  through myself. And the parties didn't raise this issue
15  with the implementing regulation, so I have to bring it
16  up.
17      MR. GLITZENSTEIN: The premise, I believe, of
18  the question is also that the Government did possess the
19  film.
20      THE COURT: No, no, the premise of the question
21  is that the film wasn't in government hands at all, but
22  that the JFK Records Act, as implemented by the -- by the
23  ARRB regulations would have said that it was government
24  property even if it wasn't in the Government's
25  possession.

19 (Pages 73 to 76)

---

**77**

1    MR. GLITZENSTEIN:  Well, then if that -- I
2  think pursuant to those regulations that there should
3  have been takings -- there should have been a valuation
4  proceeding accompanying the taking and that's the --
5    THE COURT:  Well, but that's what this Court
6  does.  What this Court does is if there has been a taking
7  and there has not been a valuation proceeding, you can
8  come here to get your money.  But that's why we have a
9  statute of limitations.  The statute of limitations says
10  if there's a taking and there hasn't been a Zapruder
11  style evaluation proceeding, time starts running, you
12  have to come here.
13    MR. GLITZENSTEIN:  The --
14    THE COURT:  The valuation proceeding isn't what
15  creates the taking.  The valuation proceeding is
16  something that's required upon a taking, but if you want
17  to get it from here, you need to move.
18    MR. GLITZENSTEIN:  Understood.  The point I was
19  trying to make is that I haven't read the regulations.
20  So I'm -- but I do see the application of the regulations
21  in the context of the Zapruder film and it did have -- it
22  had both.  So the property owner in that case knew that
23  the Government was taking his property.  And so -- and as
24  a consequence -- and, again, I'm assuming that the
25  regulations provide for the valuation as an adjunct to

---

**78**

1  the taking.  So they did both in that --
2    THE COURT:  So the regulations, as I read them,
3  they actually don't mention valuation.
4    MR. GLITZENSTEIN:  They don't?  Okay.
5    THE COURT:  They don't look like the 1965 law.
6  It just purports to, again, at least arguably, extend the
7  definition of assassination records more broadly than
8  just the assassination records that are in the
9  Government's hands as of 1992.  And if that's right, then
10  -- I mean, the other step of this is that even if the
11  Government doesn't notify you that your -- that, hey,
12  this thing that you have, it's ours now, you know,
13  everyone's presumably on notice of what the law says.
14  And if there's a law that's validly enacted that
15  transfers the property, you're on notice, at least
16  arguably.
17    MR. GLITZENSTEIN:  So there are three
18  scenarios.  One is the Government already has possession,
19  which is something that until 2021 we didn't -- didn't
20  know.  There's a scenario where it's being held
21  privately, which was not the scenario here, but it is the
22  Zapruder situation.  In that case, when the Government
23  does come to take possession, it's clear that the
24  Government has done so and now that party is on notice.
25  If the Government doesn't undertake the valuation process

---

**79**

1  sua sponte, then proceed to the Court of Claims.
2    But there's a third scenario which is does it
3  even exist, you know, has it been lost to time.  And, I
4  mean, that was one of the -- you know, one of the
5  allegations in the 2015 complaint.  It's a mystery where
6  it is.  And the HSCA -- you know, they say the last known
7  whereabouts was with the HSCA.  The HSCA was disbanded in
8  1979.  There's 13 years between that and NARA -- that and
9  the JFK Records Act.
10    So you don't know.  I mean, if you don't know
11  that the Government has your property and a statute is
12  promulgated that impacts your ownership of that property,
13  I would submit there's no way that you would know to
14  bring a takings claim.
15    THE COURT:  Okay.  I mean, do you have
16  authority on that particular point, that if you don't
17  know -- if there's a question about where the property is
18  and what its disposition has been, do you have authority
19  saying that that tolls an accrual of a -- and, I mean,
20  not tolling, but it delays accrual of the taking claim?
21    MR. GLITZENSTEIN:  Other than the statement of
22  law in Martinez and Welcker, nothing on that particular
23  fact pattern sort of at this moment.
24    THE COURT:  Suppose it had been lost in
25  government possession, is that the difference between a

---

**80**

1  taking and a tort?  I mean, it could still be a taking if
2  the Government assumed ownership of it and then it was
3  destroyed, I suppose.  What if the Government didn't have
4  ownership of it and then lost it, then it would be a --
5  then that would be a tort, right?
6    MR. GLITZENSTEIN:  I would need to research
7  that, Your Honor, but it sounds like a tort if they
8  didn't have ownership and they were negligent in handling
9  and it was within the scope of their -- I mean, there's a
10  lot of caveats on tort claims, but --
11    THE COURT:  Yeah, exactly.  I mean, you haven't
12  researched the issue, but I'm thinking about your third
13  scenario about it might have been lost, and if it might
14  have been lost, then that carries its own set of
15  obligations.
16    MR. GLITZENSTEIN:  Your Honor, I mean, that
17  third scenario, that is what NARA represented to the
18  Plaintiff's predecessor, Ms. Nix-Jackson --
19    THE COURT:  In 1992?
20    MR. GLITZENSTEIN:  In 1991, right.
21    THE COURT:  I'm sorry, in 1991.
22    MR. GLITZENSTEIN:  So if -- but if you consider
23  those three scenarios, I mean, this is an outsider
24  looking -- trying to get a glimpse into a very
25  complicated apparatus of both, you know, documents and

---

20 (Pages 77 to 80)

81

1  videos moving across the country and being stored in
2  multiple different places and they're told -- she is told
3  expressly it doesn't -- we don't have it, and if there's
4  -- and if UPI says NARA's got it and NARA says they don't
5  have it, that is the third scenario.
6        So from the Plaintiff's -- considering things
7  from the Plaintiff's perspective, it may not be in the
8  Government's possession. It could be in possession of
9  another private company. It could be -- as the complaint
10 alleges, I mean, we've contacted eight other news
11 organizations. Did they somehow acquire it? That
12 reflects the very real consideration as part of the
13 diligence process here over many decades that, of course,
14 this is a newsworthy important piece of historical
15 information, maybe ABC has it. That's another private
16 party.
17       So in that span of years, could that have
18 happened? Sure. Is that actually consistent with the
19 narrative that the Plaintiff was being told in 1992?
20 Absolutely. So you've got to go look at all these other
21 places.
22       Sure, ultimately -- ultimately, the road led
23 back to Rome, but it didn't have to lead back to Rome.
24 It could have been in private hands.
25       I mean, for example --

82

1        THE COURT: And if it were in private hands,
2  you'd have at least potentially the effect of the
3  regulations saying -- I mean, here's the thing. I mean,
4  think about it from the perspective of a property owner
5  who's trying to get something -- get something back. If
6  a regulation comes out saying this particular piece of
7  property belongs to the Government wherever it can be
8  found, I mean, at least arguably that puts the property
9  owner on notice that even if I don't have it, even if the
10 Government doesn't have it, whoever has it, it's going to
11 belong to the Government now and that's -- and that would
12 be notice of a taking dating from when the regulations
13 come out, at least arguably. I don't know if that's born
14 out, but --
15       MR. GLITZENSTEIN: Well, Your Honor, I would
16 submit there would be notice of the taking at the time
17 when the Government decides to exercise that authority,
18 as it did in Zapruder.
19       THE COURT: And that --
20       MR. GLITZENSTEIN: And so --
21       THE COURT: But, I mean -- but, I mean, there's
22 a question -- I mean, I think your argument has been that
23 the JFK Records Act means a transfer of property just by
24 operation of law and not by any additional act being
25 necessary.

83

1        MR. GLITZENSTEIN: Depending.
2        THE COURT: Okay.
3        MR. GLITZENSTEIN: And this is the -- depending
4  on whether the Government possessed the material -- and I
5  use the term "possession" there deliberately, in the
6  broad sense. Did it possess the information prior to
7  1992 or did it identify things after 1992, as in the case
8  of Zapruder, and say I wanted to do that?
9        So counterfactually, if the Government had
10 identified that ABC -- or ABC does a documentary on the
11 assassination, again, hypothetically, and they say we
12 have the original Nix film and we've analyzed it and the
13 Government says, we're taking that, well, we would
14 clearly be on notice and we would go in and we would
15 challenge ABC's asserted ownership of the original film.
16 There would be that discussion. But we would be aware of
17 that by virtue of the Government's exercise of that
18 authority.
19       THE COURT: But then -- no, I think you aren't
20 distinguishing a couple of things. I mean, there are
21 laws that -- there are situations where property is
22 transferred from one hand -- from one set of hands to
23 another set of hands by operation of law. The process
24 for moving it physically from one set of hands to the
25 other set of hands, that's a separate process that might

84

1  involve some legal procedure. But what I'm pointing out
2  -- and who knows, the parties haven't developed it
3  particularly, but who knows if that wasn't the situation
4  with the -- with the Zapruders. You could have -- the
5  fact that the Government may have needed to go through a
6  certain kind of process to seize a certain thing, it
7  doesn't say anything about -- or it doesn't dispose of
8  the question of whether title had been transferred by
9  operation of law separately. You need to distinguish the
10 legal effect of a law on ownership from the process --
11 from the Government asserting the ownership.
12       And if ownership has been transferred by
13 operation of law, then I would think that that's -- that
14 that's -- starts the talking even before the Government
15 asserts it. You know, I don't know for sure if that's
16 what the case law bears out, but the parties haven't
17 developed the issue, which is why it's -- which is why it
18 would have been nice to have development of the effect of
19 these regulations.
20       Related to that, by the way, so as you know,
21 typically, the owner of a property at the time of a
22 physical taking retains the claim and doesn't transfer
23 the claim when it conveys the property to a new owner,
24 right? I mean, that's been the law for, you know, quite
25 some time. Are you familiar with that rule?

21 (Pages 81 to 84)

85

1    MR. GLITZENSTEIN: I am not, Your Honor.
2    THE COURT: I mean, the Government cites it in
3  their briefing in a footnote, I believe. (Document
4  review.) Yeah, that's --
5    MR. GLITZENSTEIN: Footnote 4?
6    THE COURT: Yeah, Footnote 4, right. Do you
7  have a view on that?
8    MR. GLITZENSTEIN: I do not at this time, Your
9  Honor.
10    THE COURT: Okay. I mean, I don't know how
11  that rule interacts with the claim accrual rules, but,
12  you know, the problem is out there.
13    When did ONF acquire the Nix tape?
14    MR. GLITZENSTEIN: May I take a moment, Your
15  Honor, and confirm?
16    THE COURT: Okay.
17    (Pause in the proceedings.)
18    MR. GLITZENSTEIN: Your Honor, I'm advised
19  that that was in 2021.
20    THE COURT: Okay. So unless that rule about
21  transfer of property and takings and unless the claim
22  accrual rule applies in that situation, you've got
23  another kind of problem with whether ONF is the proper
24  party to assert this claim.
25    MR. GLITZENSTEIN: I would want to look at

86

1  that, Your Honor.
2    THE COURT: Of course.
3    MR. GLITZENSTEIN: Thank you.
4    THE COURT: Okay. I don't think I have
5  anything else for you at the moment. Is there anything
6  else you'd like to raise or amplify?
7    I'd like to give Mr. Kushnir a short chance to
8  reply, but I want to make sure that you have your
9  opportunity, too.
10    MR. GLITZENSTEIN: Just reading my notes, Your
11  Honor.
12    THE COURT: Of course.
13    (Pause in the proceedings.)
14    MR. GLITZENSTEIN: I have nothing further, Your
15  Honor. Thank you.
16    THE COURT: All right. Mr. Kushnir?
17    MR. KUSHNIR: Thank you, Your Honor. I'll try
18  to be brief, hopefully.
19    I'll start by saying something briefly about
20  the JFK Assassination Records Act. I don't want to
21  belabor the point because I think it's, number one,
22  secondary to the timeliness issue. That's a jurisdiction
23  issue and the Court can resolve it without really delving
24  into the JFK Records Act. But, number two, I do want to
25  look at that 5th Circuit case that the Court mentioned --

87

1    THE COURT: Yeah.
2    MR. KUSHNIR: -- and maybe come to a more
3  informed position on the issue. But what I wanted to say
4  is that I think the way the National Archives views the
5  JFK Records Act is that it provides an option of what to
6  do when the Government has a record of the assassination
7  in its possession. It can keep the record, take it under
8  the 5th Amendment, and then provide compensation under
9  the 5th Amendment, or it can return that record back to
10  its owner. And that's what happened --
11    THE COURT: The JFK Records Act, so it gives
12  the Government a choice about what to do?
13    MR. KUSHNIR: Right, sort of discretion. And
14  that's what happened with the Zapruder film as well. If
15  we look at the exhibit that my friend on the other side
16  pointed to -- so Exhibit 37 to the complaint, page 2,
17  that's the place where it says the ARRB directed that the
18  Zapruder film be transferred to the Records Collection
19  within the National Archives and Records Administration.
20  So that's an act that the Government affirmatively took
21  in order to appropriate the film. But right before that,
22  it says something that's also important.
23    It says, "In 1978, LMH," which was the
24  corporate entity that had title to the Zapruder film at
25  the time, "deposited the film with the National Archives

88

1  and Records Administration for storage and safekeeping."
2  So what we have is a situation in which the National
3  Archives has the Zapruder film for it looks like about a
4  decade and then, at some point, they decide to
5  appropriate that film for the Government. And so they
6  take an affirmative act to appropriate the film and then
7  end up paying just compensation for that appropriation.
8  That's what we're lacking here.
9    What we're lacking, even if we assume for a
10  moment under the hypothetical that the Government
11  continues to possess the film, what we are lacking is an
12  affirmative act to appropriate the film. If the National
13  Archives were to discover tomorrow all of a sudden that,
14  you know what, maybe there's a box no one looked at, as
15  unlikely as that is, and there we go, the film is right
16  there, then they would have a choice. They could release
17  it back to the heirs of Mr. Nix or they could decide to
18  appropriate it for the Government, take some affirmative
19  action to take the film and then they'd have to pay just
20  compensation.
21    THE COURT: Can you point me to what in the JFK
22  Records Act creates that choice?
23    MR. KUSHNIR: There's nothing specific that
24  I've found in the JFK Records Act.
25    THE COURT: Oh, goodness. So where are you

89

1    getting this interpretation from?
2          MR. KUSHNIR: Well, that's the way the National
3    Archives and Records Administration understands the Act
4    because there is no language of appropriation in the Act.
5    So it doesn't look like the Act, by itself, without
6    anything else, appropriates property for the Government.
7          THE COURT: Wait, where -- as I read it, it
8    says, "The collection shall consist of record copies of
9    all government records relating to the assassination
10   which shall be transmitted to the National Archives and
11   the collection shall include all assassination records."
12   Where here gives the Archives the discretion to do
13   anything with assassination records other than just
14   gather it and keep it? What part of this Act allows the
15   Archives to release anything to anybody?
16         MR. KUSHNIR: There's nothing specific in the
17   Act --
18         THE COURT: Okay. So where is this
19   interpretation --
20         MR. KUSHNIR: -- to that effect.
21         THE COURT: -- of yours coming from? I don't
22   mean to be impatient with you -- with you, I just
23   wondered.
24         MR. KUSHNIR: Yeah, and I think it comes from
25   this idea that the Government can appropriate records.

