# EXHIBIT 5

Reproduced from the Unclassified / Declassified Holdings of the National Archives

BAKER, HOSTETLER & PATTERSON
UNION COMMERCE BUILDING
CLEVELAND, OHIO 44115

(216) 621-0200
TWX-810 421 8375

IN WASHINGTON
BAKER, HOSTETLER, FROST & TOWERS
818 CONNECTICUT AVE., N.W.
WASHINGTON, D.C. 20006
(202) 857-1500

November 14, 1977

The Honorable Louis Stokes
Chairman, Select Committee on
    Assassinations
U.S. House of Representatives
3342 House Office Building, Annex 2
Washington, D.C. 20515

Re: <u>UPI Films of Kennedy Assassination</u>

Dear Congressman Stokes:

      We are general counsel for United Press International, Inc. (UPI).

      During the past several months, several members of your Committee's legal staff have communicated with UPI personnel and with us concerning the staff's requests for various UPI photographs which relate to the assassination of President John F. Kennedy.

      Until now, the staff and UPI have been able to reach reasonable accommodations of the staff's requests while at the same time lessening the risk of loss, damage or destruction of UPI's valuable photographic property.

      However, it appears that UPI and the staff have reached an impasse concerning a request for the originals of two very valuable copyrighted films owned by UPI. These films are commonly referred to as the "Nix" and "Muchmore" films.

      It is our understanding that the staff desires to turn the original films over to an as yet unnamed commercial film laboratory which will subject them to certain techniques which have been described generally to us as "photo enhancement."

Reference copy, JFK Collection: HSCA (RG 233)

Reproduced from the Unclassified / Declassified Holdings of the National Archives

BAKER, HOSTETLER & PATTERSON

The Honorable Louis Stokes
November 14, 1977
Page 2

     As I am sure you can imagine, UPI is extremely concerned about the damage which might occur to the films as a result of such handling and processing. Although members of the staff have orally assured us that the films would not be damaged, we respectfully submit that such assurances are not sufficient to protect UPI's valuable property rights.

     In the first place, UPI has not so far received a precise explanation of what processing techniques are contemplated. Some techniques, we are told, involve a far greater risk of damage than others, while still other processes will completely ruin film. Second, we are informed that *any* processing of these fourteen-year old films entails a risk of damage.

     For example, as such film ages it becomes more brittle and more subject to damage, even when it is carefully subjected to the stresses of standard reproduction techniques. Furthermore, we are informed that every exposure of the film to heat and light increases the chances that its color dyes will fade.

     Certain recent statements by Michael Goldsmith, Staff Counsel, appear to support UPI's conclusion that the risk of damage to the films may be substantial. Mr. Goldsmith recently informed us of a staff decision that the Committee should not enter into or arrange for an indemnity arrangement whereby UPI would be compensated in the event of loss, damage or destruction of the films. Mr. Goldsmith also stated that none of the commercial film laboratories which may be designated to handle the films will guarantee that the films will be returned undamaged or that UPI will be made whole for damage which might occur.

     Of course, since the films are irreplaceable, even an insurance arrangement would not offset the harm that would result from their loss, damage or destruction. The injury to UPI would simply be irreparable. Therefore, although UPI would certainly not object to a subpoena for an existing copy of each of the films, our client does object to the proposed issuance of a subpoena for the originals. Accordingly, we respectfully urge the Committee not to vote to issue a subpoena demanding production of the original films. We also respectfully suggest that the Committee

Reference copy, JFK Collection: HSCA (RG 233)

Reproduced from the Unclassified / Declassified Holdings of the National Archives

BAKER, HOSTETLER & PATTERSON

The Honorable Louis Stokes
November 14, 1977
Page 3

closely question whether the originals are, in fact, critical to its investigation. As the Committee is no doubt aware, in 1967 Itek Corporation, using advanced image enhancement methods, performed exhaustive studies on the so-called Nix film. In the words of the report, these studies "failed to turn up any new evidence."

If the Committee should decide to issue the subpoena, we urge that it not adopt what we understand the staff's position to be: that UPI alone should bear whatever loss it may suffer as a result of loss, damage or destruction of the films. In our view, it would be plainly unreasonable and oppressive for the Committee to adopt such a position and to compel the production of the films without providing in advance for an indemnity arrangement. The reasonable course of action, it seems to us, is for the risk of such loss to be borne by the Government and/or the commercial organization that would process the films, through the purchase of a private insurance policy or otherwise. Therefore, if the Committee should vote to issue a subpoena despite UPI's objections, we urge that such action not be taken until a reasonable arrangement for indemnification has been made.

In addition, we request that no subpoena be issued until reasonable arrangements are worked out with the staff concerning the following matters:

    1. We believe it is reasonable to expect that the commercial laboratory in question be contractually obligated to subject the films only to those enhancement techniques which would entail a minimal risk of damage to the films. Also, we would request that the Committee require the laboratory promptly to provide the Committee and UPI with a detailed statement, in writing, describing clearly and precisely the mechanical, chemical or other processes to which the films would be subjected and the length of time such processing would require. Such a statement should include the laboratory's opinion concerning the probability of damage or destruction, as well as a description of its experience in using such techniques on similar film stock of similar age.

    2. There appears to be no reason for anyone except laboratory personnel to handle the originals, and

Reference copy, JFK Collection: HSCA (RG 233)

Reproduced from the Unclassified / Declassified Holdings of the National Archives

BAKER, HOSTETLER & PATTERSON

The Honorable Louis Stokes
November 14, 1977
Page 4

then only for the purpose of applying the appropriate enhancement techniques. Therefore, we would request that it be understood, first, that UPI would only be required to deliver the films to the qualified technical employee of the laboratory who would actually be handling the films, and second, that the films would be returned to UPI immediately upon completion of the enhancement process.

    3. We would request that arrangements be made for a UPI representative to be present during the entire enhancement process, if so desired by UPI.

    4. We would request an agreement including the following: that the films would be made available only in order that the Committee might use the products of the image enhancement process for investigative purposes pursuant to the provisions of House Resolutions 222 and 433, 95th Congress, 1st Session, and for no other purpose; that no copies of the films or any part thereof would be circulated, distributed or otherwise made available for viewing by any persons other than members of the Committee and it's staff or its duly authorized photographic analysts, except to the extent the Committee might decide to publish selected still frames in a report of its investigation; that the Committee would make certain that copyright notices attached to the films would be kept thereon and that each copy of the films or any part thereof (whether or not published in a report) would also bear a proper copyright notice.

    5. It is expected that UPI would incur certain out-of-pocket expenses in connection with transportation and delivery of the films. We would request reimbursement to UPI for such expenses.

    6. We would request that as soon as possible UPI be furnished a good quality copy of the product of the image enhancement techniques to which the films would be subjected.

Again, we respectfully urge the Committee not to subject UPI to undue risk of damage to its valuable property by demanding production of the originals of the films. However, if the Committee should decide that the films are critical to its investigation and should decide to issue a

Reference copy, JFK Collection: HSCA (RG 233)

Reproduced from the Unclassified / Declassified Holdings of the National Archives

BAKER, HOSTETLER & PATTERSON

The Honorable Louis Stokes
November 14, 1977
Page 5

subpoena over UPI's objections, we urge that such a subpoena not be issued until the reasonable restrictions described above have been agreed to.

Sincerely yours,

Donald A. Burns

136:15F
5003-Z-17
cc: Each Member, Select Committee on Assassinations

Michael Goldsmith, Esq.
Staff Counsel

Reference copy, JFK Collection: HSCA (RG 233)