# EXHIBIT 21

# CALL REPORT



Issue # 14

**Document's Author:** Anne Buttimer/ARRB    **Date Created:** 08/18/95

## The Players
**Who called whom?**

## Description of the Call
**Date:** 08/18/95
**Subject:** G. Robert Blakey - re: Robert Groden

**Summary of the Call:**

Professor Blakey returned my call yesterday afternoon and spoke with me about Robert Groden's work for the HSCA.

Blakey said that Groden was not a cleared staff member and therefore had "zippo" access to autopsy photos or any confidential or classified material. Blakey said "He [Groden] was a consultant only, he was a technician when it came to taking and enhancing photos, but he was in no way a photographic expert. We consulted with him mainly because he had a broad knowledge of where virtually every assassination photo and film was located and how to find it."

Blakey said that at one point in the Committee's work he directed Groden to make copies of the first generation Zapruder film the Committee had. Blakey directed Groden to "lay down the sound track the Committee made of the gun shot sounds in Dealey Plaza. In other words, the Zapruder film was silent until near the end where the gun shot sequence was 'sunk' in the movie sound track. I told Groden he could make and keep a copy for himself because I thought it was a foregone conclusion that he would do so anyway so I thought I might as well give him permission to do so."

Blakey said that Jane Downey was "the mother hen of the autopsy photos. She was responsible for the safe they were kept in and for controlling access to the photos. Groden did not have authorization to even look at the photos and therefore did not have access to the photos. He constantly importuned to anyone who would listen that the autopsy photos were fakes. I told him he couldn't look at the autopsy photos because they were not his area of expertise. He kept asking Mike Goldsmith and Jane Downey if he could see them. They'd ask me and I'd refuse. Finally, because he kept asking them and they kept asking me, I finally agreed to let Groden *see* the autopsy photos, but only see them. Jane swore to me she would stand in Groden's presence while he viewed the photos. She must not have because Groden made copies of the photos somehow. "In my judgment Bob Groden stole the autopsy photos. Jane's most important task in this life was to keep the autopsy photos safe and well guarded. She failed in her most important work, which was to keep them private. I've had no contact with her since the Committee. I took Groden's comments that some of the photos were fakes to the committee and the experts;" however his conclusions were not adopted by the panel of expert's or the Committee.

Blakey said that after the Committee he learned that Groden had autopsy photos and understood that Groden's public story was that he obtained the autopsy photos from a Navy or Secret Service agent whose name may have been Fox. He recalled being interviewed by the FBI one several occasions about the matter. Blakey said he called Burke Marshall at this time and told Marshall what he told me, including

that he thought the blame rested with Jane Downey. Blakey said he thinks DOJ didn't prosecute Groden because there was a question as to who really owned the autopsy photos - the Kennedy family or the US Government. "If title rested with the family, as many people think it does, it would not be possible to prosecute Groden for Theft of Government Property."

We next discussed the various assassination films, other than the Zapruder film, that the Committee used. Blakey said he never gave Groden permission to make copies of the various films for himself or for any other reason. If Goldsmith or Downey had given Groden permission to make copies they would have told Blakey about it, which they never did. Blakey said that over the years he's heard stories that Groden made copies of films and kept the original or earlier generation copy that he obtained from the Committee, and returned to the Committee a copy. Blakey said he has no first had knowledge of the same, expect to reiterate that Groden never had permission to copy the films.

Blakey said he has additional information to share with the Board, at some point, after the non-disclosure agreement issue is cleared up. He was quite clear in telling me he would not share this information with me; his clear implication was that his information was for senior staff ears only. He said some of this information was known only to Congressman Stokes, himself, and one or two others. He differentiated this from additional information he will share with ARRB (senior) staff that he claims was known only to him and Congressman Stokes.

Blakey said that when the Committee ended all records were sorted into two groups. Group one records were sent to the Archives. Group two records were destroyed or thrown away. Group two comprised everything from copies of redacted FBI reports on LHO and Ruby to charts and exhibits used during Committee hearings. He said that if a Committee staffer wanted to take anything from Group two it would have been alright to do so. He said that as an example, police photographer and committee staffer Cecil Kirk asked if he could keep some of the photos he made himself for the committe and was allowed to do so. Kirk also asked if he could keep a drawing made by Ida Dox and was given permission to do so.

Blakey agreed to sign an affidavit concerning Groden and suggested that I draft an affidavit and fax it to him a this office at Notre Dame Law School (219/631-6371). He will make any necessary changes and sign the final draft. His mailing address is the University of Notre Dame Law School, Notre Dame, Indiana, 46556.