90

1    It doesn't need statutory authority to do that. It can
2    appropriate records under the 5th Amendment and has
3    constitutional authority to do that. It needs to do
4    something in order to effectuate that appropriation. It
5    needs to take an affirmative act.
6          THE COURT: Well, sometimes just passing a law
7    can transfer ownership of property from one party to
8    another without any subsequent decision.
9          MR. KUSHNIR: It can be, but that's not what
10   the JFK Records Act is.
11         THE COURT: Why not?
12         MR. KUSHNIR: Because it doesn't have that
13   language of appropriation. It says nothing about --
14         THE COURT: But you don't need magic words, do
15   you?
16         MR. KUSHNIR: Well, you may not need magic
17   words, but you need some words. You need some indication
18   that title or rights or ownership will be transferred
19   from someone else to the Government and there's nothing
20   like that in the JFK Records Act. There's no discussion
21   of title or rights or ownership, nothing like what we see
22   in the 1965 Act.
23         THE COURT: Oh, well, it says everything --
24   everything that came into the -- created or made
25   available for use or attained by or otherwise came into

91

1    possession of the various entities is an assassination
2    record and that all the assassination records go to the
3    Archives. Is this the distinction you're drawing between
4    title and possession?
5          MR. KUSHNIR: I suppose in a way it is.
6          THE COURT: Okay. So cut through all of that.
7    Suppose -- possession is one of the bundled rights of
8    property, right, and if you take -- and if you take
9    possession now and in perpetuity as to a particular piece
10   of property, you've taken one of the sticks in the bundle
11   of property rights for that piece of property, right?
12         MR. KUSHNIR: Yes.
13         THE COURT: Okay.
14         MR. KUSHNIR: If you do that, then yes.
15         THE COURT: Right. So even if the JFK Records
16   Act isn't a taking, isn't a taking of title, would you
17   agree that it's a taking of possessory rights as to any
18   piece of property that's -- that would be privately owned
19   and is defined as an assassination record under the Act.
20         MR. KUSHNIR: It can be, yes.
21         THE COURT: Okay. So then what -- then I don't
22   know why we would be arguing about title if there's a --
23   they released a taking of the right of possession.
24         MR. KUSHNIR: Well, because I don't think
25   possession and ownership are synonymous in this

92

1    situation.
2          THE COURT: But they don't have to be
3    synonymous in this situation. A possessory right isn't
4    nothing and it has -- the right of possession, that's the
5    thing that's valuable about the Nix film, I would think.
6    So if what you're saying is -- I mean, if, in substance,
7    what -- you're saying, oh, it's not a taking of title,
8    it's just a taking of possession, and if not for the
9    statute of limitations argument, the case would be going
10   forward, wouldn't it?
11         MR. KUSHNIR: Well, Your Honor, I'd submit that
12   possession is not the only thing that's valuable about
13   the Nix film.
14         THE COURT: It doesn't have to be the only
15   thing valuable. It has to be one thing that's valuable,
16   right? I mean, take the recent Supreme Court decision
17   about the right of exclusion. The name is escaping me at
18   the moment.
19         MR. KUSHNIR: Cedar Point.
20         THE COURT: Cedar Point, that's right.
21   Something about trees. I mean, the Government wasn't
22   taking all of the right, it was just taking the right to
23   exclude and that's enough to make it -- to -- if that's
24   enough for a takings case to go forward based on
25   appropriation by the Government of that one stick in the

23 (Pages 89 to 92)

93

1   bundle of property rights, why wouldn't a taking of the
2   possessory rights be enough, too?
3         MR. KUSHNIR:  So, Your Honor, I'd suggest that
4   Cedar Point is not directly on point because it relates
5   to real property.  When it comes to land, the analysis is
6   a little different, which is what it was in Cedar Point.
7   When it comes to personal property, an item that the
8   Government takes possession of, I think we need to look
9   at the entire bundle of rights, at everything that this
10  property has to offer in order to figure out whether
11  taking one stick in that bundle amounts to a taking under
12  the 5th Amendment.
13        THE COURT:  Okay.  But do you have a --
14        MR. KUSHNIR:  It's a bit more complex.
15        THE COURT:  -- do you have a case
16  distinguishing real and personal property in that regard?
17        MR. KUSHNIR:  Nothing that comes to mind
18  immediately, but there are Federal Circuit cases that
19  talk about a situation in which only one stick is taken
20  out of the bundle of rights, and I'm thinking, for
21  instance, of the fishing cases, like Conti v. United
22  States.  Those are takings cases, regulatory taking so
23  it's a little different, as you pointed out correctly.
24        THE COURT:  A completely different world.
25        MR. KUSHNIR:  Right.

94

1         THE COURT:  But I -- plus, I mean, I think
2   Cedar Point kind of reorganizes the world a little bit in
3   that regard.
4         MR. KUSHNIR:  It did, but, again, it's land,
5   and I think land is treated --
6         THE COURT:  Okay.
7         MR. KUSHNIR:  -- a little differently.  When
8   you have a -- you know, you have a situation like
9   Loretto, that I don't think would come up in a case
10  involving personal property.  That's the kind of scenario
11  that can only come up in a case involving the taking of
12  land.  So I do think there's a distinction there.
13        THE COURT:  Yeah, there's some kinds of
14  physical takings that it's hard to conceptualize in the
15  -- in real versus personal property.  But, I mean,
16  suppose -- I mean, we don't need the hypotheticals, but
17  unless you have -- unless you can come back to -- and
18  we'll talk about supplemental briefing, but unless you
19  can come back to me with some -- with some kind of
20  authority saying that taking a stick and a bundle creates
21  a taking claim in the context of real property, but not
22  in personal property, I'd be hard-pressed to draw that
23  distinction for the first time.
24        MR. KUSHNIR:  Okay.  Well, no, and I appreciate
25  that.  Perhaps this is something that's better reserved

95

1   for supplemental briefing.  I do want to read that 5th
2   Circuit case that the Court mentioned.
3         So if you would, Your Honor, I'd like to switch
4   gears to the timeliness issue --
5         THE COURT:  Okay.  Okay.
6         MR. KUSHNIR:  -- which is -- the good news
7   there is that the Court doesn't really need to go into
8   the JFK Records Act because timeliness is a separate and
9   distinct reason why the Court can dismiss and should
10  dismiss the case on jurisdictional grounds at the outset.
11  So I'd like to start with the Court's -- one of the first
12  questions that the Court posed to my friend on the other
13  side, which is can Plaintiff pinpoint the specific
14  government act that gave rise to a takings claim?
15        And I think what my colleague said is that the
16  preexisting possession -- so possessing the Nix film
17  prior to the enactment of the JFK Records Act, plus the
18  enactment of the Act itself, combined are the act that
19  gave rise to the taking in this case.
20        So I think to start we need to parse that out
21  because the Federal Circuit has said time and again that
22  Plaintiff cannot come in and allege a number of different
23  acts and say that in combination they amount to a taking.
24        THE COURT:  I don't think that's what the
25  Plaintiff is arguing.  I think they're saying in the

96

1   light of the factual state of the world, this Act was the
2   last piece of the puzzle that made a taking.  And that's
3   okay, right?
4         MR. KUSHNIR:  I mean, that sounds to me like
5   they're saying the Act -- the enactment of the Act
6   becoming law is the taking in this case.  And if that's
7   their theory, that's fine, but in that case, that's when
8   the claim accrued.  We can talk about whether the claim
9   should be suspended or not --
10        THE COURT:  Unless accrual is delayed in some
11  way.
12        MR. KUSHNIR:  Unless accrual was suspended,
13  absolutely.
14        THE COURT:  Yes.
15        MR. KUSHNIR:  But as a starting place, we need
16  to find an accrual point.  And so the way I understand
17  their claim, that accrual point was in 1992 when the JFK
18  Records Act became law.  So that's our starting place for
19  the timeliness analysis.
20        THE COURT:  Provided that accrual wasn't
21  suspended, I think that's right.
22        MR. KUSHNIR:  Right.  So the question then is
23  whether accrual should be suspended.  And there was
24  discussion of concealment here, and what I'd like to do,
25  Your Honor, is go back to the Martinez case and read what

**For The Record, Inc.**
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

97

1   is required for concealment to be -- to suspend the
2   accrual date. So Martinez 333 F.3d, beginning at 1295,
3   and the specific passage that I'm looking at is at 1319.
4          And what it says -- and I'm going to read a
5   part of a paragraph, not the entire thing -- but it says,
6   "The accrual suspension rule is strictly and narrowly
7   applied: The plaintiff must either show that defendant
8   has concealed its acts with the result that plaintiff was
9   unaware of their existence." And then there's another
10  possible way of suspending accrual that doesn't apply
11  here.
12         So what the Plaintiff has to do here is to show
13  not just concealment. Concealment is a part of it, but
14  they have to show concealment with the result that
15  Plaintiff was unaware of their existence. And that's the
16  sticky part here, because what we have is evidence
17  beginning at 1991, that the Plaintiff or the Plaintiff's
18  predecessor, Ms. Nix-Jackson, believed that the
19  Government possessed the film.
20         THE COURT: So what if the Government was wrong
21  in 1991 when it said all we have is a copy, we don't have
22  the original? Would that count as concealment?
23         MR. KUSHNIR: So the Government was wrong in
24  its representation --
25         THE COURT: Yeah.

98

1          MR. KUSHNIR: -- that it only had a copy?
2          THE COURT: Yeah.
3          MR. KUSHNIR: I'm not entirely sure if
4   concealment requires some sort of ill will or some
5   bad faith on the part of the Government. Honestly, I
6   don't --
7          THE COURT: Okay. Well, then -- right. Well,
8   then your accrual suspension argument has kind of a
9   problem because -- because, you know, one way or the
10  other, the Plaintiff -- the Plaintiff's successor-in-
11  interest wrote to the Government and said, okay, give it
12  back, and the Government said, yeah, we don't have it.
13  Presumably plaintiffs -- you know, property owners have
14  some entitlement to rely on the Government's
15  representation. If the Government says we don't have it,
16  then why shouldn't that delay -- that suspend accrual?
17         MR. KUSHNIR: Well, it doesn't unless the
18  Plaintiff also can show that the result of that
19  concealment was that she was unaware of the existence of
20  the claim. And that's the sticky part here. That's the
21  problem she cannot overcome, because we not only have
22  that 1991 letter, but we also have the 2015 claim also
23  asking the Government to return the film.
24         THE COURT: Yeah, though as your colleague
25  pointed out, the complaint has some ambiguous language.

99

1   It says, well, the last government entity we know of that
2   had the thing is the HSCA and its whereabouts after that
3   is a mystery. That doesn't actually quote a whole lot
4   like the allegations of someone who knows that it could
5   be found in the Archives.
6          MR. KUSHNIR: The complaints only hedged its
7   bets on that factual matter. But what's also important
8   is that the complaint not only had a replevin action to
9   return the film, it also had a takings claim, and it had
10  the same takings claim that is now brought before this
11  Court. So if the Plaintiff had all the information she
12  needed to bring a takings claim in 2015 -- it was brought
13  in the wrong forum and it was dismissed because it was
14  brought in the wrong forum, but it was brought there
15  nonetheless, if she had all the information she needed to
16  bring a takings claim in 2015, how can she then come back
17  in 2023 and say, I didn't have the information I needed
18  until 2021? That doesn't make sense.
19         And the other passage that's very important
20  here, Your Honor, from Martinez, there's a discussion
21  there about that letter from the ex-wife as I mentioned
22  before.
23         THE COURT: Yeah, additional ammunition.
24         MR. KUSHNIR: And -- additional ammunition.
25  The way the Federal Circuit described that letter is

100

1   merely additional ammunition for the claim.
2          THE COURT: So the question is whether the
3   representation about Aerospace are additional ammunition
4   for something Plaintiff and its predecessors already knew
5   about or whether it creates something new?
6          MR. KUSHNIR: Exactly.
7          THE COURT: Okay.
8          MR. KUSHNIR: That's exactly right. And based
9   on the allegations in the complaint and the exhibits
10  appended to the complaint, the '91 letter, the 2015 claim
11  in District Court, I think what we can tell is that this
12  was nothing more than additional ammunition, not
13  particularly powerful ammunition either because it
14  doesn't talk about who has the film in 1992. It only
15  talked about the film being returned in 1978. But, you
16  know, perhaps it does provide some additional backing to
17  the idea that the Government possesses the Nix film, but
18  it's nothing more than additional ammunition because we
19  know that the Plaintiff's predecessor maintained this
20  position all along.
21         THE COURT: Okay. Anything you'd like to add?
22  I don't think I have any more questions for you at the
23  moment.
24         MR. KUSHNIR: I have just two more small
25  points, Your Honor.

101

1      THE COURT: Okay.
2      MR. KUSHNIR: I think counsel on the other side
3  said at one point that our accrual argument focuses on
4  2015. I don't think that's right. Our accrual argument
5  doesn't focus on 2015. Our accrual argument is that
6  accrual of the claim, which accrued in 1992, was not
7  suspended at all. And the reason it was not suspended --
8      THE COURT: That's how I understood your
9  argument.
10     MR. KUSHNIR: Okay, okay. I just wanted to
11 clarify.
12     The final point I wanted to make, Your Honor,
13 is something you brought up and that is the diligence in
14 pursuing Aerospace and trying to figure out what
15 happened. I agree with you, that's a very important
16 point. When we look at Martinez and accrual suspension,
17 the standard is knew or should have known. And if the
18 Plaintiff should have known earlier that she -- I guess,
19 it, ONF, had a claim, then accrual suspension would not
20 be appropriate either. So if Plaintiff or Plaintiff's
21 predecessor could have gone to Aerospace earlier but
22 didn't, I think we would trigger that shown-have-known
23 part. But you are absolutely right, we did not make that
24 argument in our motion because the complaint didn't
25 actually say anything about when Aerospace was contacted.

102

1      So at this stage, without additional factual
2  allegations, we wouldn't be able to make that point. But
3  it's certainly something we would pursue were this case
4  to go forward.
5      THE COURT: Okay. So anything else you'd like
6  to add?
7      MR. KUSHNIR: Nothing else.
8      THE COURT: Okay. So I've got a bunch of
9  question marks kind of floating around throughout my
10 notes here. I think it would be helpful, if you have a
11 chance, to address those.
12     Oh, Mr. Glitzenstein, do you have something
13 else to say?
14     MR. GLITZENSTEIN: Just I wanted to respond to
15 one of the questions that Your Honor asked me in terms of
16 a citation that I could not provide.
17     THE COURT: Oh, okay. If you could just read
18     MR. GLITZENSTEIN: I was reviewing my notes and
19 I do have some case authority in the scenario of accrual
20 in the context of a government misrepresentation.
21     THE COURT: Oh, okay. If you could just read
22 me a couple of citations.
23     MR. GLITZENSTEIN: Yes, Your Honor. So it's
24 the Martin Alvarez v. MSPB case, 824 F.2d 976.
25     THE COURT: 824 F.2d 976.

103

1      MR. GLITZENSTEIN: And just to be complete, I
2  also have a Westlaw cite, 1987 WL 37473.
3      THE COURT: Okay.
4      MR. GLITZENSTEIN: So it is in the -- it's
5  consideration by the Federal Circuit, Your Honor, of the
6  accrual issues where the Plaintiff in that action --
7  where things have been misrepresented to the Plaintiff in
8  that action --
9      THE COURT: Okay.
10     MR. GLITZENSTEIN: -- why it's important.
11     THE COURT: So here's my suggestion. Instead
12 of kind of recounting all of the kind of open issues that
13 we haven't been able to address definitively, my
14 suggestion is that maybe you all might want to order a
15 transcript and no reason to rush it, but maybe give you
16 30 days, something like that, to do some additional
17 thinking and research, maybe supplemental briefs in --
18 say no more than 10 pages, 30 days from now, addressing
19 maybe supplemental answers to any questions raised at the
20 hearing that you think deserve additional attention.
21 Would that be helpful to you both?
22     MR. GLITZENSTEIN: From Plaintiff's
23 perspective, yes, Your Honor. Would this be simultaneous
24 briefs?
25     THE COURT: Yes, simultaneous.

104

1      MR. GLITZENSTEIN: Yes, Your Honor.
2      MR. KUSHNIR: I think that would be helpful,
3  Your Honor. My only request is to make it 45 days
4  instead of 30. I just know I personally have an argument
5  in the Federal Circuit in early March. So I would like
6  to have a little bit of time afterwards, if possible.
7      THE COURT: Okay. Forty-five days sounds fine,
8  too.
9      MR. KUSHNIR: Okay.
10     THE COURT: Everybody happy with that?
11     MR. GLITZENSTEIN: Yes, Your Honor.
12     THE COURT: Okay. I won't try to list and
13 enumerate all the issues that we left open today. It
14 should be clear from a transcript. Are you two willing
15 to order a transcript to cover that?
16     MR. KUSHNIR: Certainly, Your Honor.
17     THE COURT: Great. That sounds good. All
18 right. Anything else to talk about?
19     MR. GLITZENSTEIN: Nothing from us, Your Honor.
20     THE COURT: Okay. Thanks both of you for a
21 very helpful argument. Under advisement. I'll look
22 forward to the supplemental briefs.
23     (Whereupon, at 4:24 p.m., the hearing was
24 adjourned.)
25

26 (Pages 101 to 104)

105

```
 1              CERTIFICATE OF TRANSCRIBER
 2
 3          I, Elizabeth M. Farrell, court-approved
 4     transcriber, certify that the foregoing is a correct
 5     transcript from the official electronic sound recording
 6     of the proceedings in the above-titled matter.
 7
 8
 9
10     DATE:  3/1/2024        S/Elizabeth M. Farrell
11                         ELIZABETH M. FARRELL, CERT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## A

**a.m** 1:17
**ABC** 81:15 83:10,10
**ABC's** 83:15
**ability** 50:19
**able** 36:3 73:13
  102:2 103:13
**above-titled** 105:6
**Abraham** 19:19
**absence** 39:19 65:14
**absolutely** 36:16
  50:21 81:20 96:13
  101:23
**abstract** 71:10
**accompanying** 77:4
**accomplish** 35:2
**accomplishes** 52:15
**account** 21:2
**accrual** 7:12,17
  24:17 25:8,10,11
  26:14 27:4,6,12
  31:3,4 32:3,4,6
  33:22,24,24 53:20
  53:24 65:22 68:3
  68:18 69:3,9,11,11
  70:18 79:19,20
  85:11,22 96:10,12
  96:16,17,20,23
  97:2,6,10 98:8,16
  101:3,4,5,6,16,19
  102:19 103:6
**accrued** 12:25 24:14
  96:8 101:6
**accrues** 7:7
**accuracy** 26:19
**acquaint** 49:21
**acquire** 6:17,19
  19:10,18 20:19
  23:2,6 24:7,20
  41:13 52:1 81:11
  85:13
**acquired** 15:20
  19:22 33:12 67:9
**acquiring** 6:2,13,14
  6:14
**acquisition** 19:3
  22:10 39:20 40:25
  44:3

**act** 5:21,24 6:9,19
  6:25 7:1,4,8,10 9:9
  10:1,7,12,18,19,23
  10:24 11:4,5,13,16
  12:8 13:1,11,19,21
  13:22 14:3,8,11,13
  14:24 15:16,21
  16:6,22,24 17:9
  19:8 24:19 28:25
  30:15 31:5 36:11
  38:3,4,6 39:2,11
  39:11 40:19 41:7
  41:11,13 42:9 43:1
  43:12,24 44:7,9,13
  44:15,21 45:12,19
  46:2,25 47:3 48:10
  48:11,19,21 49:15
  49:16 50:13 51:10
  51:14,17,23,23,25
  52:14,19 75:5,22
  76:22 79:9 82:23
  82:24 86:20,24
  87:5,11,20 88:6,12
  88:22,24 89:3,4,5
  89:14,17 90:5,10
  90:20,22 91:16,19
  95:8,14,17,18,18
  96:1,5,5,18
**Act's** 46:12
**action** 5:15,18 13:15
  19:9,23 20:6 21:11
  21:15,17,19 22:5
  34:20 35:2,25 36:1
  58:5 88:19 99:8
  103:6,8
**actions** 44:5
**activity** 48:4
**actors** 72:4
**acts** 53:22,22 70:23
  95:23 97:8
**actual** 20:10 29:5
  35:9 38:18 51:6
**add** 4:17 36:17
  52:22 68:1,25
  70:12 100:21
  102:6
**additional** 7:14 19:9
  82:24 99:23,24

**100**:1,3,12,16,18
  102:1 103:16,20
**address** 37:8 40:21
  41:15 54:3 102:11
  103:13
**addressed** 49:10
**addressing** 37:16
  103:18
**adjourned** 104:24
**adjunct** 77:25
**Administration**
  41:24 87:19 88:1
  89:3
**adopted** 56:13
**ADR** 19:12,13,15,20
  19:21
**advanced** 10:4
**advised** 85:18
**advisement** 104:21
**Aerospace** 7:15 30:8
  30:9,13,25 45:8
  63:2,3 64:6,6,13
  64:14 67:12 71:17
  71:17 72:6,9,24
  74:2,4,8,21 100:3
  101:14,21,25
**Aerospace's** 72:7
**affidavit** 46:6 47:14
**affirmative** 19:14
  21:11 22:5 23:2,6
  23:9 88:6,12,18
  90:5
**affirmatively** 87:20
**affirmed** 28:1
**afternoon** 3:8,9,10
  3:16,20,21 4:7,20
**agencies** 6:6 35:3
**agency** 6:8 10:11,23
  16:25 58:10
**ago** 41:10
**agree** 18:16 91:17
  101:15
**agreed** 43:6
**ah** 41:7
**ahead** 27:20
**Alamos** 72:21,22
**allegation** 8:14 9:11
  9:12 29:3,20 30:17

**32**:3 58:6 59:12
  60:18 61:12,17
  64:3
**allegations** 9:21
  13:7 28:6,12,13
  29:18 36:2 37:10
  39:14 56:21 58:22
  60:3,9 66:15 79:5
  99:4 100:9 102:2
**allege** 57:24 63:6
  67:3 95:22
**alleged** 13:16 15:1
  31:8 36:2 46:4
**allegedly** 4:24 44:20
**alleges** 36:2 81:10
**alleging** 5:20 60:5
**allowed** 70:7
**allows** 14:8 70:7
  89:14
**altogether** 50:1
**Alvarez** 102:24
**ambiguity** 17:7,10
  39:16
**ambiguous** 98:25
**Amendment** 20:22
  21:13 22:13 87:8,9
  90:2 93:12
**AMERICA** 1:7
**ammunition** 99:23
  99:24 100:1,3,12
  100:13,18
**amount** 12:3 55:11
  95:23
**amounts** 5:15 93:11
**amplify** 4:17 24:23
  53:19 86:6
**analogy** 40:7,14,17
  73:23
**analysis** 50:20 72:7
  73:4,4 93:5 96:19
**analytically** 22:21
**analyze** 50:18
**analyzed** 83:12
**and/or** 58:11 61:13
  61:15,20
**announce** 52:13
**announced** 23:10
**answer** 47:8

**answered** 37:20
  39:8
**answers** 70:8 103:19
**anybody** 31:16
  61:18 89:15
**apologies** 74:23
**apologize** 47:7 59:3
  62:4
**apparatus** 80:25
**apparently** 59:9
**APPEARANCES**
  2:1
**appears** 5:19
**appended** 28:7
  100:10
**application** 48:8
  69:5,7 77:20
**applied** 53:20 97:7
**applies** 85:22
**apply** 7:18 8:8 9:8
  9:15,20 10:24
  53:25,25 97:10
**appreciate** 94:24
**approached** 45:11
**approaches** 67:21
**appropriate** 5:25
  6:21 7:1 14:25
  19:24 21:12 22:6
  23:18 24:20 31:6
  87:21 88:5,6,12,18
  89:25 90:2 101:20
**appropriated** 4:25
  9:9 30:16
**appropriately** 11:25
**appropriates** 89:6
**appropriating** 6:2
  11:6
**appropriation** 6:1
  6:10 7:2 14:24
  88:7 89:4 90:4,13
  92:25
**April** 32:16
**arbitration** 19:11
  41:19 42:24 43:6
  43:10
**archived** 38:7,23
**Archives** 4:10 6:7
  7:25 8:20 9:6

14:23 18:2 29:1
32:18 33:5,17 38:8
41:23 42:7 43:16
47:20 54:16 66:6
67:11,20,22 87:4
87:19,25 88:3,13
89:3,10,12,15 91:3
99:5
archiving 39:1
aren't 40:4 48:14,17
75:25 83:19
arguable 76:3
arguably 78:6,16
82:8,13
argue 7:12 19:2
72:12
argued 72:13
arguing 13:4 14:12
17:9,16 48:13,14
48:17,20 50:9,14
53:10 91:22 95:25
argument 1:18 3:11
3:20 5:23 7:3 15:6
16:15 25:7,9 49:24
50:9 82:22 92:9
98:8 101:3,4,5,9
101:24 104:4,21
arguments 68:2
Ark 73:20,23
arose 12:14
ARRB 17:3,12,14
22:19 23:18 41:12
42:25 43:2,6 48:8
76:23 87:17
ARRB- 75:4
articulated 7:19
27:5
asked 37:19 55:2,3
70:25 102:15
asking 15:22 22:9
40:23 54:24 63:20
98:23
aspect 62:13,14
72:15 73:9
assassination 4:21
6:5,22 10:3,8,9
15:15 16:2 33:1,14
34:21 38:3,6,18

39:10 41:21 45:21
51:7 75:10,16 78:7
78:8 83:11 86:20
87:6 89:9,11,13
91:1,2,19
assassinations 75:18
assert 85:24
asserted 83:15
asserting 84:11
assertion 56:11
asserts 39:15 84:15
assessment 15:19
assume 8:15,23
10:16,21 12:15
24:6,12 26:6,8
28:3 88:9
assumed 13:6 80:2
assuming 8:18 9:21
28:12,13 37:10,22
77:24
attaching 13:18
attained 90:25
attempted 60:23
attention 30:5
103:20
Attorney's 76:6
August 41:21,24
43:13
auspices 66:21
authority 15:20
19:8 31:6 39:22
40:19 41:1,13 43:1
43:3 45:19 51:22
52:18 66:23 69:1
71:5 79:16,18
82:17 83:18 90:1,3
94:20 102:19
authorization 39:20
authorize 7:2 14:24
authorizing 51:25
availability 39:1
available 36:16 38:7
38:24 45:5 47:13
62:7 90:25
aware 15:14,14 16:1
52:12 75:3,4 83:16
awareness 60:21
72:7

## B

back 18:1,8 23:17
51:13 54:16,18,21
54:24 56:22 59:20
61:6 62:5 63:16
65:8 81:23,23 82:5
87:9 88:17 94:17
94:19 96:25 98:12
99:16
backing 100:16
backs 71:5
bad 98:5
based 7:4 12:23 13:7
29:3 47:12 48:18
57:25 60:13 62:7
67:7 92:24 100:8
basic 73:8
basically 45:23 61:3
64:9
basis 56:9
bear 34:3,9
bears 84:16
beat 73:24
becoming 96:6
beginning 97:2,17
behalf 2:2,12 3:18
belabor 86:21
belief 28:24 29:7,8,8
35:10 49:13
believe 16:17 19:17
30:20 35:7 42:17
46:5 61:16 62:5
71:19 76:17 85:3
believed 7:23 33:4
97:18
belong 82:11
belongs 82:7
Ben 2:17
best 40:14 57:25
62:7
bets 99:7
better 94:25
beyond 21:23 22:1,3
42:10 51:24 69:25
big 64:23
bit 11:10 19:6 26:16
31:1 93:14 94:2
104:6

Blakey 56:7 58:1
60:15 67:5 74:15
board 15:15 19:8,10
19:17 20:5 24:7
41:22 42:14
Board's 15:22 16:20
bolstered 33:6
Borislav 2:13 4:8
born 82:13
borne 71:11 73:8
bottom 56:10 58:10
88:14
box 2:16 63:24
breadcrumbs 73:7
break 47:6
brief 19:3 42:25
54:10 86:18
briefing 11:8 18:2,8
18:9 43:23 49:4,11
85:3 94:18 95:1
briefly 86:19
briefs 4:15 103:17
103:24 104:22
bring 24:22 36:3,5
76:12,15 79:14
99:12,16
broad 51:9 83:6
broader 16:10 46:18
broadly 52:10 78:7
brought 19:2 27:7
34:7 35:10 99:10
99:12,14,14
101:13
bugs 56:16
Building 1:13
bulk 3:19
bunch 102:8
bundle 50:22 91:10
93:1,9,11,20 94:20
bundled 91:7

## C

C 3:1
California 70:5
call 29:6,7 30:4 73:4
called 3:3
camera 43:14,18
can't 20:22 21:1

38:19 48:2 55:23
55:24 60:7
care 32:2
carries 80:14
case 1:4 4:20 5:2,5,8
5:15 7:23 10:11,19
10:25 11:23 14:4,6
14:7,10,12,16 15:1
15:8 17:11,15 19:4
21:20 24:16 25:14
27:4 30:17 35:10
35:11 36:8,20 40:8
40:23 41:1,8 44:10
50:24 55:10 57:2,3
57:4 58:15 60:11
69:8,12 71:11,13
76:3 77:22 78:22
83:7 84:16 86:25
92:9,24 93:15 94:9
94:11 95:2,10,19
96:6,7,25 102:3,19
102:24
cases 39:24,25 57:5
93:18,21,22
categorical 54:7
57:7 71:1
cause 35:25 36:1
caveat 25:18
caveats 37:15 66:9
80:10
Cedar 92:19,20 93:4
93:6 94:2
CER 1:25
CERT 105:11
certain 39:19 71:2
84:6,6
certainly 15:10
16:18 17:23 23:13
28:16 31:23 53:9
102:3 104:16
CERTIFICATE
105:1
certify 105:4
CFR 16:16
chain 45:2 55:9,18
56:3 59:13,17
60:24 62:10,12,17
62:21 63:5,7,17

64:20 65:17
**challenge** 83:15
**challenging** 5:9
  26:19 73:12
**chance** 36:18 86:7
  102:11
**characterization**
  75:9,14,15
**characterized** 57:2
**check** 52:23
**Chevron** 17:4,8
**choice** 87:12 88:16
  88:22
**chunk** 64:10
**Circuit** 5:12 7:5,19
  11:24,24 12:24
  14:4 25:14 27:5,11
  28:1 41:8 53:18
  76:3,6 86:25 93:18
  95:2,21 99:25
  103:5 104:5
**circumstances** 18:5
  69:18
**citation** 102:16
**citations** 102:22
**cite** 14:7 41:1 45:3
  63:6 103:2
**cites** 59:20 85:2
**citizens** 43:4
**Civil** 2:15
**claim** 5:4 7:4,12,13
  7:19 8:5,6,7,15
  12:23,24 13:19
  24:14 25:22 27:6,7
  27:8,10 29:9 34:7
  36:3,5 39:12 79:14
  79:20 84:22,23
  85:11,21,24 94:21
  95:14 96:8,8,17
  98:20,22 99:9,10
  99:12,16 100:1,10
  101:6,19
**claimed** 27:9
**claims** 1:1 3:5 7:10
  8:9 27:23 79:1
  80:10
**clarify** 11:5 48:12
  101:11

**clarity** 41:5
**classic** 50:22
**clear** 5:16 17:7,10
  30:23 37:15 60:4
  62:10 70:14 78:23
  104:14
**clear-cut** 11:22
**clearly** 37:21 83:14
**CLERK** 3:4
**client** 17:16,19
  54:15,17,18,20
  55:1 56:17,18,21
  72:8
**client's** 17:17 54:15
  58:18
**close** 16:5
**closer** 13:18
**closest** 69:8
**cognizable** 5:10
**colleague** 36:18 37:2
  41:7 95:15 98:24
**colleague's** 3:25
**collection** 38:19,22
  41:23 51:7 64:23
  87:18 89:8,11
**collections** 43:16
**colloquially** 14:14
**Columbia** 37:19
**combination** 45:14
  95:23
**combined** 95:18
**come** 23:17 77:8,12
  78:23 82:13 87:2
  94:9,11,17,19
  95:22 99:16
**comes** 6:5 18:24
  25:9 48:19,21
  75:20 82:6 89:24
  93:5,7,17
**coming** 11:11 74:10
  74:24 89:21
**Commission** 9:6,7
  33:13
**Committee** 12:20,22
  47:15
**Committee's** 12:20
**common** 39:12
**company** 72:25 81:9

**compare** 6:11
**compared** 13:25
**compensate** 48:9
**compensated** 52:17
**compensation** 6:18
  20:2,23,24 22:12
  23:5 43:5 87:8
  88:7,20
**complaint** 5:18 7:21
  7:22 8:2,2,4 9:11
  9:21 13:8 26:11,20
  28:4,6,7,23 29:13
  29:18 30:1,3,5
  32:13,20 33:7
  34:16,17 35:13,16
  35:18,20,24 37:10
  37:18,24,25 39:14
  41:14,17,18 46:4,6
  50:18 56:9,16 57:1
  57:6,15 58:17,17
  58:19,21,22,24
  60:7,9,17 61:3,14
  61:17,22,24 62:2,6
  63:6,7,14,15 64:4
  64:10 66:9,13 67:3
  67:4 69:22,23
  70:10 71:20,23
  72:2,2,16 73:19
  74:3,6,18 79:5
  81:9 87:16 98:25
  99:8 100:9,10
  101:24
**complaints** 99:6
**complete** 50:17
  103:1
**completely** 93:24
**complex** 93:14
**complicated** 80:25
**complicates** 16:15
**conceal** 26:7
**concealed** 26:2,9
  53:11,22,22 97:8
**concealing** 25:12
**concealment** 54:6
  59:23 62:13,14
  65:22 67:25 68:21
  70:22 71:3 96:24
  97:1,13,13,14,22

98:4,19
**conceals** 25:19,21
**conceptualize** 94:14
**concerned** 52:7
**concerning** 33:14
**concerns** 4:21
**concluded** 12:22
  40:24 41:12 42:25
  43:3 48:8
**conclusion** 19:22
  45:6
**confer** 71:20,24
**confirm** 75:15 85:15
**confirmed** 61:1
**Confirming** 57:18
**conflict** 29:13
**Congress** 5:22 6:12
  6:21 18:20 38:22
  42:3 49:3
**connection** 33:13
  40:21 45:3
**Connick** 14:4,16
  15:3,7,14 16:16
  41:8 45:22 75:4
  76:3
**consequence** 43:5
  77:24
**consequences** 52:9
**consider** 80:22
**consideration** 81:12
  103:5
**considerations**
  66:15
**considering** 81:6
**consist** 89:8
**consistent** 81:18
**constituted** 21:19
  44:10
**constitutional** 90:3
**construction** 16:23
  37:6 48:7 59:23
**contact** 71:17,20
  72:8
**contacted** 30:8
  63:21 81:10
  101:25
**contain** 62:21
**context** 40:24 45:16

77:21 94:21
  102:20
**contexts** 40:20
**Conti** 93:21
**continued** 35:6 39:9
**continues** 7:24 29:1
  29:4 35:7 60:22
  88:11
**continuing** 38:15
  42:1,23
**continuously** 26:11
  26:12
**contradict** 29:14
**contradictory** 32:9
**contrary** 38:6
**control** 14:14,15
  58:3,12 61:13,15
  61:20 70:3 75:19
**conversation** 32:22
  66:17
**conversations** 14:22
  73:15
**conveying** 40:19
**conveys** 41:1 84:23
**copies** 89:8
**copy** 33:20 34:2,9
  74:19 97:21 98:1
**copyright** 42:1
**corporate** 87:24
**Corporation** 72:24
**correct** 8:16,17
  37:11 47:8 48:24
  49:20 60:1,6 105:4
**correctly** 93:23
**correspondence**
  55:3
**couldn't** 36:5 53:12
  54:22 70:16
**counsel** 3:14 30:8
  41:9 63:21 101:2
**count** 97:22
**counterfactually**
  83:9
**country** 81:1
**couple** 4:16 16:10
  83:20 102:22
**coupled** 44:3,15
**course** 12:11 37:4

39:17,21 41:12
43:4 54:5 56:25
60:11 74:20 81:13
86:2,12
**court** 1:1 3:4,7,11
3:24 4:3,6,11,22
6:10 8:3,11,18,24
9:2,10,14,19 10:1
10:13,16,25 11:8
11:20 12:14,17
13:3,24 14:2,6,20
15:2,5,11,13,22
16:1,7,9,14,21,24
17:2,5,11,12,21,23
17:25 18:4,11,14
18:23 19:1,15 20:1
20:4,8,12,20 21:1
21:9,14,18,25 22:7
22:16,19,24 23:8
23:14 24:21,25
25:4,8 26:1,5,8,16
26:23 27:5,17,20
27:23,24 28:10,17
28:19,21 29:11
30:6,21 31:11,15
31:19,25 32:5,10
32:12,15,19 33:2
33:18 34:1,8,15,18
35:2,12,19 36:6,9
36:14,17,22 37:1,4
37:19 38:9 39:9,22
39:25 40:9,24 41:2
41:4 42:5,13,20
43:17,20,22 44:7
44:16,19 45:22
46:1,8,22 47:11,19
47:25 48:12,17,23
48:25 49:8,12,23
50:5 51:13,21 52:4
52:20 53:1,7,10,15
54:2,11 55:14 56:1
56:5,14,25 57:10
57:12,16,20 58:2,9
58:16,24 59:2,4,7
59:17,21 60:2 61:2
61:11,19 62:3,5,23
63:5,10,19,23 64:2
64:9,18 65:4,19

66:3 67:6 68:6,10
68:18 69:1,6,15
70:11,17,21 71:4,9
71:15,22 72:1,13
72:17,21 73:1,20
73:24 74:1,10,16
74:22,25 75:3,12
75:16 76:20 77:5,5
77:6,14 78:2,5
79:1,15,24 80:11
80:19,21 82:1,19
82:21 83:2,19 85:2
85:6,10,16,20 86:2
86:4,12,16,23,25
87:1,11 88:21,25
89:7,18,21 90:6,11
90:14,23 91:6,13
91:15,21 92:2,14
92:16,20 93:13,15
93:24 94:1,6,13
95:2,5,7,9,12,24
96:10,14,20 97:20
97:25 98:2,7,24
99:11,23 100:2,7
100:11,21 101:1,8
102:5,8,17,21,25
103:3,9,11,25
104:7,10,12,17,20
**court-approved**
105:3
**Court's** 11:19 31:24
40:22 41:15 95:11
**Courtroom** 1:12
**Courts** 1:13
**Covenant** 73:21
**cover** 104:15
**create** 40:12
**created** 75:19 90:24
**creates** 77:15 88:22
94:20 100:5
**credited** 65:12
**critical** 55:10 62:21
65:20
**currently** 37:11
**custody** 45:2 55:9
55:18 56:4 59:14
59:18 60:25 62:11
62:12,17,21 63:5,7

63:17 64:21 65:18
**cut** 91:6

---
## D

**D** 3:1
**D.C** 1:15 8:2 33:17
34:17 67:21
**Dallas** 34:21
**date** 24:17 25:8,10
25:11 26:14 27:12
31:3,4,4 32:2,4,6
32:23 33:22,24
48:3 53:25 71:19
97:2 105:10
**dated** 33:7
**dating** 82:12
**day** 28:18 41:24
**days** 103:16,18
104:3,7
**DC** 2:5,7,18
**DDC** 35:2,18,20,24
**decade** 88:4
**decades** 55:1 81:13
**decide** 88:4,17
**decided** 19:20 20:5
45:18
**decides** 23:18 82:17
**decision** 19:18 20:13
20:17 23:2,6,9,10
24:2,7,8,9,13,17
24:19 41:18 42:23
43:10 53:18 90:8
92:16
**defeats** 29:9
**defendant** 1:8 2:12
53:21 58:3 97:7
**defended** 17:16
**defer** 17:3,6,11
**define** 16:2
**defined** 10:8,9 75:16
91:19
**defines** 16:8
**definition** 16:4,5
45:21 78:7
**definitively** 103:13
**delay** 35:5 69:3
98:16
**delayed** 96:10

**delays** 79:20
**deliberately** 83:5
**delving** 86:23
**demand** 11:17 66:20
**demanded** 26:12
**demanding** 8:1,3
**demonstrable** 70:15
**demonstrated** 29:9
**denial** 62:15,16 69:2
70:18
**denials** 60:15
**denied** 45:9 54:13
56:2
**denies** 69:10
**denying** 54:12
**Department** 2:15
4:9 43:7,9 52:3
**depend** 9:3
**depending** 13:9 83:1
83:3
**depends** 33:24
46:13
**deposited** 87:25
**deprived** 50:19
**described** 12:25
61:13 74:6 99:25
**describes** 43:11,12
43:12
**descriptive** 42:9
**deserve** 103:20
**destroyed** 59:16,18
80:3
**detail** 42:22
**details** 60:3
**determine** 19:20
72:24
**detriment** 61:1
**developed** 14:10
18:7 84:2,17
**development** 84:18
**didn't** 18:17 21:13
29:19 30:23 34:12
50:4 54:19 57:24
60:7 64:12 72:8
76:14 78:19,19
80:3,8 81:23 99:17
101:22,24
**Diego** 73:6

**delays** 21:20
**difference** 21:20
23:20 40:1 51:1,18
55:5 57:12 68:15
79:25
**different** 19:4 22:14
24:16 29:21 40:1
40:20 57:5,8 58:15
69:21 72:25,25
81:2 93:6,23,24
95:22
**differently** 94:7
**digital** 1:25 72:20
73:3,4
**diligence** 28:12
44:25 54:25 55:16
62:25 67:17 70:1
71:16 72:3,9 81:13
101:13
**direct** 30:4 35:3
42:15 69:4 70:25
**directed** 41:22 42:6
42:13,14 87:17
**directions** 29:22
**directly** 11:19 32:9
37:8 38:24 53:8
60:19 63:4 93:4
**disagree** 22:23,25
**disagreed** 10:5,6
**disagreement** 30:1
**disappearance**
59:22
**disbanded** 79:7
**disbelieve** 66:1
68:22
**disbelieving** 65:24
**discern** 35:9
**disclose** 36:11
**disclosed** 64:11
**discover** 88:13
**discretion** 87:13
89:12
**discussed** 42:24
45:10
**discussion** 51:2
63:16 74:8 83:16
90:20 96:24 99:20
**dismiss** 3:12 5:19
18:16 27:22 28:2,3

37:18,23 51:5 53:2
  56:10,12 95:9,10
**dismissal** 28:2
**dismissed** 27:22
  99:13
**dispose** 84:7
**disposition** 79:18
**dispute** 26:24 51:24
**disputed** 5:11
**disrespect** 65:12
**dissuaded** 34:12
**distinct** 95:9
**distinction** 11:9,21
  23:24 39:5 45:18
  50:6,8,16 51:1
  71:12 91:3 94:12
  94:23
**distinctions** 68:24
**distinguish** 23:16
  67:12 84:9
**distinguishing** 69:17
  83:20 93:16
**District** 8:2 34:18
  37:19,19 76:5
  100:11
**Division** 2:15
**Docket** 37:25
**document** 24:2
  66:14 67:3 85:3
**documentary** 83:10
**documented** 65:25
**documents** 14:15
  55:9 63:17 80:25
**doesn't** 6:1,3,4 9:20
  10:3 11:6,16 27:12
  29:7 31:9,10 34:2
  36:7 39:2 40:13
  42:23 46:16 51:17
  54:8 66:8,22 68:2
  78:11,25 81:3
  82:10 84:7,7,22
  89:5 90:1,12 92:14
  95:7 97:10 98:17
  99:3,18 100:14
  101:5
**doing** 3:19 31:20
  73:3
**don't** 8:24 9:10 10:5

16:20 17:5 18:18
  19:5,12 21:14,16
  22:8,23,25 23:6,8
  23:9,12,14 24:9
  26:18 29:25 30:21
  30:25 31:19,20
  33:20 35:23 40:16
  41:1 42:11,17
  47:17 49:1,7 50:16
  51:19 52:4,10,10
  52:11 55:7,9 56:11
  60:16,16 61:16
  63:19 64:25,25
  65:2,12,16,17
  66:16 67:23 68:14
  69:18 70:24 71:1
  71:11,19,22 72:1
  73:3,13,16 78:3,4
  78:5 79:10,10,16
  81:3,4 82:9,13
  84:15 85:10 86:4
  86:20 89:21 90:14
  91:21,24 92:2 94:9
  94:16 95:24 97:21
  98:6,12,15 100:22
  101:4
**door** 70:5
**doors** 55:25
**draft** 60:7
**draw** 26:25 28:8
  50:6 68:10 94:22
**drawing** 50:8 91:3
**dry** 61:5
**dunned** 54:16
**duration** 39:2

— E —

**E** 3:1,1
**earlier** 24:18 27:13
  63:16 72:7 101:18
  101:21
**early** 28:24 29:8
  33:3 34:6 104:5
**easy** 73:17,17
**ECF** 32:14
**effect** 33:21,23
  37:22 43:1,25
  44:22 45:12,12

46:2,13 49:15,16
  51:25 82:2 84:10
  84:18 89:20
**effected** 42:12 48:15
**effective** 44:21
**effectively** 38:4,17
  51:6
**effects** 51:12
**effectuate** 90:4
**eight** 81:10
**either** 53:21 61:5
  71:23 97:7 100:13
  101:20
**electronic** 105:5
**Elizabeth** 105:3,11
**embraced** 54:7
  56:10
**emergency** 63:23
**emphasize** 13:13
**employee** 63:2
**enacted** 42:3 78:14
**enactment** 43:24
  44:2,4,6,8,15
  95:17,18 96:5
**endorse** 48:10
**endorsed** 43:7 52:2
**endorses** 76:4
**enforced** 52:2
**engaging** 55:1
**enormous** 55:11
**Enterprises** 1:4 3:12
**entire** 93:9 97:5
**entirely** 5:16 37:15
  98:3
**entities** 14:9 73:3
  91:1
**entitled** 65:21,23
**entitlement** 98:14
**entity** 87:24 99:1
**enumerate** 104:13
**episode** 67:24
**era** 13:17
**erased** 45:18
**erroneously** 72:19
**escaping** 92:17
**especially** 19:3
**ESQ** 2:3,4,13,14
**essentially** 25:12

52:4
**establish** 69:24
**established** 12:8
  19:13 45:1 51:21
**estopped** 15:5,6
**evaluation** 77:11
**evaporated** 12:21
**event** 44:9,18
**events** 44:12 45:14
  54:4 67:17 68:4
**Everybody** 104:10
**everyone's** 78:13
**evidence** 31:15 32:8
  44:14 45:5 46:3
  56:3 62:22 63:13
  64:21 65:7,14
  66:11,12 67:25
  70:15 97:16
**ex-wife** 27:9,14
  99:21
**exact** 25:24 52:2
**exactly** 14:1,1 19:12
  20:16 21:25 23:9
  26:4 35:19 40:6,19
  75:12 76:11 80:11
  100:6,8
**example** 40:11
  51:20 54:18 66:22
  67:25 81:25
**exchange** 66:4
**exclude** 92:23
**exclusion** 92:17
**excuse** 38:23 41:19
  54:2
**exercise** 18:15,19
  49:2 55:21 73:12
  82:17 83:17
**exhibit** 8:1,4 28:22
  28:22 32:13 33:6
  34:14 37:25 41:17
  41:20 43:8,12 46:7
  46:21 47:8,13
  57:16 66:5 67:15
  67:20 87:15,16
**exhibits** 7:22 28:7
  100:9
**exist** 79:3
**existed** 7:19

**existence** 13:2 53:23
  70:24 73:11 97:9
  97:15 98:19
**existing** 35:21
**exists** 8:19
**expired** 7:11
**explain** 15:2 31:1
  41:20 46:24 51:18
**explanation** 51:18
  61:8,8
**explicit** 51:16
**explicitly** 13:25 70:9
**exposed** 63:1,1
**express** 39:21
**expression** 20:18
**expressly** 6:13 51:23
  81:3
**extend** 78:6
**extending** 75:10
**extensively** 54:1
**extent** 30:20 50:6

— F —

**F** 4:22 6:23 33:1
  34:20
**F.2d** 53:18 102:24
  102:25
**F.3d** 14:7 97:2
**face** 17:10 62:2 67:2
  70:16
**fact** 6:24 22:19 25:6
  25:13 26:3 27:3
  29:15 30:9 38:21
  49:9 51:12 54:2
  56:16 62:15,21
  64:6,20 69:2,10
  79:23 84:5
**factor** 70:14
**facts** 28:3 29:12
  32:5 54:1,21 56:15
  68:21 73:8
**factual** 8:15 26:19
  26:24 29:20 65:13
  96:1 99:7 102:1
**fails** 54:3
**fair** 24:4,4
**faith** 98:5
**falls** 45:20

**familiar** 4:14 14:3 14:17 15:17,18,24 84:25
**family** 47:22
**far** 5:17 32:5 61:4 69:17,25
**Farrell** 105:3,10,11
**faulted** 65:24
**favor** 29:22
**February** 1:16
**federal** 1:1 3:4 5:12 7:5,19 11:24,24 12:24 14:9 20:14 23:19 25:14 27:4 27:11,23 28:1 40:12 42:16,18 53:18 93:18 95:21 99:25 103:5 104:5
**fight** 8:24
**fighting** 10:13
**figure** 69:9 93:10 101:14
**file** 5:3 63:24
**filed** 4:22 8:2,7 34:17 56:17
**files** 64:20,23,24
**filing** 35:13 56:22
**film** 3:23 7:15,24 8:1,4,15,19,23 9:4 9:5,8,24 10:22 11:12 12:6,6,19,21 15:19,20 19:2,4,7 19:10,18,21,22,25 19:25 20:1,11,14 20:19 22:6 23:1,3 23:4,6 24:6,8,20 26:8,12,13 29:2,5 29:7 30:10,13,14 30:16 31:6,8 32:2 32:4,24 33:6,12,15 34:20 35:4,8 36:1 37:11,13,22,22 39:10 40:21 41:14 41:19,22,25 42:1,2 42:22 43:14 44:3,4 44:15,20 45:2,8 46:1,9,13 47:1,4 47:10,15 48:3,9

49:14 50:25 51:24 52:17 53:11 54:8 54:12,24 55:7,10 55:17,19 56:4,11 57:8,22 59:14,18 59:23 60:16,24,25 62:9,12,15 63:4 64:7 65:8,17 66:8 67:8,9,10,19,20,22 68:13 70:6 71:18 72:20 74:19 76:11 76:19,21 77:21 83:12,15 87:14,18 87:21,24,25 88:3,5 88:6,11,12,15,19 92:5,13 95:16 97:19 98:23 99:9 100:14,15,17
**filmed** 34:21
**films** 70:5 73:5
**final** 12:23 27:18 72:19 101:12
**find** 16:16 25:23 62:23 64:12 96:16
**fine** 96:7 104:7
**firm** 20:5
**first** 4:12 5:12,13,24 8:12 25:18 28:21 32:21 33:10 34:18 34:19,19,24 35:1 38:2 43:3,10 48:20 56:17 63:3 71:17 71:20 94:23 95:11
**Fish** 2:5 3:17,19 4:4
**fishing** 93:21
**flies** 67:2
**floating** 102:9
**focus** 4:16 68:4,8 101:5
**focused** 68:7
**focuses** 101:3
**FOIA** 55:4,6 64:11 65:16
**follow** 16:24 30:21 50:4 69:17 73:7
**following** 16:17 59:10
**footage** 32:24 66:8

**footnote** 85:3,5,6
**foreclose** 28:11
**foregoing** 105:4
**forensic** 73:4
**forever** 39:1 50:14
**forfeited** 49:24
**fork** 76:7
**form** 24:9 70:8
**formal** 21:6,14,16 21:19 24:1,7 55:3 66:14
**formalize** 20:13,17
**formalized** 23:11
**formed** 56:8
**formulation** 25:25
**formulations** 25:15
**forth** 29:17
**forward** 92:10,24 102:4 104:22
**found** 10:17 16:3 33:19 63:14 75:18 82:8 88:24 99:5
**four** 53:7
**framed** 53:6
**Franklin** 2:17
**Frankly** 41:5
**friend** 87:15 95:12
**full** 39:15
**fundamental** 68:24 68:24
**fundamentally** 58:15
**further** 35:5 41:3 42:11 48:4,5 86:14

——— **G** ———

**G** 3:1
**gap** 31:22
**gather** 89:14
**Gayle** 2:23 3:21 5:2 32:17 34:6,17,25 67:16
**gears** 95:4
**general** 39:23 63:11 63:14

**genuine** 51:24
**getting** 6:17 30:24 89:1
**give** 4:17 20:24 25:24 36:18 61:6 86:7 98:11 103:15
**given** 21:2 31:12 41:5 44:19,22,24 44:25 45:4 49:12 49:13,13 51:9
**gives** 87:11 89:12
**glimpse** 80:24
**Glitzenstein** 2:4 3:19 4:1,1,3,4 36:23,24 37:5 38:10,13,15 39:23 40:6,16 41:5 42:10 42:17,21 43:19 44:2,11,17,24 45:24 46:3,15 47:6 47:12,23 48:1,16 48:20,24 49:6,9,20 50:3,15 51:19 52:7 52:23 53:5,13,16 54:23 55:16 56:2,6 56:24 57:1,11,13 57:18,21 58:8,13 58:20 59:3,5,9,19 60:1,6 61:7,16 62:1,4,24 63:9,11 63:22 64:1,3,16,19 65:5,20 66:13 67:14 68:9,17,20 69:4,13,20 70:12 70:19,22 71:7,14 71:19,24 72:11,15 72:18,22 73:2,22 73:25 74:7,13,17 74:23 75:2,6,13 76:17 77:1,13,18 78:4,17 79:21 80:6 80:16,20,22 82:15 82:20 83:1,3 85:1 85:5,8,14,18,25 86:3,10,14 102:12 102:14,18,23 103:1,4,10,22 104:1,11,19

**go** 14:13,15 18:1 22:1 27:20 36:14 45:19 55:19,19,23 55:24 62:5 64:23 64:24 72:9 73:9,13 81:20 83:14 84:5 88:15 91:2 92:24 95:7 96:25 102:4
**goes** 21:23,24 22:2 42:8 69:25
**going** 23:4,21 27:25 42:6 51:13 55:23 57:13 58:6,19 64:22 68:7 71:15 72:3 73:22 82:10 92:9 97:4
**good** 3:10,16,24 4:7 4:11,20 21:4 22:11 24:24 95:6 104:17
**goodness** 88:25
**government** 4:6,23 4:24 5:9 6:16,18 7:24 8:14,22 9:4,5 9:9,16,24 10:2,11 10:22 11:1,7,13,15 11:25 12:7,7,18 13:4,6,6,9 14:10 14:12 16:25 19:22 19:23 20:7,10 21:11 22:5 23:2,4 23:5 24:20 25:12 25:19,21 26:2,7,13 28:25 29:4,7 31:5 31:7 33:4,12 35:3 35:7,11 37:9,12,16 38:15,17 39:7,9,14 40:17,20 41:6,10 41:25 42:2 44:19 46:17,18 47:5 48:10 49:17,18,23 49:25 50:1,5,10,13 50:24 51:4,15,22 52:1,13 53:6,11,12 54:3,8 55:5 56:9 57:2 65:11,23,25 66:2,4 67:9 68:2 69:10 70:18 72:12

75:25 76:4,18,21
76:23 77:23 78:11
78:18,22,24,25
79:11,25 80:2,3
82:7,10,11,17 83:4
83:9,13 84:5,11,14
85:2 87:6,12,20
88:5,10,18 89:6,9
89:25 90:19 92:21
92:25 93:8 95:14
97:19,20,23 98:5
98:11,12,15,23
99:1 100:17
102:20
**Government's** 3:12
10:17,20 11:12
38:2 39:18 45:24
46:13 47:2,4 49:14
53:2 54:9 56:12
67:2 69:2 70:15
76:1,24 78:9 81:8
83:17 98:14
**governmental** 5:14
5:18 13:15
**granddaughter** 3:22
**grandfather** 32:25
32:25
**Great** 104:17
**greater** 12:12
**grounds** 95:10
**guess** 63:1 101:18

**H**

**ha** 66:25
**half** 5:1
**Halkowski** 2:3 3:10
3:16,17,25
**halkowski@fr.com**
2:9
**hand** 19:4 29:15,16
54:16,20 61:5
69:13 83:22
**handle** 50:18
**handling** 80:8
**hands** 16:12 43:4
76:21 78:9 81:24
82:1 83:22,23,24
83:25

**handwritten** 70:2
**happen** 5:13
**happened** 30:24
31:13,22 42:5,16
42:22 47:18,18
52:6 59:22 68:4
81:18 87:10,14
101:15
**happy** 24:10 41:2
104:10
**hard** 20:20 23:15
54:21 56:18,20
62:24 94:14
**hard-pressed** 94:22
**harder** 23:23
**hasn't** 21:22 77:10
**haven't** 15:25 18:7,7
75:14 77:19 80:11
84:2,16 103:13
**haystack** 55:13,20
55:22,23
**He'll** 3:19
**headlong** 12:11
**hear** 4:12
**heard** 54:9
**hearing** 18:12
103:20 104:23
**hedged** 99:6
**heirs** 9:25 19:19
20:3,18 22:4 88:17
**held** 14:16 40:12
47:4 78:20
**helpful** 18:12
102:10 103:21
104:2,21
**Henry** 47:16,20
**here's** 14:2 82:3
103:11
**hesitance** 31:24
**hey** 78:11
**hindsight** 73:16,17
**historical** 34:20
81:14
**history** 51:20
**Hmm** 38:10
**hold** 14:8 50:13
**holds** 12:3 62:15
**Honestly** 98:5

**Honor** 3:16 4:2,5,7
4:19,20 5:5 8:22
13:12 14:21 16:19
17:8 18:21 23:13
25:6,23 27:2 29:25
30:4 31:18 32:8
34:6,13 35:23
36:21,24 37:1 40:6
40:16 41:8,15
42:11,19 43:19
44:24 46:20 47:7
47:24 48:6,16,22
49:7,22 50:3,15
51:20 52:24,25
53:14,17 55:11
57:5,14,18 58:8,13
58:20 59:3,12 60:1
60:6 62:2,14 63:9
63:12,22 64:17
65:6 67:1,14 69:13
69:21 70:12,19
71:7,14 74:7,14,24
75:6,15 80:7,16
82:15 85:1,9,15,18
86:1,11,15,17
92:11 93:3 95:3
96:25 99:20
100:25 101:12
102:15,23 103:5
103:23 104:1,3,11
104:16,19
**Honor's** 47:9
**Honorable** 1:21 3:5
**hopefully** 86:18
**House** 12:19,20,22
45:6 46:5 47:14
48:14 56:7 60:21
61:18 62:8 72:18
**housed** 33:16 67:10
67:20
**Howard** 1:13
**HSC** 64:7 74:5
**HSCA** 30:10 57:22
58:25 59:24 60:25
61:4,15,22,24
62:13 64:24,24
65:8 70:3,6 72:4
74:18 79:6,7,7

99:2
**hunting** 47:17
**hypothetical** 8:25
10:14 12:5 31:21
37:9,20 39:8,13
88:10
**hypothetically**
83:11
**hypotheticals** 94:16

**I**

**i.e** 37:22
**I'd** 4:12 17:23 32:8
37:1,8 67:22 71:4
86:7 92:11 93:3
94:22 95:3,11
96:24
**I'll** 4:17 15:9 16:18
18:8 29:24 30:4
36:18 45:2 58:5
63:12,13,17 68:24
86:17,19 104:21
**I'm** 3:17 4:8,14 9:19
11:10,11 14:14,21
15:17,22,24,24
19:25 20:16 21:7
22:1,9 23:1 24:10
27:20 31:18 32:25
33:23 35:18 36:14
36:20 40:9 43:22
46:15,15 49:5 50:3
52:12 57:13,20
59:2,4,5 64:22
68:7 69:6,7,14
72:13,14 74:7,9,11
74:13 76:12 77:20
77:24 80:12,21
84:1 85:18 93:20
97:3,4 98:3
**I've** 32:15 42:18
88:24 102:8
**idea** 29:4 30:22,23
62:19,20 89:25
100:17
**identical** 5:4 57:3,4
**identified** 83:10
**identify** 3:14 6:16
70:9 83:7

**ill** 98:4
**illustration** 35:21
52:15
**imagine** 16:4 66:18
72:11
**immediately** 74:24
93:18
**impacts** 79:12
**impatient** 89:22
**implemented** 76:22
**implementing** 15:16
75:5,23,23 76:15
**import** 65:6
**important** 13:14
33:15 35:1 45:1
55:8 64:20 70:14
81:14 87:22 99:7
99:19 101:15
103:10
**imprimatur** 66:23
**in-interest** 9:18
**inability** 50:17
**inclined** 17:23
**include** 47:13 75:17
89:11
**included** 41:18
**includes** 38:22
61:17
**including** 63:24
**inconsistent** 15:7
**incorrect** 62:19
**index** 59:13
**indication** 90:17
**individual** 46:10
**individuals** 76:2
**inferences** 26:25
**informal** 21:21,24
22:1 66:19
**information** 7:14
25:13 30:12,24
36:4 47:13 55:11
56:7,8 57:25 58:14
60:14 62:7,8 63:2
63:6,8 64:14 69:12
74:14 81:15 83:6
99:11,15,17
**informed** 87:3
**inherently** 25:14

53:24 73:11
**initially** 4:23
**injury** 53:24 70:24
    73:11
**instance** 93:21
**intend** 54:6
**intent** 20:18
**interacts** 85:11
**interest** 5:11 98:11
**interference** 28:8
**interpret** 35:16
**interpretation** 10:4
    11:4 48:11 89:1,19
**interpretations**
    35:13
**interpreted** 38:3
    40:18,18 41:7
**interprets** 16:21
    38:5
**invalid** 17:18
**investigation** 12:22
    33:13 35:16
**investigative** 69:25
**investigatory** 18:20
    35:20 49:3
**invoked** 19:8,16,16
**involve** 84:1
**involved** 22:22 24:1
    35:4 72:4
**involves** 32:5
**involving** 94:10,11
**irrelevant** 31:1 49:4
**isn't** 39:21 66:11
    77:14 91:16,16
    92:3
**issue** 7:3 8:12,13
    12:12,12 17:22
    28:4,19 37:6,16
    41:6 45:2,15 48:6
    53:19 62:11 67:24
    74:20 76:14 80:12
    84:17 86:22,23
    87:3 95:4
**issued** 75:5
**issues** 18:5 37:2,7
    45:4 53:6,7 65:22
    74:25 103:6,12
    104:13

**it's** 4:1,13 5:16 8:19
    9:12 10:15 13:14
    14:7 15:6 16:9,10
    20:20 21:3,7 23:15
    25:20,21 26:16
    28:20,20 29:6
    33:20 38:13,25
    39:16 40:20 44:2,4
    44:5,8 45:13 46:9
    48:18 49:4,21
    50:25 51:13,16
    52:1,2,2 54:13,25
    55:12 56:15,16
    57:8 59:6,19,20
    60:4,10 61:23
    63:19 65:5,6 66:14
    66:20,20,21,22
    69:4 70:6 72:1,2
    73:20 74:10,10,24
    78:12,20,23 79:5
    82:10 84:17 86:21
    91:17 92:7,8 93:14
    93:23 94:4,14
    100:18 102:3,23
    103:4,10
**item** 21:12 93:7
**items** 6:2,4 11:6
    75:25 76:1

### J
**Jackson** 45:11 67:16
    67:18
**Jackson's** 28:24
**Jeffrey** 2:24 4:10
**Jenkins** 11:23 12:9
    12:25
**jenna.e.munnelly...**
    2:20
**JFK** 5:21,24 6:9,19
    6:25,25 7:4,8,10
    10:1,7,12,18,19,23
    10:24 11:4,5,11,13
    11:15 12:8 13:1,10
    13:19,21,22 14:3,8
    14:11,13,23 15:16
    15:20 16:6,22,24
    17:9 19:8 24:18
    28:24 30:15 31:5

31:16 36:10 38:3,6
    39:11 40:18 42:8
    43:15,24 44:21
    46:2,12,25 47:2
    48:9,19,21 49:15
    49:16 50:12 51:14
    51:17 75:5,22
    76:22 79:9 82:23
    86:20,24 87:5,11
    88:21,24 90:10,20
    91:15 95:8,17
    96:17
**John** 4:22 6:23 33:1
    33:14 34:20
**joined** 4:8
**joining** 3:20
**Judge** 3:9
**judicially** 15:6
**jumping** 4:18
**June** 33:7
**jurisdiction** 26:21
    76:13 86:22
**jurisdictional** 25:2
    28:4,20 29:12
    95:10
**Justice** 2:15 4:9 43:7
    43:9 52:3
**justify** 24:3

### K
**Karen** 1:25
**keep** 10:2 58:6,16
    58:19 87:7 89:14
**keeping** 10:7
**keeps** 12:1
**Kennedy** 4:22 6:23
    33:1,14 34:21
**kept** 12:7
**key** 54:4
**kind** 14:14 16:15
    21:4 23:25 24:2
    25:15 31:21 40:10
    69:8 71:15 72:14
    74:2 84:6 85:23
    94:2,10,19 98:8
    102:9 103:12,12
**kinds** 94:13
**knew** 5:2 7:18,23

8:5 26:18 33:25
    34:4,9,10 35:8,14
    56:18 60:10,13
    77:22 100:4
    101:17
**knew-or-should-h...**
    8:8
**know** 3:23 5:3 7:17
    7:21 14:12,22 18:4
    20:17 21:14,16,18
    22:8 23:8,9,15
    24:9 28:4 29:19
    33:3 34:12 36:8
    40:1 44:8 45:15,17
    45:22 47:17,18
    50:19 51:4,22 52:8
    52:9 54:3,5,9,17
    54:19 55:21,25
    57:1 59:11 60:20
    60:23 62:18 64:25
    65:18 66:4,15
    68:13 70:24 71:17
    73:3,10,14 74:18
    75:3 76:9 78:12,20
    79:3,4,6,10,10,13
    79:17 80:25 82:13
    84:15,15,20,24
    85:10,12 88:14
    91:22 94:8 98:9,13
    99:1 100:16,19
    104:4
**knowledge** 28:14
    29:5,6,6,21 35:9
    35:17,22 56:20,22
    57:8,9 58:19,23
    66:11,12
**known** 7:18 8:9 28:8
    33:25 34:4,10 35:9
    53:12 54:22 59:24
    60:21,24 62:10,12
    66:25 79:6 101:17
    101:18
**knows** 6:23,23 84:2
    84:3 99:4
**Kurt** 2:4 3:18 4:1
**Kushnir** 2:13 3:9
    4:7,8,19 8:17,21
    9:1,3,12,15,23

10:6,15,21 11:3,18
    11:21 12:16,18
    13:12 14:1,5,19,21
    15:4,9,12,17,24
    16:4,8,13,18 17:5
    17:20,22 18:1,10
    18:13,21,25 19:7
    19:17 20:2,7,9,16
    20:25 21:7,10,16
    21:23 22:3,15,18
    22:23,25 23:12
    24:4,24 25:3,5,17
    26:4,6,22 27:2,18
    27:21 28:1,16,18
    29:24 30:7 31:2,14
    31:18,23 32:1,7,11
    32:13,16,21 33:3
    33:23 34:5,11,16
    36:20,22 38:9,11
    38:14 86:7,16,17
    87:2,13 88:23 89:2
    89:16,20,24 90:9
    90:12,16 91:5,12
    91:14,20,24 92:11
    92:19 93:3,14,17
    93:25 94:4,7,24
    95:6 96:4,12,15,22
    97:23 98:1,3,17
    99:6,24 100:6,8,24
    101:2,10 102:7
    104:2,9,16

### L
**L** 2:3
**laboratory** 7:15
**lack** 58:18
**lacked** 62:16
**lacking** 88:8,9,11
**lacks** 40:25
**land** 93:5 94:4,5,12
**Landou** 2:24 4:10
**language** 5:25 6:10
    6:23,25 38:22
    39:17,19,21 42:10
    89:4 90:13 98:25
**law** 6:11,20 7:8,9
    9:8,19 10:23 13:25

25:11 28:25 30:15
39:12 42:3 43:13
43:17 45:11 46:11
51:15 71:11,13
75:24 78:5,13,14
79:22 82:24 83:23
84:9,10,13,16,24
90:6 96:6,18
**laws** 83:21
**lawsuit** 29:15 54:5
**lawyer** 66:22
**layout** 28:23
**lead** 18:17 81:23
**leads** 45:6 51:14
**learned** 44:25 45:4
58:1 67:4
**learning** 67:4
**leaves** 51:24
**led** 21:22 54:4 81:22
**left** 50:24 51:9
104:13
**legal** 47:21 53:16
66:14 84:1,10
**legislation** 7:7,8
42:3
**legislative** 7:6 51:20
**let's** 8:11,11 11:25
12:6 24:6 29:7
40:10 52:20 68:6
68:10
**letter** 7:25 27:9,12
27:14 29:17 32:16
32:23 33:7,9,19
66:6,19,24 67:7,7
67:16,19 98:22
99:21,25 100:10
**level** 17:19 57:7,8
66:23 69:24 70:7
72:23
**levels** 65:6
**Lewis** 2:14 4:9
**liability** 12:9
**library** 55:24
**light** 96:1
**limitations** 5:6 7:10
8:13 24:22 25:2,9
37:7 45:4 46:23
52:21 53:1,4 75:1

76:10 77:9,9 92:9
**line** 12:9 34:19
56:10 74:1,12
**list** 104:12
**litigation** 5:17
**little** 11:10 19:6
25:20 31:1 42:21
53:3 68:7 93:6,23
94:2,7 104:6
**LLC** 1:4 3:12
**LMH** 87:23
**locate** 60:23
**log** 70:3
**logical** 71:10
**logs** 55:15
**long** 9:17 17:3,6
24:22
**longer** 12:3 67:8
**look** 5:5 15:9,11
16:19 17:24 28:5
28:22 30:3 34:3,13
41:3 47:23 48:5
52:5,14 58:2,9
60:3,8,17 64:23,24
69:18 73:17 75:7
78:5 81:20 85:25
86:25 87:15 89:5
93:8 101:16
104:21
**looked** 15:25 21:15
21:17,19 23:9 34:2
88:14
**looking** 28:11 31:7
41:9 46:20 47:8
55:20 59:5 64:22
64:25 65:3 68:13
74:7,9,13 76:5
80:24 97:3
**looks** 33:20 34:2
58:6 73:17 88:3
**Loretto** 94:9
**Los** 72:21,22
**lost** 59:2,15 73:23
79:3,24 80:4,13,14
**lot** 18:15 49:3 54:5
62:24,25 80:10
99:3
**lots** 71:9

**lovely** 69:15
**luxury** 73:13

___
## M
**M** 105:3,10,11
**Madison** 1:14
**magic** 52:5,8 90:14
90:16
**magnified** 59:22
**maintained** 27:15
59:15 70:4 100:19
**major** 5:22 7:3
**making** 15:6 50:9
65:1,13
**manners** 21:4 22:11
**March** 104:5
**Markey** 1:13
**marks** 102:9
**Martin** 102:24
**Martinez** 7:20 8:9
25:24 27:3,22
79:22 96:25 97:2
99:20 101:16
**material** 51:8 68:21
83:4
**matter** 16:22 28:20
38:5 46:16 48:7
70:2 99:7 105:6
**mattered** 76:9
**matters** 21:10 27:21
29:3 31:2 64:21
70:17
**Matthew** 2:14 4:9
**mean** 10:16,19,19
15:5 16:9,20 20:20
20:21 21:1 26:18
28:10 31:23 35:15
37:12 39:18,23
40:2,7 41:2 42:6,7
44:5 51:14,21 53:6
54:14 56:17 58:21
60:19 61:7,19,21
63:5 65:12 66:13
66:18 67:1,11 68:1
68:4,6,18 69:5
71:4,9 73:10 78:10
79:4,10,15,19 80:1
80:9,11,16,23

81:10,25 82:3,3,8
82:21,21,22 83:20
84:24 85:2,10
89:22 92:6,16,21
94:1,15,16 96:4
**meaning** 16:21,23
16:25 17:6 58:11
**means** 7:9 16:24
48:25 82:23
**mediation** 19:11
**meet** 3:24 4:11
**member** 27:7
**mention** 78:3
**mentioned** 41:9
75:7 86:25 95:2
99:21
**merely** 74:19 100:1
**merits** 53:6,9
**middle** 56:25
**mind** 43:23 63:20
74:10,24 75:20
93:17
**minutes** 4:16
**misrepresentation**
102:20
**misrepresented**
103:7
**missed** 46:19
**missing** 49:5
**misspoke** 47:7
**Mm-hmm** 33:2 56:1
65:4,19 73:1 74:16
**modify** 27:8
**moment** 24:6,12,13
24:15 26:7 41:10
44:21,22 71:25
79:23 85:14 86:5
88:10 92:18
100:23
**moments** 4:18
**money** 77:8
**months** 33:8
**motion** 3:12 4:13
5:19 18:15 25:1,1
25:6 26:9 27:22
28:2,3 37:17,23
38:2 49:7 51:5
53:2 56:10,12 68:2

101:24
**move** 77:17
**moving** 37:18 81:1
83:24
**MSPB** 102:24
**Muchmore** 70:5,6
**multiple** 40:20 81:2
**Murphy** 32:17
**mystery** 57:23 59:8
70:9 79:5 99:3

___
## N
**N** 3:1
**N.W** 1:14
**name** 3:17,25 92:17
**NARA** 2:24 14:8,12
17:15 29:15,17
30:10,13 31:12,15
33:9,18 34:1,8
36:10 37:11 38:17
39:10 44:4,14 45:6
49:10 51:6 54:7,8
54:12,17,17,20,20
54:24 55:6,24,24
56:2,11,19 57:24
58:3,7,10 59:15
60:5,16 61:5,12,14
61:20,24 62:15,19
63:4,7,21 64:7,13
64:15,24 65:7
66:12 68:14,23
72:5 79:8 80:17
81:4
**NARA's** 38:18 51:7
62:16 64:20 81:4
**narrative** 81:19
**narrowly** 53:20 97:6
**National** 1:13 4:10
6:7 7:25 9:6 14:22
18:1 29:1 32:18
33:5,16 38:8 41:23
42:7 66:6 67:11,20
67:22 87:4,19,25
88:2,12 89:2,10
**native** 34:21
**necessarily** 16:20
**necessary** 82:25
**need** 12:2,21 15:2

17:11 18:18 23:25
24:2 40:17 49:1
52:4 55:21,25
66:15 77:17 80:6
84:9 90:1,14,16,17
90:17 93:8 94:16
95:7,20 96:15
**needed** 5:3 52:8
84:5 99:12,15,17
**needle** 55:12,20,22
**needs** 90:3,5
**negligent** 80:8
**never** 42:18 60:19
**new** 14:17 64:4 76:4
76:5 84:23 100:5
**news** 81:10 95:6
**newsworthy** 81:14
**nice** 71:12 84:18
**Nix** 3:22 7:15,24 8:1
8:3,15,19,23 9:4
10:17,22 11:12
12:6,6,19,21 19:24
24:20 26:8,12,13
29:2,5 30:10,13,16
33:1,6,12 34:22
35:4,7 36:1,10
44:14,20 45:2,7
46:13 47:3 49:13
57:22 59:14,23
60:24,25 62:12
64:7 66:5 67:8,9
68:12 70:4 72:20
74:19 76:9 83:12
85:13 88:17 92:5
92:13 95:16
100:17
**Nix-** 28:23 45:10
**Nix-Jackson** 2:23
3:21 5:2 7:23 8:5
9:22 26:11 32:17
33:4,8 34:6,17,25
35:6 60:11 67:21
80:18 97:18
**Nix-Jackson's** 37:18
**Nix's** 9:24
**Nixes** 23:22
**nominal** 50:11,12
**nondisclosure** 49:10

**notably** 55:4
**note** 37:17 72:15
75:9
**notes** 52:24 70:3,4
86:10 102:10,18
**notice** 23:19 78:13
78:15,24 82:9,12
82:16 83:14
**noticed** 25:6
**notify** 78:11
**noting** 70:3
**notion** 65:22 73:6
**November** 34:22
**nuanced** 25:20
**number** 3:13 38:1
86:21,24 95:22
**numbers** 63:24,24
63:25
**NW** 2:6

### O

**O** 3:1 32:25
**obligated** 17:2 36:11
36:15
**obligation** 44:9
**obligations** 80:15
**observed** 53:7
**obtain** 35:25
**obtained** 12:18 45:7
75:20
**obviously** 17:19
25:1 68:5 75:22
76:13
**occasions** 68:12
**occurred** 49:15 54:6
**offer** 41:2 51:20
93:10
**Office** 2:16
**official** 24:2 105:5
**oh** 26:1 31:11 46:22
55:14 59:2,21
63:20 74:9 88:25
90:23 92:7 102:12
102:21
**okay** 4:6 9:14,14
10:1,25 11:20 13:3
14:6,20 15:4,9,11
16:1,13,18 17:21

17:25 18:10,23
20:8,12 21:9,18,25
22:24 23:17,21
24:4,25 25:4 26:1
26:23 27:17 28:17
30:7 31:19,25
32:10 34:15 36:9
36:17,20,22 41:4
42:20 43:20 44:7
44:16,19 47:11,25
48:17,23,25 49:8
52:20 55:22,25
56:13 57:16,20
58:16 59:4,9,21
61:2 62:3 63:20
64:2,9,18 65:8,9
66:10 68:6 69:9,15
70:11 72:17 74:11
74:22,25 75:16
76:6 78:4 79:15
83:2 85:10,16,20
86:4 89:18 91:6,13
91:21 93:13 94:6
94:24 95:5,5 96:3
98:7,11 100:7,21
101:1,10,10 102:5
102:8,17,21 103:3
103:9 104:7,9,12
104:20
**on-point** 52:16
**ONF** 1:4 3:12 7:11
7:22 9:17,17,20,20
9:22 11:2,22 12:11
13:16 24:17 25:13
28:14 29:18 31:3
71:16 85:13,23
101:19
**ONF's** 5:16 29:20
**open** 55:25 103:12
104:13
**operation** 42:8
43:17 44:11,12
46:11 75:24 82:24
83:23 84:9,13
**operative** 43:2
**opportunity** 17:24
86:9
**opposed** 35:17

49:25
**option** 87:5
**Oral** 1:18
**order** 3:3 19:24 22:5
37:2 87:21 90:4
93:10 103:14
104:15
**organization** 17:17
**organizations** 81:11
**original** 7:24 8:3
10:22 12:6,19,21
20:10 29:2,5 31:3
32:24 33:21 34:3
35:4 37:18 43:14
43:18 44:14 45:7
50:25 54:24 57:22
59:1,14 60:24,25
62:12 66:8 73:5
74:4,19 83:12,15
97:22
**Orleans** 14:17 76:5
76:5
**Orville** 3:22 32:25
34:21
**outset** 95:10
**outside** 5:5 11:7
**outsider** 73:12
80:23
**overall** 54:25
**overcome** 98:21
**owned** 14:9 91:18
**owner** 21:5 68:12
77:22 82:4,9 84:21
84:23 87:10
**owners** 98:13
**ownership** 6:4 11:9
11:22 20:13 37:12
39:4,5,15,20 40:2
40:13,14,25 41:13
44:23 45:20 46:25
47:4,21 49:17,19
49:22 50:1,7,8,22
51:8,16 75:25
79:12 80:2,4,8
83:15 84:10,11,12
90:7,18,21 91:25
**owns** 8:20 9:2,14,21
11:2 13:5

### P

**P** 3:1
**p.m** 3:3 104:23
**page** 30:5 33:11
34:18,24 38:1,11
38:13 41:20 43:8
43:12 60:8 87:16
**pages** 103:18
**paid** 20:2
**panel** 41:19 42:1,24
43:6,10
**paragraph** 30:5
33:10 34:19,24
43:11 57:14,20,21
57:21 58:2,9,10,25
59:4,10,10,12,20
60:22 61:8,9 62:11
74:3,9 97:5
**paragraphs** 63:14
**parallels** 68:10,14
**pardon** 54:3
**Parish** 76:5
**parse** 95:20
**parsing** 70:2,4
**part** 11:8 13:14 21:3
25:18 33:15 35:16
35:20 37:24 46:19
48:21 54:11,25
56:7 64:1 67:17
81:12 89:14 97:5
97:13,16 98:5,20
101:23
**particular** 4:16 38:1
44:9 62:25 67:24
74:11 79:16,22
82:6 91:9
**particularly** 84:3
100:13
**parties** 18:7,7,8,16
76:14 84:2,16
**party** 78:24 81:16
85:24 90:7
**passage** 7:7 13:10
14:11 25:23 97:3
99:19
**passed** 5:21 6:12
**passing** 90:6
**path** 55:22,25

**pattern** 79:23
**Pause** 85:17 86:13
**pay** 22:17 23:5
  88:19
**paying** 22:16 23:22
  23:22 88:7
**payment** 21:22,24
  22:2,13
**people** 72:6
**percent** 65:12
**period** 13:18 39:2
**permanent** 10:2,7
  10:20 11:1,14 13:9
  39:4,6 49:21 50:25
**perpetuity** 91:9
**person** 3:22
**personal** 93:7,16
  94:10,15,22
**personally** 54:14
  104:4
**persons** 75:19
**perspective** 49:6
  50:22 51:3 65:21
  81:7 82:4 103:23
**phone** 30:4
**photo** 70:3
**phrased** 66:19
**physical** 6:7 40:2,8
  40:11,23 84:22
  94:14
**physically** 42:5
  83:24
**piece** 55:10 81:14
  82:6 91:9,11,18
  96:2
**pieces** 63:13
**pinpoint** 5:14 13:15
  44:9 95:13
**place** 1:14 24:15
  30:3 55:15,15
  56:17,18,20 61:23
  65:1,3 68:19 69:10
  87:17 96:15,18
**places** 81:2,21
**plain** 16:21 17:6
**plaintiff** 1:5 2:2 3:15
  3:18 4:14 5:2,10
  5:13 10:4 13:14

25:22 26:2,10,17
  27:15 28:9 30:9,12
  33:25 34:4,9 38:4
  38:19 50:24 51:7,9
  53:21,23 58:4,12
  60:11,23 61:1
  63:21 70:8,23
  81:19 95:13,22,25
  97:7,8,12,15,17
  98:10,18 99:11
  100:4 101:18,20
  103:6,7
**Plaintiff's** 18:24
  30:2 39:12 61:10
  80:18 81:6,7 97:17
  98:10 100:19
  101:20 103:22
**plaintiffs** 98:13
**plan** 16:23
**pleaded** 54:1
**pleadings** 4:15
  26:17,25 27:1
  28:11 29:23
**please** 3:7,14 32:12
  37:1 67:22
**plus** 94:1 95:17
**point** 7:13 23:3 27:3
  29:21 32:8 45:5,13
  47:17 48:5 53:17
  61:4,9,13 62:6
  63:10 65:10 69:16
  72:7 77:18 79:16
  86:21 88:4,21
  92:19,20 93:4,4,6
  94:2 96:16,17
  101:3,12,16 102:2
**pointed** 46:9 87:16
  93:23 98:25
**pointing** 84:1
**points** 51:15 52:25
  66:4 100:25
**police** 12:1 18:15,19
  49:2
**portions** 63:15
**posed** 37:9,20 39:9
  95:12
**position** 5:17 27:16
  30:1,2 37:13 39:18

41:11 54:22 87:3
  100:20
**positioning** 67:2
**possess** 7:24 8:22
  29:1,4 35:7 49:25
  50:17 76:18 83:6
  88:11
**possessed** 31:7 32:2
  32:4 83:4 97:19
**possesses** 100:17
**possessing** 95:16
**possession** 8:14,19
  10:2,8,10,10,17,20
  10:22 11:1,9,12,14
  11:15,22 12:2,3,7
  12:24 13:7,8,10
  14:15 20:4,10 26:7
  26:13 30:14 33:5
  33:16 37:11,13
  44:3,13,20,23 45:7
  45:9,10,13,16
  46:10,14,18 47:2,3
  49:14,18,21 50:7,8
  50:10,25 51:3
  53:11 57:22 58:3
  58:11,25 59:24
  61:12,14,20 62:9
  67:8,10 74:18 76:1
  76:2,25 78:18,23
  79:25 81:8,8 83:5
  87:7 91:1,4,7,9,23
  91:25 92:4,8,12
  93:8 95:16
**possessor** 59:25
**possessory** 91:17
  92:3 93:2
**possible** 9:7 35:12
  50:20 97:10 104:6
**Post** 2:16
**post-enactment**
  19:9,23
**postponed** 25:10,12
**potentially** 72:10,11
  82:2
**power** 12:1 18:15,19
  18:20 49:2,3
**powerful** 100:13
**practice** 51:22

**prayers** 34:24
**precise** 5:14,17
  13:15 68:15
**precisely** 39:6 51:4
**predecessor** 5:1
  7:22 54:19 80:18
  97:18 100:19
  101:21
**predecessor-in-int...**
  54:19
**predecessor's** 58:18
**predecessors** 26:18
  28:14 29:19 54:15
  71:16 72:8 100:4
**preempt** 39:11
**preexisting** 44:13
  45:13 46:17 95:16
**preliminary** 69:25
**premise** 76:17,20
**preparing** 25:7
**present** 2:22 60:23
**presented** 53:8
**presenting** 24:25
**preservation** 38:25
  63:24
**preserved** 38:7,23
**President** 4:21 6:22
  33:14 42:4
**presiding** 3:6
**presumably** 78:13
  98:13
**pretty** 68:15
**prevailed** 15:7
**preventing** 38:17
  51:6
**previous** 74:5
**previously** 30:11
  47:17 64:8 65:8
  74:4
**price** 19:13
**principle** 53:19 69:5
  69:7
**prior** 59:20 83:6
  95:17
**private** 16:11 45:20
  46:9,10 52:1,13,17
  75:10,17,18 81:9
  81:15,24 82:1

**privately** 78:21
  91:18
**probably** 16:5
**problem** 46:23
  85:12,23 98:9,21
**problems** 5:22
**procedurally** 24:3
  53:5
**procedure** 6:15 84:1
**proceed** 79:1
**proceeding** 19:11,13
  19:20,21 77:4,7,11
  77:14,15
**proceedings** 3:3
  27:13 85:17 86:13
  105:6
**process** 6:17 19:15
  21:5,21,24 22:1,12
  24:1 35:21 41:16
  54:25 67:18 78:25
  81:13 83:23,25
  84:6,10
**produce** 35:4
**promulgated** 15:15
  17:17 79:12
**proper** 36:5 85:23
**property** 5:10,11,15
  13:23 21:4 22:13
  22:22 23:18 43:4
  43:15,18 45:20
  46:9,11 50:23 52:1
  52:13,17 58:4,12
  61:13,21 76:24
  77:22,23 78:15
  79:11,12,17 82:4,7
  82:8,23 83:21
  84:21,23 85:21
  89:6 90:7 91:8,10
  91:11,11,18 93:1,5
  93:7,10,16 94:10
  94:15,21,22 98:13
**prosecutor** 14:17
**prospect** 63:1
**protected** 38:7,23
**protection** 39:1
**provide** 23:13 24:10
  77:25 87:8 100:16
  102:16

**Provided** 96:20
**provides** 87:5
**provisions** 44:13
  51:10
**public** 6:11,20 9:8
  9:19 38:8,24 43:4
  43:14,18 48:19
  51:15 75:11,17
**publication** 42:15
  42:18
**publicly** 36:16
**published** 12:23
  20:14
**publishing** 23:19
**purports** 78:6
**purpose** 43:13
**purposes** 26:9,20
**pursuant** 12:1,19
  15:20 21:12 42:2
  44:5,8 45:19 77:2
**pursue** 102:3
**pursued** 55:17,18
**pursuing** 101:14
**puts** 82:8
**puzzle** 26:16 96:2
**puzzled** 74:2
**puzzles** 54:12

---

**Q**

**question** 8:21 11:19
  22:9 27:24 31:12
  34:4 36:9 43:2,20
  43:23 46:20 47:9,9
  50:4 51:11 70:25
  76:18,20 79:17
  82:22 84:8 96:22
  100:2 102:9
**questions** 40:22
  41:16 53:8 95:12
  100:22 102:15
  103:19
**quite** 11:22 37:21
  84:24
**quote** 38:21
**quoting** 38:16 53:17

---

**R**

**R** 3:1

**Raiders** 73:23
**raise** 31:20 76:14
  86:6
**raised** 56:21 103:19
**raises** 43:23
**ratified** 56:13
**reach** 20:18
**reached** 9:4,5 19:19
  22:20 23:5
**reaches** 67:18
**reaching** 21:2 22:4,9
**read** 11:5 46:16
  75:14 77:19 78:2
  89:7 95:1 96:25
  97:4 102:21
**reading** 86:10
**reads** 30:7 33:11
**real** 81:12 93:5,16
  94:15,21
**realized** 68:20
**really** 18:18 19:5
  28:19 29:6 39:19
  54:4,21 58:5 65:5
  67:1 70:13 86:23
  95:7
**reason** 13:14 21:10
  27:21 30:2 31:2
  36:4 40:7 66:1
  68:22 76:12 95:9
  101:7 103:15
**reasonable** 11:3
**reasoning** 12:10
**received** 7:14 30:12
  60:14 65:7 74:14
**recited** 74:8
**reconcile** 61:22
**reconstructed** 73:15
**record** 3:15 10:8,9,9
  27:8 39:11 51:23
  63:25 66:17 87:6,7
  87:9 89:8 91:2,19
**recording** 4:21,24
  4:25 105:5
**records** 5:21,24 6:5
  6:6,7,9,13,15,16
  6:18,19,21,22,25
  7:1,4,8,10 10:1,3,7
  10:12,18,19,23,24

11:4,5,13,15 12:8
13:1,10,19,21,22
14:3,8,9,11,13,23
14:25,25 15:15,16
15:21 16:2,6,11,22
16:24 17:9 19:8
24:19 28:24 30:15
31:5,16 36:11 38:3
38:3,6,18 40:19
41:23,24 42:9
43:15,24 44:21
45:12 46:2,12,25
47:3 48:10,11,18
48:19,21 49:15,16
50:13 51:7,14,17
56:3 62:16,21
65:17 75:5,10,17
75:17,20,22 76:6
76:22 78:7,8 79:9
82:23 86:20,24
87:5,11,18,19 88:1
88:22,24 89:3,9,11
89:13,25 90:2,10
90:20 91:2,15 95:8
95:17 96:18
**recounted** 74:17
**recounting** 103:12
**refer** 32:19 63:16
**reference** 42:19
  75:7
**referring** 59:19 64:5
**refers** 16:11
**reflect** 58:22
**reflecting** 55:9
**reflects** 81:12
**regard** 37:5,9,16
  41:6,10 46:19 48:6
  54:23 62:17 93:16
  94:3
**regardless** 16:25
  76:11
**Register** 20:14
  23:19 42:16,18
**regulation** 40:12
  76:15 82:6
**regulations** 15:16
  15:18,23 16:20
  17:3,12,16 75:5,8

75:9,14,24 76:23
77:2,19,20,25 78:2
82:3,12 84:19
**regulatory** 39:24,25
  40:1,3 93:22
**related** 15:13 84:20
**relates** 93:4
**relating** 89:9
**relative** 13:10
**relayed** 63:2
**release** 43:9 88:16
  89:15
**released** 91:23
**releasing** 38:18 51:6
**relevance** 50:23
**relevant** 18:6 49:9
  69:10 74:1
**relied** 52:18
**relief** 34:24
**rely** 24:17 98:14
**relying** 24:18
**remember** 19:12
  22:12
**reminding** 67:15
**reminds** 41:7
**reorganizes** 94:2
**repeated** 34:23
**repeatedly** 40:18
  54:7,13,15
**replevin** 35:25
  39:12 99:8
**reply** 19:3 36:19
  86:8
**report** 12:23 41:18
  47:19 72:19
**reported** 1:25 30:11
  64:8 74:4
**Reporter** 1:25
**reports** 74:5
**represent** 16:10
**representation** 31:8
  31:9 56:13 65:2
  71:1 97:24 98:15
  100:3
**representations**
  65:11,13 66:1
  68:23 70:16
**representative** 30:8

47:14 64:5
**represented** 80:17
**repromulgated**
  17:15
**request** 32:23 55:4,6
  63:23 64:12 65:16
  66:7,20 104:3
**requested** 58:4,12
**required** 39:21
  72:23 77:16 97:1
**requirement** 52:12
  52:12
**requires** 38:6 98:4
**research** 41:21 80:6
  103:17
**researched** 80:12
**reserved** 94:25
**residing** 60:25 62:12
**resisting** 73:25
**resolve** 29:22 86:23
**respect** 67:1
**respects** 16:11
**respond** 29:24 53:9
  69:20 102:14
**responded** 33:18
**responding** 11:19
**response** 5:19 53:2,4
  54:7 55:4,6 56:15
  60:15 64:11 65:16
**restrictions** 40:4,5
**rests** 11:8 39:19
**result** 20:3 53:22
  70:23 97:8,14
  98:18
**retained** 4:23 47:21
**retaining** 50:10
**retains** 84:22
**retention** 39:6
**return** 8:1,3 9:17,24
  11:16 29:16 32:24
  34:20 37:21 38:20
  39:3,13 49:21 51:5
  66:7,10 67:18 87:9
  98:23 99:9
**returned** 30:13
  31:16 46:4 47:16
  63:4 64:14 70:6
  100:15

**reveal** 65:7
**revealed** 63:3
**revealing** 35:17
**revelation** 65:21
**review** 15:15 16:20
  19:8,10,17 20:5
  24:7 85:4
**reviewed** 7:15 9:7
  75:8
**reviewing** 102:18
**revisit** 18:23
**Richardson** 2:5 3:17
  4:5
**right** 4:3,12 8:16,18
  8:18 9:1,13,23
  10:20 11:17 12:16
  12:16,17 13:12,24
  13:24 15:13 16:14
  17:13 18:13,14,18
  18:21 20:25 22:8
  22:18 23:14,14
  25:2,16,17 26:5
  28:15 31:14,14
  32:7,7,21 34:11
  36:12 43:19 45:8
  46:12,25 49:25
  50:1,23 51:8 55:15
  64:21 65:3,24 67:6
  71:4 72:22,25
  75:21 76:8 78:9
  80:5,20 84:24 85:6
  86:16 87:13,21
  88:15 91:8,11,15
  91:23 92:3,4,16,17
  92:20,22,22 93:25
  96:3,21,22 98:7
  100:8 101:4,23
  104:18
**rights** 6:3,14 90:18
  90:21 91:7,11,17
  93:1,2,9,20
**rigor** 69:24
**rise** 95:14,19
**road** 81:22
**robust** 66:16
**rock** 56:17,18
**Rome** 81:23,23
**rule** 17:23 28:20,21

53:20 56:22 66:14
  84:25 85:11,20,22
  97:6
**rules** 85:11
**rung** 12:11
**running** 76:10 77:11
**runs** 61:5
**rush** 103:15

**S**

**S** 1:21 2:15 3:1,5
**S/Elizabeth** 105:10
**safekeeping** 88:1
**San** 73:5
**saying** 13:5,22 23:1
  26:1 30:22 37:21
  46:8,15,17 49:12
  58:5 60:2,4,20
  61:2,22,24 64:14
  66:25 67:7 69:1
  79:19 82:3,6 86:19
  92:6,7 94:20 95:25
  96:5
**says** 6:5 10:7 20:22
  25:24 30:13 31:11
  31:11 32:3,22 34:1
  34:8,19 38:16
  43:13 47:15 50:13
  53:2 60:16,19 61:3
  61:9,19 66:6,10
  67:19,19,22 68:13
  71:13 77:9 78:13
  81:4,4 83:13 87:17
  87:22,23 89:8
  90:13,23 97:4,5
  98:15 99:1
**scenario** 12:5 52:16
  78:20,21 79:2
  80:13,17 81:5
  94:10 102:19
**scenarios** 78:18
  80:23
**Schwartz** 1:21 3:6
**scientific** 50:20
**scope** 80:9
**se** 44:4
**search** 28:13 29:21
  71:16

**seat** 38:9
**seated** 3:7
**second** 33:11 43:11
  59:13 65:10,18
**second-to-last** 43:11
  59:6
**secondary** 86:22
**section** 5:6 29:10
  34:25 38:16,21
**see** 6:9 20:21 27:13
  30:25 35:6 39:5
  43:25 45:15,17
  49:7 50:16 59:21
  59:21 64:25 70:13
  77:20 90:21
**seeing** 70:4
**seeking** 39:12
**seen** 42:18
**segue** 24:24
**seize** 14:8 43:3 48:8
  51:24 84:6
**seized** 41:25
**seizure** 42:2,11,12
**seizures** 43:1
**Select** 12:19,20,22
  47:14
**seminal** 27:4
**send** 18:8
**sense** 11:2 36:7
  50:11,12 52:3
  71:10 83:6 99:18
**sent** 7:25 30:9 33:9
  64:6,13 66:21 74:4
**sentence** 32:22
  33:11 59:6,13
**separate** 22:21
  83:25 95:8
**separately** 84:9
**sequence** 44:12
  67:17
**serve** 32:23 66:7
**service** 17:19 27:7,8
**session** 3:5
**set** 80:14 83:22,23
  83:24,25
**sets** 6:15,17
**seven** 5:1
**shelf** 73:20

**shift** 36:18
**short** 14:7 86:7
**shouldn't** 65:24
  98:16
**show** 8:5 53:21,23
  57:12 97:7,12,14
  98:18
**showed** 65:10
**showing** 27:10
  73:10
**shown** 71:2
**shown-have-known**
  101:22
**shows** 6:20,25 26:11
  26:14 44:14 58:18
  64:10,12,16,19,19
**side** 18:24 25:20
  87:15 95:13 101:2
**signed** 42:3
**significantly** 58:23
**silent** 74:20
**similar** 27:6 69:19
**simply** 10:11 13:5
  16:22 36:7 48:6
**simultaneous**
  103:23,25
**situation** 21:21
  23:16,17 69:8
  78:22 84:3 85:22
  88:2 92:1,3 93:19
  94:8
**situations** 83:21
**six** 7:11 8:7
**six-year** 5:6 7:9
**sleuthing** 72:23
**small** 100:24
**somebody** 68:12
**somewhat** 16:15
**son** 46:6
**soon** 7:7
**sophisticated** 50:20
**sorry** 9:19 11:11
  19:25 22:1 27:20
  32:25 35:18 36:14
  40:10 43:22 50:3
  59:2 69:14 80:21
**sort** 19:13 62:25
  63:17 66:21 73:7

79:23 87:13 98:4
**sound** 99:3 105:5
**sounds** 11:3 67:11
  80:7 96:4 104:7,17
**span** 81:17
**speak** 31:9 48:2
  52:10 60:7 62:1
  63:13
**special** 42:2
**specific** 25:23 88:23
  89:16 95:13 97:3
**specifically** 6:22
  28:23 29:1 33:5
**specificity** 42:11
**specifics** 58:15 60:9
  60:18 63:12
**specify** 39:2
**spell** 19:5 57:10
**sponte** 79:1
**square** 54:21
**stacks** 73:14
**stage** 5:10 8:16
  29:23 102:1
**standalone** 30:17
**standard** 7:18,20
  8:9 27:5 35:8
  101:17
**standing** 23:12
  24:10
**start** 4:18 32:14
  47:9 53:16 63:18
  86:19 95:11,20
**started** 48:2 76:10
**starting** 3:15 22:11
  22:20 96:15,18
**starts** 77:11 84:14
**state** 40:11 58:21,22
  72:25 73:6 96:1
**stated** 34:25 64:6
  72:19
**statement** 66:24
  79:21
**states** 1:1,7 3:4,13
  4:8,13,25 6:2,14
  20:19 30:16 33:12
  35:3 43:10 67:9
  93:22
**stating** 30:9

**Station** 2:17
**status** 48:3
**statute** 5:6,21 6:11
  6:12,12 7:9 8:13
  17:6 24:21 25:1,9
  37:6 38:16,21,25
  39:20 40:12,24
  45:3 46:16,23
  51:12 52:20,25
  53:1,3,8 75:1
  76:10 77:9,9 79:11
  92:9
**statutes** 52:9,11
**statutory** 16:23 37:6
  39:17 43:21 48:7
  90:1
**step** 78:10
**Stephen** 1:21 3:5
**stick** 40:10 92:25
  93:11,19 94:20
**sticks** 50:22 91:10
**sticky** 97:16 98:20
**stolen** 59:16,18
**stop** 39:15 42:23
**storage** 88:1
**stored** 81:1
**Street** 2:6
**strictly** 53:20 97:6
**strikes** 72:3
**stuff** 64:10
**style** 77:11
**sua** 79:1
**Subcommittee** 45:7
  46:5 48:14 56:8
  60:21 62:8 72:19
**subject** 58:4 66:14
  72:20
**submit** 18:2 65:6
  69:22,23 70:13,19
  79:13 82:16 92:11
**subpoena** 12:15,20
  18:17,19 48:14
  49:2
**subsequent** 48:2
  90:8
**substance** 24:23
  41:1 52:5,14,22
  60:18 92:6

**substantive** 8:12
**successor-** 9:17
**successor-in-** 98:10
**sudden** 88:13
**sue** 54:18 56:19
**sued** 56:5
**suggest** 4:15 16:19
  34:5 68:3 93:3
**suggested** 66:18
**suggestion** 103:11
  103:14
**sunsetted** 17:14,14
**supplemental** 18:2,9
  94:18 95:1 103:17
  103:19 104:22
**suppose** 79:24 80:3
  91:5,7 94:16
**supposedly** 30:15
  31:5
**Supreme** 92:16
**sure** 4:19 18:25 19:7
  20:16 21:7 22:15
  31:2,18 33:23
  48:13 57:11,13
  66:20 72:13 81:18
  81:22 84:15 86:8
  98:3
**suspend** 27:12 97:1
  98:16
**suspended** 7:13
  26:14 96:9,12,21
  96:23 101:7,7
**suspending** 97:10
**suspension** 7:17
  27:4,6 97:6 98:8
  101:16,19
**suss** 11:10
**sweep** 51:10
**switch** 95:3
**synonymous** 91:25
  92:3

___ **T** ___

**T** 1:13
**table** 41:9
**take** 4:16 14:13,14
  14:15 15:9 16:18
  17:24 18:16 20:6

20:13,22,23 21:12
  22:16 37:2 38:9
  45:19 48:5 62:19
  65:23 78:23 85:14
  87:7 88:6,18,19
  90:5 91:8,8 92:16
**taken** 32:24 37:12
  41:11 44:5,7 46:18
  51:11 70:16 91:10
  93:19
**takes** 11:25 93:8
**takings** 4:20 5:4,8
  7:6 12:9 13:19
  24:14 29:9 36:1,3
  36:5 39:24,25 40:3
  40:11,24 77:3
  79:14 85:21 92:24
  93:22 94:14 95:14
  99:9,10,12,16
**talk** 6:3 8:11,12,13
  13:22 18:11 21:4
  24:21 40:13 52:20
  57:14 66:3 93:19
  94:18 96:8 100:14
  104:18
**talked** 18:14 100:15
**talking** 13:20,20
  55:12,14 57:16
  63:25 69:6,7 84:14
**talks** 6:13,14 30:3
**tangible** 52:15 65:25
**tape** 10:17 13:5,7
  35:14 36:10 76:9
  85:13
**telephone** 32:22
  66:17
**tell** 21:1 23:17 55:14
  100:11
**tells** 5:12
**temporary** 51:2
**tension** 43:25
**term** 16:8 83:5
**terms** 6:3 13:21
  40:13 60:19
  102:15
**test** 71:13 73:10
**text** 17:9
**thank** 4:19 36:21,22

36:24 38:14 67:14
  86:3,15,17
**Thanks** 104:20
**that's** 5:11 8:1,4,15
  8:17,21 9:10,12,23
  10:4,11 12:16,16
  13:12,13,15,18,19
  16:14,22 18:17,21
  20:20 22:8,21
  23:12,19 24:4,4,13
  24:14,15 25:17
  29:2 30:25 31:4,14
  31:14 32:7,7,8,14
  32:21 33:6,7 38:20
  38:24 39:3 40:12
  42:7 43:2,19 46:11
  48:24 54:11 55:10
  55:16,23 59:9,11
  60:6 64:4,4 65:20
  67:23,24,25 70:22
  71:3 73:14,19 74:8
  74:20 75:21 76:8
  77:4,5,8,16 78:9
  78:14 81:15 82:11
  82:13 83:25 84:13
  84:14,15,24 85:4
  86:22 87:10,14,17
  87:20,22 88:8 89:2
  90:9 91:18 92:4,5
  92:12,15,20,23,23
  94:10,25 95:24
  96:2,6,7,7,18,21
  97:15 98:20,20
  99:19 100:8 101:4
  101:8,15
**theoretical** 31:21
**theoretically** 24:3
**theory** 71:12 96:7
**there's** 5:22 11:23
  17:7 22:3 31:12
  36:4 39:4,16 49:3
  50:21,23 51:8,11
  52:11 54:5,25
  55:11 56:14 59:10
  71:9 77:10 78:14
  78:20 79:2,8,13,17
  80:9 81:3 82:21
  88:14,23 89:16

90:19,20 91:22
  94:12,13 97:9
  99:20
**they'd** 88:19
**they're** 5:20 13:17
  13:18 24:18 29:12
  30:22 60:3,20
  61:11 65:13 69:21
  81:2 95:25 96:5
**thing** 5:12,13 11:18
  12:2 13:13 14:2
  17:18 19:1 23:20
  24:5 27:19 28:19
  28:21 29:2 30:19
  35:1,3 39:6 56:14
  56:23 74:2 78:12
  82:3 84:6 92:5,12
  92:15,15 97:5 99:2
**things** 8:4 22:14
  44:17 46:17 49:1
  51:3 64:16 71:2,3
  71:10 73:17 81:6
  83:7,20 103:7
**think** 9:3,10,23 10:5
  11:11,21 13:12,16
  17:5,19 18:21
  21:23 24:8 25:5,20
  29:25 31:6 35:23
  36:20 40:17,17
  41:15 46:7 48:13
  50:7,21 51:2,21
  52:8,11,14,24
  53:13,17,25 56:19
  58:13 59:19 64:10
  64:22 66:16 67:23
  69:4,21,22,24
  71:22 72:1 73:6,16
  76:13 77:2 82:4,22
  83:19 84:13 86:4
  86:21 87:4 89:24
  91:24 92:5 93:8
  94:1,5,9,12 95:15
  95:20,24,25 96:21
  100:11,22 101:2,4
  101:22 102:10
  103:20 104:2
**thinking** 72:14
  80:12 93:20

103:17
**third** 33:10 79:2
  80:12,17 81:5
**THOMAS** 2:3
**thought** 4:12 17:1
  47:19 65:8
**three** 63:13 73:2
  78:17 80:23
**Thursday** 1:16
**time** 7:5 10:18,18
  11:13 13:18 15:25
  20:5 36:10 38:2
  39:3 46:2,14 49:14
  49:17 59:11 61:18
  62:7,16 63:3 66:25
  67:16 77:11 79:3
  82:16 84:21,25
  85:8 87:25 94:23
  95:21 104:6
**timeline** 45:1
**timeliness** 12:12,12
  28:19 86:22 95:4,8
  96:19
**timely** 30:18
**timing** 48:6
**title** 6:3,14 11:14,16
  33:12 40:14 50:11
  50:12,16 51:14,16
  67:9 84:8 87:24
  90:18,21 91:4,16
  91:22 92:7
**today** 3:18 4:12
  14:23 24:10 37:17
  39:9 41:2 43:2
  54:9 57:3 104:13
**today's** 25:7 32:22
**told** 26:12 67:12
  81:2,2,19
**toll** 70:18
**tolling** 79:20
**tolls** 69:11 79:19
**Tom** 3:17
**tomorrow** 88:13
**tort** 80:1,5,7,10
**tracked** 61:4,23
**trail** 61:4 62:25 73:7
**transcriber** 105:1,4
**transcript** 103:15

104:14,15 105:5
**transfer** 6:6,7 9:22
  40:13 48:2 51:14
  51:16 61:17 75:24
  82:23 84:22 85:21
  90:7
**transferred** 41:22
  42:7,14 43:15
  44:23 46:25 47:3
  49:17 83:22 84:8
  84:12 87:18 90:18
**transferring** 6:3
**transfers** 78:15
**transmitted** 89:10
**transparent** 57:7
  60:10,12,20 66:16
**treated** 94:5
**treating** 26:21
**treatment** 45:25
**trees** 92:21
**tricky** 8:21
**tried** 35:25
**trigger** 101:22
**triggering** 44:18
**true** 9:22 12:3 26:21
  28:13,14
**truly** 9:17
**truth** 26:24
**try** 86:17 104:12
**trying** 7:12 11:10
  13:16,17 40:7 69:9
  74:11 77:19 80:24
  82:5 101:14
**Tunheim** 47:19
**turn** 18:6 63:12
  71:11
**two** 5:22 29:24
  44:17 64:16 65:6
  65:14,15,16 72:5
  74:25 86:24
  100:24 104:14
**typically** 84:21

—— U ——
**U** 2:15
**U.S.C** 58:11
**ultimately** 46:16
  81:22,22

**unable** 37:21 49:20
**unambiguous** 32:23
  38:20,25 66:7
**unambiguously**
  37:13
**unaware** 25:22 26:3
  26:10 53:23 70:23
  97:9,15 98:19
**unbounded-in-time**
  51:10
**uncaveated** 71:1
**understand** 8:23
  17:13 19:5 23:23
  25:11 31:19,20,24
  39:18 48:13 67:6
  71:6 74:11 96:16
**understanding**
  14:23 69:24 70:7
**understands** 89:3
**understood** 8:6
  59:11 71:7,14
  77:18 101:8
**undertake** 78:25
**undisputed** 20:9
**unfolded** 41:16
**Unfortunately** 24:9
**United** 1:1,7 3:4,13
  4:8,13,25 6:2,13
  20:19 30:16 33:11
  35:3 67:9 93:21
**unjustified** 31:21
**unknowable** 25:14
  53:24 73:11
**untimely** 7:5 8:10
**UPI** 30:10 33:7 64:7
  67:7,8,16,18,19
  72:5 74:5 81:4
**UPI's** 33:16 67:10
**USC** 5:6
**use** 5:25 6:23,24
  14:13 33:12 35:15
  40:3,4 51:23 83:5
  90:25
**Usually** 4:14

—— V ——
**v** 93:21 102:24
**valid** 18:19 49:2

75:22
**validly** 78:14
**valuable** 92:5,12,15
  92:15
**valuation** 21:5
  22:20 77:3,7,14,15
  77:25 78:3,25
**value** 19:20 70:16
**various** 72:4 91:1
**veracity** 27:10,15
**versus** 3:13 94:15
**videos** 81:1
**view** 35:19,20 46:18
  85:7
**views** 87:4
**violated** 56:22
**virtually** 5:3 57:2,4
**virtue** 45:13 63:1
  83:17
**visitor** 55:15
**vote** 23:18 42:15
**vs** 1:6

—— W ——
**wait** 10:13 36:6
  61:11 89:7
**waived** 49:24
**walk** 58:19
**walking** 58:16
**want** 11:5 13:13
  23:25 52:10 53:9
  58:17 77:16 85:25
  86:8,20,24 95:1
  103:14
**wanted** 30:19 38:11
  83:8 87:3 101:10
  101:12 102:14
**wants** 6:21 35:1
**Warren** 9:6,7 33:13
**Washington** 1:15
  2:7,18 33:17 67:21
**wasn't** 37:15 47:1,4
  73:18 76:21,24
  84:3 92:21 96:20
**way** 5:4 10:17 11:5
  13:3 14:25 15:3
  16:15,21 20:12
  22:11 24:18 25:10

26:9,15 27:2 29:14
  30:17 38:4 48:12
  52:1 66:19 79:13
  84:20 87:4 89:2
  91:5 96:11,16
  97:10 98:9 99:25
**ways** 29:25
**we'll** 8:12 94:18
**we're** 3:11 13:20,20
  13:21 17:9 23:21
  38:12 50:19 55:12
  57:16 69:9 83:13
  88:8,9
**we've** 34:1 45:10
  49:10 50:18 54:8
  61:3 81:10 83:12
**Welcker** 53:18 69:5
  73:10 79:22
**went** 42:9 44:22
  46:2 49:15,16
  61:15 70:5
**weren't** 60:4
**Westlaw** 103:2
**what's** 3:25 10:8,9
  28:6 33:21 40:14
  52:5 53:4 56:25
  60:8 69:8 99:7
**whatsoever** 50:16
**whereabouts** 57:23
  59:7 79:7 99:2
**who's** 82:5
**William** 32:17
**willing** 56:19 104:14
**Willoughby** 1:25
**withholding** 48:18
**WL** 103:2
**won't** 104:12
**wondered** 89:23
**word** 62:20 65:23
**words** 40:25 52:5,8
  90:14,17,17
**work** 15:18 60:12
  62:24 74:8,21
**working** 57:24
  58:14
**world** 40:4,10 93:24
  94:2 96:1
**worry** 18:18 49:1

worse 46:23
worth 23:4
wouldn't 17:2,11
    47:2 76:8 92:10
    93:1 102:2
write 54:20
writes 66:5,5 68:12
writing 54:23
written 60:8
wrong 5:4 47:22
    65:1,18 97:20,23
    99:13,14
wrote 98:11

**X**

**Y**

yeah 8:24 12:14,14
    15:22 16:7 21:25
    32:19 33:19 34:1,8
    42:13 54:12 57:13
    58:9 59:7,9 61:19
    63:22 68:9,13,17
    68:20 70:17,21
    71:8 75:12,12
    80:11 85:4,6 87:1
    89:24 94:13 97:25
    98:2,12,24 99:23
years 4:23,24 5:1
    7:11 8:7 79:8
    81:17
Yep 30:6 32:15 75:2
you'd 4:17 17:15
    24:23 36:17 52:22
    82:2 86:6 100:21
    102:5
you're 11:11 13:5
    14:17 22:8 24:25
    26:1,21 31:20
    40:23 46:8 48:13
    49:12 55:14,20
    60:2 61:2,5 63:25
    64:22,25 65:1
    68:13 70:25 71:2,4
    75:3 78:15 91:3
    92:6,7
you've 10:5 18:14
    21:2 46:22 54:14

65:2 66:10 72:3,4
    72:4,5,5 81:20
    85:22 91:10

**Z**

Zapruder 15:19,19
    19:2,4,7,10,18,19
    19:25 20:1,3,5,10
    20:13,19 21:21
    22:4,6 23:1,16
    24:1,6 40:21 41:14
    41:19,22 42:22
    45:16,25 46:1,9,19
    47:10,15,16,20,21
    48:3 51:24 52:16
    77:10,21 78:22
    82:18 83:8 87:14
    87:18,24 88:3
Zapruder's 46:6
Zapruders 21:3
    22:10,20 23:21
    48:9 84:4

**0**

**1**

1 33:6 38:1 41:24
    43:13 67:15,20
1-09 63:14
1-14 30:5 74:3
1-29 63:15
1-3 32:14
10 103:18
100 65:11
11 56:22 66:14
114 64:4
12(b)(1) 25:5
12(b)(6) 25:1 53:7
120 63:21
124 14:7
1290.1 16:16
1295 97:2
12th 30:7
13 79:8
1319 97:3
14 74:3
15 1:16
1577 53:18

15th 2:6 32:16
16 34:24
18 38:1,13
1963 4:22 34:22
1965 6:12 13:25
    78:5 90:22
1967 33:11
1970s 7:16 13:17
1978 12:20 30:12
    31:12,13,16 47:16
    47:20 57:23 87:23
    100:15
1979 12:21 13:1
    79:8
1987 103:2
1988 41:21
1991 7:25 28:24
    29:17 32:16 33:3
    33:18 34:6 45:10
    54:13,21,24 55:2
    65:14,15 66:3,12
    67:6,7 68:11,16,19
    68:22 69:17 70:1
    80:20,21 97:17,21
    98:22
1992 5:22 7:9 30:14
    31:4,8,13,17 33:8
    38:4 40:18 41:11
    41:13 43:1,12
    44:13 45:12,19
    48:9,11 51:10,23
    52:19 76:9 78:9
    80:19 81:19 83:7,7
    96:17 100:14
    101:6
1997 14:10
1998 7:11 41:24
    43:14 45:8 60:23
1st 41:21

**2**

2 8:1 28:22 32:13
    43:8 66:5 87:16
2:00 1:17
2:02 3:3
20 57:3 68:25
20005 2:7
20044 2:18

2014 55:3,6 56:2
    65:15 67:4
2015 34:13 36:3,4,6
    37:17 39:8 51:5
    56:5 57:4,15 61:1
    65:9 66:9 68:5,7
    70:9 79:5 98:22
    99:12,16 100:10
    101:4,5
2017 8:6
202 2:8,19
2021 7:14 30:4,8,11
    30:24 31:9 44:25
    62:18 67:13 68:11
    68:16,20 69:17
    70:14 78:19 85:19
    99:18
2023 36:7 99:17
2024 1:16 50:21
21 74:9
2204 57:3
22nd 34:22
23-704L 1:5 3:13
2501 5:7 29:10
27 8:4 28:23 34:14
    57:16
28 5:6 37:25

**3**

3/1/2024 105:10
30 4:24 103:16,18
    104:4
318 9:20
333 97:2
35 30:5
36 16:16
37 41:17 43:8 87:16
37473 103:2

**4**

4 1:12 41:20 85:5,6
4(d)(1) 38:16,21
4:24 104:23
45 4:22 59:20 104:3
46 59:12
480 2:16
4th 33:8

**5**

5 58:2,8,9,10,11
    59:10 61:8,9
50 57:14 60:22
    62:11
552 58:11
5th 14:4 20:22 21:12
    22:12 41:8 76:3,6
    86:25 87:8,9 90:2
    93:12 95:1

**6**

6 57:20,21,21 58:25
    59:4
6-46 57:14
616-1061 2:19

**7**

717 1:14
718 14:7
752 53:18
783-5070 2:8

**8**

824 102:24,25
89-318 6:11,20 9:8
    51:15

**9**

9 46:7 47:13
901 2:6
91 100:10
976 102:24,25