# EXHIBIT 28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GAYLE NIX JACKSON,

          *Plaintiff*,

    v.

UNITED STATES OF AMERICA, *et al.*,

          *Defendants*.

No. 15-cv-2035

## DEFENDANTS' MOTION TO DISMISS

    Defendants the United States of America and the National Archives and Records Administration hereby move to dismiss plaintiff's lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A memorandum of points and authorities in support of defendants' motion is attached.

Dated:  May 17, 2016

Respectfully Submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
    General

MARCIA BERMAN
Assistant Director, Federal Programs
    Branch

/s/ *Adam Grogg*
ADAM GROGG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
phone: (202) 514-2395
fax: (202) 616-8470
email: adam.a.grogg@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

GAYLE NIX JACKSON,

*Plaintiff*,

v.

No. 15-cv-2035

UNITED STATES OF AMERICA, *et al.*,

*Defendants*.

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ...........................................................................................................1

ALLEGATIONS OF THE COMPLAINT........................................................................2

STANDARD OF REVIEW ..............................................................................................4

ARGUMENT ...................................................................................................................5

I.   THE COURT LACKS JURISDICTION BECAUSE PLAINTIFF LACKS STANDING .......5

II.  THE COURT ALSO LACKS JURISDICTION BECAUSE CONGRESS HAS NOT
     WAIVED THE GOVERNMENT'S SOVEREIGN IMMUNITY FOR PLAINTIFF'S
     CLAIMS ....................................................................................................................8

     A.  The Waivers Of Sovereign Immunity Plaintiff Invokes Do Not Apply To Her Claims .....9

     B.  Plaintiff Cannot Rely On The Tucker Act To Waive Sovereign Immunity For Her
         Takings Claim .......................................................................................................11

         1.  The Tucker Act Vests Exclusive Jurisdiction Over Plaintiff's Takings Claim In The
             Court Of Federal Claims ...................................................................................11

         2.  Plaintiff's Takings Claim Is Barred By The Tucker Act's Statute of Limitations ......12

     C.  Plaintiff Cannot Rely On The Federal Tort Claims Act To Waive Sovereign Immunity
         For Her Replevin Claim Because She Has Failed To Comply With That Act's Exhaustion
         Requirement .........................................................................................................14

III. PLAINTIFF'S REPLEVIN CLAIM MUST BE DISMISSED FOR FAILURE TO STATE
     A CLAIM .................................................................................................................17

     A.  Plaintiff's Replevin Claim Is Barred By The FTCA's Statute of Limitations...................17

     B.  The JFK Act Preempts Plaintiff's Replevin Claim ...................................................18

CONCLUSION ...............................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ablah v. Eyman,*
  365 P.2d 181 (Kan. 1961) ............................................................................................ 14

*Advanced Management Technology, Inc. v. FAA,*
  211 F.3d 633 (D.C. Cir. 2000) ....................................................................................... 7

*Allen v. Wright,*
  468 U.S. 737 (1984) ......................................................................................................... 5

*Anderson v. Carter,*
  802 F.3d 4 (D.C. Cir. 2015) ........................................................................................... 8

*Andrus v. Allard,*
  444 U.S. 51 (1979) ........................................................................................................... 6

\* *Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ................................................................................. 5, 6, 7

*Assassination Archives & Research Center v. DOJ,*
  43 F.3d 1542 (D.C. Cir. 1995) ................................................................................ 4, 18

*Audio Odyssey, Ltd. v. Brenton First National Bank,*
  245 F.3d 721 (8th Cir. 2001) ......................................................................................... 6

*Bregman v. Perles,*
  747 F.3d 873 (D.C. Cir. 2014) ....................................................................................... 2

*Cofield v. United States,*
  64 F. Supp. 3d 206 (D.D.C. 2014) ............................................................................... 9

*CRV Enterprises, Inc. v. United States,*
  626 F.3d 1241 (Fed. Cir. 2010) ................................................................................ 6, 7

*Center For National Security Studies v. DOJ,*
  331 F.3d 918 (D.C. Cir. 2003) ..................................................................................... 19

*Daniels v. Williams,*
  474 U.S. 327 (1986) ....................................................................................................... 12

*Expeditions Unlimited Aquatic Entersprises, Inc. v. Smithsonian Institution,*
  566 F.2d 289 (D.C. Cir. 1977) ................................................................................ 14, 15

*Felman Production, Inc. v. Bannai*,
    No. 3:06-cv-644, 2007 WL 3244638 (S.D. W.Va. Nov. 1, 2007) ............................................ 7

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996) .................................................................................... 13, 18

\* *GAF Corp. v. United States*,
    818 F.2d 901 (D.C. Cir. 1987) ................................................................................ 10, 15, 16

*Geronimo v. Obama*,
    725 F. Supp. 2d 182 (D.D.C. 2010) ........................................................................................ 9

*Germano v. United States*,
    No. 2:14-cv-6330, 2015 WL 4138997 (D.N.J. July 9, 2015) ................................................ 15

*Gomez v. U.S. Department of the Army*,
    573 F. Supp. 2d 188 (D.D.C. 2008) ...................................................................................... 14

*Havens v. Mabus*,
    759 F.3d 91 (D.C. Cir. 2014) .......................................................................................... 11, 12

*Hemingway v. State & Federal Government*,
    561 F. App'x 12 (D.C. Cir. 2014) .......................................................................................... 17

*Henderson v. Ratner*,
    No. 10-5035, 2010 WL 2574175 (D.C. Cir. June 7, 2010) ................................................... 17

*Hidalgo v. FBI*,
    344 F.3d 1256 (D.C. Cir. 2003) ........................................................................................ 9, 10

*Hodel v. Irving*,
    481 U.S. 704 (1987) ................................................................................................................ 8

*Horne v. Department of Agriculture*,
    133 S. Ct. 2053 (2013) ......................................................................................................... 11

*Humane Society v. Vilsack*,
    797 F.3d 4 (D.C. Cir. 2015) ................................................................................................ 5, 7

\* *Institute for Policy Studies v. CIA*,
    885 F. Supp. 2d 120 (D.D.C. 2012) .............................................................................. 9, 10, 15

*Irving v. Clark*,
    758 F.2d 1260 (8th Cir. 1985) ................................................................................................ 8

*James v. Jacksonville Bulk Mail Center,*
 No. 3:06-cv-1120, 2009 WL 2901197 (M.D. Fla. Sept. 4, 2009)............................................. 14

*Jerome Stevens Pharmaceuticals, Inc. v. FDA,*
 402 F.3d 1249 (D.C. Cir. 2005) ................................................................................................ 7

*Johnson v. Smithsonian Institution,*
 189 F.3d 180 (2d Cir. 1999)...................................................................................................... 15

*Jost v. U.S. Post Office,*
 No. 1:05-cv-1360, 2007 WL 1517695 (E.D. Cal. May 22, 2007)............................................ 15

*Kokkonen v. Guardian Life Insurance Co. of America,*
 511 U.S. 375 (1994)................................................................................................................ 5, 8

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555 (1992).................................................................................................................... 6

*Lyman Rice, Inc. v. Albion Mobile Homes, Inc.,*
 933 N.Y.S.2d 471 (N.Y. App. Div. 2011) ................................................................................. 8

\* *Mac'Avoy v. The Smithsonian Institution,*
 757 F. Supp. 60 (D.D.C. 1991) .......................................................................................... 14, 15

*McNeil v. United States,*
 508 U.S. 106 (1993).................................................................................................................. 16

*Mensah-Yawson v. Raden,*
 No. 14-cv-1948, 2016 WL 1091064 (D.D.C. Mar. 21, 2016) .................................................. 17

*Mildenberger v. United States,*
 643 F.3d 938 (Fed. Cir. 2011).......................................................................................... 12, 13

*Preseault v. ICC,*
 494 U.S. 1 (1990)...................................................................................................................... 11

*Remmie v. Mabus,*
 898 F. Supp. 2d 108 (D.D.C. 2012) ................................................................................... 10, 11

*Rodriguez v. Editor in Chief,*
 285 F. App'x 756 (D.C. Cir. 2008) ........................................................................................... 17

*Saddler v. D'Ambrosio,*
 759 F. Supp. 4 (D.D.C. 1990) ................................................................................................... 14

*Sexton v. United States,*
    832 F.2d 629 (D.C. Cir. 1987) ........................................................................ 18

*Sigler v. LeVan,*
    485 F. Supp. 185 (D. Md. 1980) ....................................................................... 8

*Simpkins v. District of Columbia Government,*
    108 F.3d 366 (D.C. Cir. 1997) ........................................................................ 17

*Singeleton v. Department of the Army,*
    No. 07-cv-303, 2007 WL 2601934 (D.D.C. Sept. 6, 2007) .................................. 14

*Sissel v. U.S. Department of Health & Human Services,*
    760 F.3d 1 (D.C. Cir. 2014) ...................................................................... 5, 12

*Smalls v. United States,*
    471 F.3d 186 (D.C. Cir. 2006) ........................................................................ 11

*Smith v. United States,*
    -- F. Supp. 3d --, 2016 WL 370702 (D.D.C. 2016) ............................................ 16

*Soriano v. United States,*
    352 U.S. 270 (1957) ........................................................................................ 8

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .......................................................................................... 6

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) ......................................................................... 9

*Tootle v. Secretary of the Navy,*
    446 F.3d 167 (D.C. Cir. 2006) ....................................................................... 14

*United States v. Kubrick,*
    444 U.S. 111 (1979) ...................................................................................... 18

* *United States v. Kwai Fun Wong,*
    135 S. Ct. 1625 (2015) ............................................................................. 12, 17

*United States v. Mitchell,*
    463 U.S. 206 (1983) ........................................................................................ 8

*United States v. Mottaz,*
    476 U.S. 834 (1986) ................................................................................... 9, 10

*Verma v. United States*,
    19 F.3d 646 (D.C. Cir. 1994) ................................................................................. 15

*Williams v. City of Detroit*,
    No. 06-cv-12809, 2008 WL 4239220 (E.D. Mich. Sept. 11, 2008) ......................................... 8

## UNITED STATES CONSTITUTION

U.S. Const., art. III, § 2 ......................................................................................... 5

## STATUTES

5 U.S.C. § 552 ................................................................................................ 9, 10

5 U.S.C. § 702 ................................................................................................ 9, 10

28 U.S.C. § 1331 ................................................................................................ 9

28 U.S.C. § 1346 .......................................................................................... 10, 11, 14

28 U.S.C. § 1491 .............................................................................................. 10, 11

28 U.S.C. § 1631 .......................................................................................... 12, 13, 14

28 U.S.C. § 2501 ................................................................................................ 12

28 U.S.C. § 2675 ................................................................................................ 16

Federal Records Act,
    44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24 ............................................................ 18

President John F. Kennedy Assassination Records Collection Act of 1992,
    Pub. L. No. 102-526, 106 Stat. 3443, *codified at* 44 U.S.C. § 2107 note ................ 4, 13, 18, 19

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12 ...................................................................................................... 1, 4, 5, 17

## REGULATIONS

28 C.F.R. § 14.2 ................................................................................................ 16

## EXECUTIVE ORDERS

Exec. Order No. 11,130, 28 Fed Reg. 12,789 (1963) ..................................................... 3

**MISCELLANEOUS**

Black's Law Dictionary (10th ed. 2014) .................................................................................... 14

Gayle Nix Jackson, Gayle on Her Grandfather,
    http://gaylenixjackson.com/about-orville-nix/.......................................................................... 5

## INTRODUCTION

In her complaint, plaintiff seeks the return of, or compensation from the United States for, an original film of the assassination of President John F. Kennedy that her grandfather made in 1963. Plaintiff claims that the government has or should have the film but she concedes that its whereabouts are unknown. Plaintiff's complaint fails as a matter of law for threshold reasons, including lack of standing, lack of a waiver of sovereign immunity, and the expiration of the pertinent statutes of limitations.

Plaintiff lacks standing for the basic reason that she has not pleaded any facts to show that she has a rightful claim of ownership to her grandfather's film. As such, she has not established an injury-in-fact, an essential element of Article III standing. Even if plaintiff had standing, her takings claim—which alleges that the government took her grandfather's film without just compensation in 1978, and which demands payment to the tune of $10 million—must be presented in the first instance to the Court of Federal Claims; the Tucker Act bars this Court from adjudicating it. And yet transfer to the Court of Federal Claims would be futile because the Tucker Act's statute of limitations has expired, depriving that court of jurisdiction as well. Finally, plaintiff's replevin claim—which seeks the film itself from the National Archives, even though the Archives has told plaintiff that it does not have the film—sounds in tort, and yet plaintiff has not pleaded compliance with the Federal Tort Claims Act's mandatory exhaustion requirement. In addition, that Act's statute of limitations has also long run, and in any event, another law—the President John F. Kennedy Assassination Records Collection Act of 1992— would preempt plaintiff's replevin claim.

Accordingly, the Court should dismiss this action.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Gayle Nix Jackson is the granddaughter of Orville Orhel Nix, who filmed the

assassination of President Kennedy in Dallas, Texas, on November 22, 1963. Compl. ¶¶ 1, 4, 8,

11-13. Plaintiff alleges that she is the rightful owner of Mr. Nix's "camera-original" film—*i.e.*,

the 8mm Kodachrome film that was in Mr. Nix's camera when he filmed the assassination. *Id.*

¶¶ 4, 19 & n.3, 20, 53.[1]

According to plaintiff, Mr. Nix left the film for processing at a photo lab in Dallas on

November 30, 1963, *id.* ¶ 16, and picked it up the next day, *id.* ¶ 19. He turned it over to the FBI,

which made a copy and then returned the film to him on December 4, 1963. *Id.* ¶ 20. Around that

same time, a representative of United Press International ("UPI") inquired about purchasing the

film from him. *Id.* ¶ 22. On December 6, 1963, Mr. Nix flew to New York with the film to meet

with UPI and another potential buyer. *Id.* ¶¶ 24-25.

> Following a one-hour meeting and several further viewings of the film at UPI, the
> original film was finally sold for $5,000. Mr. Nix requested that the film be
> returned to his family after some time and [Burt Reinhardt, UPI's representative,]
> stated he would return it in 25 years . . . . Mr. Reinhardt agreed to the terms and
> the two men sealed the deal with a handshake. There was no written agreement
> provided to Mr. Nix. The camera-original Nix film has never again been seen by a
> member of the Nix family.

*Id.* ¶ 25; *see id.* ¶ 37 (referencing UPI's alleged "promise and agreement with Mr. Nix to return

the . . . film after 25 years"); *id.* ¶ 39 (similar). Around December 10, 1963, "Mr. Nix received a

---

[1] At various points, plaintiff also refers to an "original, first-generation 8mm *print*" of the film,
Compl. ¶ 41 (emphasis added); to a different "original *print*" of the film, *id.* (emphasis added);
and to any number of copies of the film, *id.* ¶¶ 1, 21, 27, 30, 38, 41. These references complicate
the chain of custody that the complaint attempts to set forth. In what follows, unless otherwise
noted, references to the "film" refer to the camera-original that defendants understand plaintiff to
be seeking, and not to any prints ("original" or otherwise) or copies. In addition, for the purposes
of the present motion only, defendants have taken plaintiff's well-pleaded factual allegations as
true and have attempted to grant her "the benefit of all reasonable inferences derived from the
facts alleged." *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014).

copy of his film, a money order for $5,000 and a new fedora hat from UPI as agreed with the return of the original Nix film to take place 25 years later." *Id.* ¶ 27.[2]

Mr. Nix died on January 17, 1972. *Id.* ¶ 34. Plaintiff alleges that in 1978, the House Select Committee on Assassinations ("HSCA") obtained the original film in the course of its investigation into President Kennedy's assassination. *Id.* ¶ 35; *see id.* ¶ 47 (alleging that Robert Blakey, who was the Chief Counsel and Staff Director of the HSCA, has told plaintiff that the HSCA possessed the film). Plaintiff fails to allege how or from whom the HSCA obtained the film, but according to her narrative it would presumably have come from UPI.

In 1988—the year that UPI was to have given the film back to plaintiff's grandfather, *see id.* ¶ 25—plaintiff contacted UPI in an effort to secure the film's return to her family, seemingly to no success, *id.* ¶¶ 36-38. In 1991, UPI (or its successor) returned certain other materials to plaintiff but the film was not among them. *See id.* ¶ 39 & n.7. That same year, plaintiff contacted the FBI for any information about the missing film, apparently to no avail. *Id.* ¶ 41.

Plaintiff's hunt has allegedly continued to the present. *See id.* ¶ 40 (plaintiff "appeared on several national and local talk and magazine TV shows, . . . where she pleaded for the return of the . . . film"); *id.* ¶ 50 ("From 1998 to the present, Plaintiff has attempted to locate the . . . film . . . ."). Plaintiff alleges that the "HSCA was last in possession of the original Nix film in 1978 and its whereabouts since has been a mystery." *Id.* ¶ 6; *see id.* ¶¶ 45, 50, 59, 61 (claiming that the

---

[2] Although plaintiff alleges that the Warren Commission (1963-64) possessed the film, Compl. ¶¶ 1, 54, presumably she means that the Warren Commission possessed a *copy* of the film, because she explains that the FBI made a copy of the film when Mr. Nix provided it to the FBI briefly in 1963, *id.* ¶ 20, and that the Warren Commission reviewed a "copy of the . . . film" provided by the FBI, *id.* ¶ 30. In addition, the Warren Commission was established by President Lyndon B. Johnson on November 29, 1963, *see* Exec. Order No. 11,130, 28 Fed Reg. 12,789—just one week before Mr. Nix traveled to New York with the film, sold it to UPI, and allegedly never saw it again, Compl. ¶ 25.

HSCA last had possession of the film). Because the President John F. Kennedy Assassination Records Collection Act of 1992 provided for records pertaining to the assassination of President Kennedy, including those that had been in the possession of the HSCA, to be deposited with the National Archives and Records Administration ("NARA"), *id.* ¶¶ 1, 42-43,[3] plaintiff hypothesizes that NARA has, or should have, the film, *see id.* ¶¶ 1, 5, 46, 51, 54-55. NARA, however, told plaintiff in 2015 that it did not have the film. *Id.* ¶ 1; *see id.* ¶¶ 46 & n.8, 50. And as noted above, plaintiff concedes that the film's "whereabouts [are] unknown to this day." *Id.* ¶ 1.

Plaintiff filed the present suit against NARA and the United States on November 21, 2015. In her verified complaint, *see id.* at 17 (plaintiff's verification and signature), plaintiff brings a claim in replevin, seeking return of the film and production of any documents revealing its chain of custody, *see id.* ¶¶ 52-56; *id.*, Prayer for Relief ¶ 1, and a takings claim, seeking $10 million in compensation for the government's alleged taking of the film (or, if the film is returned, a portion thereof "for a partial taking for the loss of value during the time of its disappearance"), *see id.* ¶¶ 57-64; *id.*, Prayer for Relief ¶ 2.

## STANDARD OF REVIEW

Defendants move to dismiss all of plaintiff's claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and they additionally move to dismiss plaintiff's replevin claim for failure to state a claim under Rule 12(b)(6). Under Rule 12(b)(1), Plaintiff "bears the burden of invoking" this Court's "subject matter jurisdiction, including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900

---

[3] *See* President John F. Kennedy Assassination Records Collection Act of 1992 (the "JFK Act"), Pub. L. No. 102-526, 106 Stat. 3443, *codified at* 44 U.S.C. § 2107 note; *see also Assassination Archives & Research Ctr. v. DOJ*, 43 F.3d 1542, 1543-44 (D.C. Cir. 1995) (reviewing the JFK Act).

(2016).[4] "To survive a motion to dismiss for lack of standing" under Rule 12(b)(1), a complaint

must, among other things, "state a plausible claim that the plaintiff has suffered an injury in fact

. . . ." *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). To survive a motion to dismiss

for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Sissel v. U.S. Dep't

of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014), *cert. denied*, 136 S. Ct. 925 (2016).

Under both Rule 12(b)(1) and Rule 12(b)(6), courts accept "well-pleaded factual allegations as

true and draw all reasonable inferences from those allegations in the plaintiff's favor," but courts

neither "assume the truth of legal conclusions" nor "accept inferences that are unsupported by

the facts set out in the complaint." *Arpaio*, 797 F.3d at 19.

## ARGUMENT

## I.  THE COURT LACKS JURISDICTION BECAUSE PLAINTIFF LACKS STANDING

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited

jurisdiction, . . . and the burden of establishing the contrary rests upon" plaintiff. *Id.* One

limitation on federal courts' jurisdiction is Article III's case or controversy requirement. U.S.

Const., art. III, § 2; *see Allen v. Wright*, 468 U.S. 737, 750 (1984).

"The Art. III doctrine that requires a litigant to have standing to invoke the power of a

federal court is perhaps the most important of [the case-or-controversy] doctrines." *Allen*, 468

U.S. at 750. The "irreducible constitutional minimum of standing contains three elements": the

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

---

[4] Internal citations and alterations are omitted throughout unless otherwise noted.

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As to the "[f]irst and foremost" of

standing's three elements, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998),

"[i]njury in fact is the invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical," *Arpaio*, 797 F.3d at

19.

 Plaintiff has not established that she has a "legally protected interest" in her grandfather's

film. Only the rightful owner of the film has standing to demand compensation for its alleged

taking or to pursue its return via replevin. *See Andrus v. Allard*, 444 U.S. 51, 64 n.21 (1979) ("Of

course, there is no standing to assert a takings claim" where the property allegedly taken is

"owned by others."); *CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010)

("[i]t is well established that only persons with a valid property interest at the time of the taking"

have "standing" to seek "compensation" under the Takings Clause (collecting cases)); *Audio*

*Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 729 (8th Cir. 2001) (holding that

plaintiffs lacked standing to assert a replevin claim where it was a third party whose property

was taken), *reinstated upon reh'g en banc*, 286 F.3d 498 (8th Cir. 2002) (en banc).

 Plaintiff has not alleged any facts to establish that she is the present owner of the film.

Plaintiff merely alleges that she is Mr. Nix's granddaughter, Compl. ¶¶ 1, 4, 8, and that Mr. Nix

retained an ownership interest in the film after he leased it to UPI for 25 years in 1963, *id.* ¶ 25.

On that basis alone, she pleads the legal conclusions that she is now "the owner of the . . . film,"

*id.* ¶ 4, and is "entitled to [its] possession," *id.* ¶ 53; *see, e.g.*, *id.* ¶ 4, 7, 51, 54, 56, 58, 61

(referring to the film as plaintiff's "property"). But plaintiff provides no facts to support these

conclusions, remaining silent about how any alleged ownership interest in the film transferred

from Mr. Nix to her. Plaintiff does not allege that Mr. Nix transferred title to the film to her

before his death in 1972. Nor does she allege any facts concerning Mr. Nix's will or his estate, or

that of his heirs, or that of his heirs' heirs, etc. Indeed, plaintiff's complaint contains *no*

allegations as to how she allegedly came to own title to the film today. This does not suffice.

That plaintiff has not sustained her burden is further confirmed by the fact that, per her

own admission, she is not Mr. Nix's only grandchild. Gayle Nix Jackson, Gayle on Her

Grandfather, http://gaylenixjackson.com/about-orville-nix/ (last visited May 16, 2016) (stating

that Mr. Nix had three grandchildren, including plaintiff).[5] Indeed, even assuming that title to the

film passed from Mr. Nix to his sole son, Orville Nix, Jr., *see id.*; *see also* Compl. ¶ 24, when

Mr. Nix died—an assumption that itself is not "[]supported by the facts set out in the complaint,"

*Arpaio*, 797 F.3d at 19—Orville, Jr., might still be living, in which case he might still possess the

title. And even if he is also deceased, plaintiff is only one among many of his potential heirs.

These possibilities alone—and there are of course many others—confirm that plaintiff has not

pleaded "sufficient factual allegations to nudge" her claim of ownership "from conceivable to

plausible." *Humane Soc'y*, 797 F.3d at 8.

"Standing cannot be inferred argumentatively but rather must affirmatively appear in the

record." *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000). With no

factual allegations supporting plaintiff's claim of ownership to the film, this Court must dismiss

plaintiff's suit. *See, e.g.*, *CRV Enters., Inc.*, 626 F.3d at 1249 (affirming dismissal where

plaintiffs "lacked standing" to bring a takings claim because they "did not own the property");

*Felman Prod., Inc. v. Bannai*, No. 3:06-cv-644, 2007 WL 3244638, at *8 (S.D. W.Va. Nov. 1,

2007) (dismissing replevin claim for lack of standing where the claimant failed to sufficiently

---

[5] *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (courts "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction").

"allege that he own[ed]" the property); *Lyman Rice, Inc. v. Albion Mobile Homes, Inc.*, 89

A.D.3d 1488, 1489 (N.Y. App. Div. 2011) (affirming dismissal of replevin claim for lack of

standing where a third party "own[ed] the [property]").[6]

## II.  THE COURT ALSO LACKS JURISDICTION BECAUSE CONGRESS HAS NOT WAIVED THE GOVERNMENT'S SOVEREIGN IMMUNITY FOR PLAINTIFF'S CLAIMS

Even if plaintiff's allegations establish her standing to sue, her claims are barred by

sovereign immunity and therefore must still be dismissed for lack of jurisdiction.  "It is

axiomatic that the United States may not be sued without its consent and that the existence of

consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

Thus, "an action against the United States cannot surpass the barrier of sovereign immunity

without a statutory waiver. . . . Moreover, a waiver of the Government's sovereign immunity will

be strictly construed, in terms of its scope, in favor of the sovereign." *Anderson v. Carter*, 802

F.3d 4, 8 (D.C. Cir. 2015); *see Soriano v. United States*, 352 U.S. 270, 276 (1957)

("[L]imitations and conditions upon which the Government consents to be sued must be strictly

observed and exceptions thereto are not to be implied."). It is the plaintiff's burden to establish

the existence of a waiver, *see Kokkonen*, 511 U.S. at 377, and plaintiff has not met her burden

here.

---

[6] *Cf. Irving v. Clark*, 758 F.2d 1260, 1267 n.12 (8th Cir. 1985) (finding requisite injury-in-fact for takings claim where the plaintiff's "ancestor . . . died intestate and we *know* [the plaintiff] would have" inherited the property in question "absent the operation of [the challenged law]" (emphasis added)), *aff'd sub nom. Hodel v. Irving*, 481 U.S. 704, 711 (1987); *Williams v. City of Detroit*, No. 06-cv-12809, 2008 WL 4239220, at *2, 7 (E.D. Mich. Sept. 11, 2008) (finding standing to bring a takings claim where the plaintiffs included the property owner's estate); *Sigler v. LeVan*, 485 F. Supp. 185, 202 (D. Md. 1980) (finding standing to bring takings and replevin claims where the plaintiffs alleged "that title to the [property] vested in the plaintiffs after [the prior owner's] will was probated").

## A. The Waivers Of Sovereign Immunity Plaintiff Invokes Do Not Apply To Her Claims

Plaintiff purports to rely on the waiver of sovereign immunity in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the jurisdictional provision of the Freedom of Information Act ("FOIA"), *id.* § 552(a)(4)(B), *see* Compl. ¶ 2, but neither provision is relevant here.[7] While plaintiff "is absolute master of what jurisdiction [s]he will appeal to," it is not the statutes she cites that are determinative; rather, it is "the case made and relief demanded" in her complaint that counts. *See United States v. Mottaz*, 476 U.S. 834, 850 (1986). As to the case plaintiff attempts to make, she has not brought either an APA or a FOIA claim; accordingly, she has neither "ple[aded] the agency action needed for the APA's waiver of sovereign immunity to apply," *Geronimo v. Obama*, 725 F. Supp. 2d 182, 186 (D.D.C. 2010) (citing 5 U.S.C. § 702), nor alleged that she has "exhaust[ed] the appropriate administrative remedies" under the FOIA, *Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 154 (D.D.C. 2012); *see Hidalgo v. FBI*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) (although the FOIA's "exhaustion requirement is not jurisdictional[,] . . . failure to exhaust" nonetheless "precludes judicial review" (citing 5 U.S.C. § 552(a)(6)(A))).

Turning to the "relief [plaintiff] demand[s]," *Mottaz*, 476 U.S. at 850, neither the APA's waiver of sovereign immunity nor the FOIA's jurisdictional provision applies to her request for money damages, Compl., Prayer for Relief ¶ 2; *see* 5 U.S.C. § 702 (waiving sovereign immunity for "action[s] . . . seeking relief other than money damages"); *Cofield v. United States*, 64 F. Supp. 3d 206, 213 (D.D.C. 2014) ("no money damages are available under FOIA"). The same is true as to plaintiff's two requests, in replevin, for non-monetary relief: First, as to her request for

---

[7] Plaintiff also cites the general federal question jurisdiction statute, Compl. ¶ 2 (citing 28 U.S.C. § 1331), but that statute does not itself waive the government's sovereign immunity, *see Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996).

the film itself, Compl., Prayer for Relief ¶ 1, the Federal Tort Claims Act ("FTCA") precludes application of the APA's waiver of sovereign immunity, *see* Part II(C), *infra* (explaining that plaintiff's replevin claim sounds in tort and that plaintiff has not satisfied the FTCA's requirements); 5 U.S.C. § 702 (the APA does not waive sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought"). And the FOIA, which requires agencies to make "reproduc[tions]," not originals, available to requestors, *id*. § 552(a)(3)(B), does not apply to plaintiff's request for the film either. Second, as to plaintiff's request for any "documents related to [the film]," Compl., Prayer for Relief ¶ 1, "APA review is not available" because the "FOIA . . . provides an adequate remedy," *see Inst. for Policy Studies*, 885 F. Supp. 2d at 153-54 (citing 5 U.S.C. §§ 703, 704), and, in turn, plaintiff's "failure to exhaust precludes judicial review" under the FOIA, *see Hidalgo*, 344 F.3d at 1258-58.

In sum, neither the APA nor the FOIA applies here. Rather, the "essential features . . . of [plaintiff's] case," *Mottaz*, 476 U.S. at 850, reveal two potential sources of a waiver of sovereign immunity for plaintiff's claims: as to plaintiff's takings claim, the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, and as to plaintiff's replevin claim, the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq*. Both, however, are limited waivers, and apply only if a plaintiff fully complies with their conditions. *See, e.g.*, *Remmie v. Mabus*, 898 F. Supp. 2d 108, 116 (D.D.C. 2012) (Tucker Act); *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987) (FTCA). As explained below, because plaintiff has not satisfied either of the statutes' requirements, this Court lacks jurisdiction over her claims.

**B. Plaintiff Cannot Rely On The Tucker Act To Waive Sovereign Immunity For Her Takings Claim**

**1. The Tucker Act Vests Exclusive Jurisdiction Over Plaintiff's Takings Claim In The Court Of Federal Claims**

Plaintiff's takings claim, Compl. ¶¶ 57-64, demands $10 million in compensation for the alleged taking of the film, *see id.* ¶ 54; *id.*, Prayer for Relief ¶ 2. But the Tucker Act grants "*exclusive* jurisdiction" to the Court of Federal Claims over "non-tort [claims] against the United States," including takings claims, "seeking more than $10,000 in damages." *Havens v. Mabus*, 759 F.3d 91, 98 n.10 (D.C. Cir. 2014) (emphasis added) (citing 28 U.S.C. §§ 1346(a)(2), 1491(a)(1));[8] *see Preseault v. ICC*, 494 U.S. 1, 12 (1990). Congress may, by statute, "withdraw[] the Tucker Act grant of jurisdiction to the Claims Court," but it must "exhibit . . . an unambiguous intention" in order to do so. *Id*. Because Congress has not done so here, and because plaintiff's takings claim seeks well over $10,000 in damages, this Court lacks jurisdiction over it. *See Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) ("A claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in [another] statute."); *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) ("A claim is subject to the

---

[8] As this Court has explained:

> The Tucker Act actually consists of two parts: 28 U.S.C. § 1491, and 28 U.S.C. § 1346(a)(2), [the latter of] which is commonly known as the 'Little Tucker Act.' . . . The Tucker Act gives the Court of Federal Claims subject-matter jurisdiction over non-tort claims against the United States for money damages that are 'founded either upon the Constitution, or any act of Congress or any regulation of an executive department.' 28 U.S.C. § 1491(a)(1). The Little Tucker Act makes the jurisdiction of the Court of Federal Claims concurrent with the district court for civil actions or claims against the United States for $10,000 or less. . . . [*See id.*] § 1346(a)(2)[.]

*Remmie*, 898 F. Supp. 2d at 116.

Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or in essence

seeks more than $10,000 in monetary relief from the federal government.").[9]

### 2. Plaintiff's Takings Claim Is Barred By The Tucker Act's Statute of Limitations

Under other circumstances, this Court might determine that it would be "in the interest of

justice" to transfer plaintiff's takings claim to the Court of Federal Claims. 28 U.S.C. § 1631

("Transfer to cure want of jurisdiction"). Yet the Court cannot do so in this instance because

plaintiff's claim also could not have been brought in the Court of Federal Claims "at the time it

was filed" here, *id.*: the Tucker Act's six-year statute of limitations, *see* 28 U.S.C. § 2501,

expired long ago.

"[T]hat 6-year limit [is] jurisdictional and thus [is] not subject to equitable tolling."

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1634 (2015) (collecting cases); *see Havens*,

759 F.3d at 98 ("the Tucker Act's statute of limitations—codified at 28 U.S.C. § 2501—is a

condition on the United States' waiver of sovereign immunity and is therefore jurisdictional in

nature"). It begins to run "when the events giving rise to the Government's alleged liability have

occurred and the claimant is or should be aware of their existence." *Mildenberger v. United*

*States*, 643 F.3d 938, 945 (Fed. Cir. 2011). Plaintiff "filed this suit on [November 21, 2015].

Because [she] bear[s] the burden of establishing subject matter jurisdiction, [she] must

demonstrate that [she] could not have reasonably known the facts fixing the Government's

alleged liability prior to [November 21, 2009]." *Id.*

---

[9] In addition to the Fifth Amendment's Takings Clause, Plaintiff's complaint twice invokes, with no elaboration, that Amendment's Due Process Clause. Compl. ¶¶ 7, 60. Even if plaintiff had standing (which she does not, *see supra* Part I), and even if she had adequately pleaded a due process claim (which she has not, *see Sissel*, 760 F.3d at 4), it would fail as a matter of law. At most, plaintiff alleges that the government acted negligently, *e.g.*, Compl. ¶¶ 1, 54, 56; *id.* at 15 n.10, but due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to . . . property," *see Daniels v. Williams*, 474 U.S. 327, 328 (1986).

Plaintiff's pleading is fatal in this regard: "on its face," her verified complaint makes clear that her takings claim "is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Plaintiff claims that the alleged "taking commenced on or about 1978." Compl. ¶ 61. She then explains how her efforts to find the film, including through inquiries to the government, likewise commenced decades ago. She alleges that "[i]n 1991," UPI's successor "returned all material related to the Nix family except for the . . . film," *id.* ¶ 39, and she "called the Dallas FBI office to inquire whether it had any . . . information about the missing" film, *id.* ¶ 41. Then, "[f]rom 1998 to the present," plaintiff avers that "[she] has attempted [to] locate the . . . film" based on her belief that its last known whereabouts were "with the HSCA," *id.* ¶ 50; *see id.* ¶¶ 46-47. (As plaintiff acknowledges, the HSCA "completed its investigation in 1978 and issued its final report the following year," *id.* ¶ 6, and the 1992 JFK Act required that all agency records relating to the Kennedy assassination, including the HSCA's, be transmitted to the National Archives, *see id.* ¶¶ 42-43.) On these facts, plaintiff clearly cannot claim to have only learned of the government's alleged taking in 2009.

Nor could plaintiff "cure the deficiency" by alleging additional facts consistent with those in her verified complaint. *Firestone*, 76 F.3d at 1209. Where plaintiff has testified that, at least as of 1998 if not before, she believed that the government possessed the film, Compl. ¶ 50, no new allegations could possibly establish that she "could not have reasonably known the facts fixing the Government's alleged liability prior to [November 21, 2009]." *Mildenberger*, 643 F.3d at 945. As such, transfer to the Court of Federal Claims is not "in the interest of justice," 28 U.S.C. § 1631, and dismissal of plaintiff's takings claim "is warranted," *Firestone*, 76 F.3d at 1209; *see Tootle v. Sec'y of Navy*, 446 F.3d 167, 173 (D.C. Cir. 2006) ("§ 1631 confers on a federal court authority to make a single decision upon concluding that it lacks jurisdiction—whether to

dismiss the case or, in the interest of justice, to transfer it to a court *that has jurisdiction*"

(emphasis added)); *see, e.g.*, *Gomez v. U.S. Dep't of Army*, 573 F. Supp. 2d 188, 190-91 (D.D.C.

2008) (upon concluding that the Tucker Act deprived the court of jurisdiction over the plaintiff's

claim, dismissing the claim rather than transferring it to the Court of Federal Claims because the

statute of limitations had run); *Singeleton v. Dep't of Army*, No. 07-cv-303, 2007 WL 2601934,

at \*2 (D.D.C. Sept. 6, 2007) (same; noting that "transfer" under 28 U.S.C. § 1631 is not "in the

interest of justice" if "the action was not timely filed with the original court").

## C. Plaintiff Cannot Rely On The Federal Tort Claims Act To Waive Sovereign Immunity For Her Replevin Claim Because She Has Failed To Comply With That Act's Exhaustion Requirement

Replevin is a common law action "for the repossession of personal property wrongfully

taken or detained." Black's Law Dictionary (10th ed. 2014); *see Mac'Avoy v. The Smithsonian

Inst.*, 757 F. Supp. 60, 67 (D.D.C. 1991) ("The essence of the action[] is the wrongful

withholding of the property in question."). As this Court and other courts have held, "'[a]lthough

actions in replevin are restitutionary in character'"—*i.e.*, their "primary objective" is "the

restoration of possession of property"—"'they are nonetheless classified as tort actions.'" *Id.*

(quoting *Ablah v. Eyman*, 188 Kan. 665, 678 (1961)).[10] Accordingly, replevin claims "are

governed by the Federal Tort Claims Act." *Id.* (citing 28 U.S.C. § 1346(b); *Expeditions

Unlimited Aquatic Enters., Inc. v. Smithsonian Inst.*, 566 F.2d 289, 296 (D.C. Cir. 1977)).[11] Like

---

[10] *See, e.g.*, *Saddler v. D'Ambrosio*, 759 F. Supp. 4, 9 (D.D.C. 1990) ("An action in replevin sounds in tort."); *James v. Jacksonville Bulk Mail Ctr.*, No. 3:06-cv-1120, 2009 WL 2901197, at \*5 (M.D. Fla. Sept. 4, 2009) (same).

[11] *See, e.g.*, *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) (holding that the FTCA "govern[ed] the plaintiff's [conversion and replevin] claims against the Smithsonian" (citing *Expeditions Unlimited*, 566 F.2d at 296; *Mac'Avoy*, 757 F. Supp. at 67-68)); *Germano v. United States*, No. 2:14-cv-6330, 2015 WL 4138997, at \*6 (D.N.J. July 9, 2015) ("Replevin actions against the United States are governed by the Federal Tort Claims Act . . . ." (citing

the Tucker Act, the FTCA is a "limited waiver of the United States' sovereign immunity." *GAF Corp.*, 818 F.2d at 904. Therefore, "absent full compliance with the conditions the Government has placed upon its waiver, courts lack jurisdiction to entertain tort claims against it." *Id.*

In *Mac'Avoy*, for example, the plaintiff claimed "that the Smithsonian [was] in possession of certain paintings and drawings" that it "refused to the alleged true and rightful owner, namely, the plaintiff," 757 F. Supp. at 66, and the plaintiff brought an action in replevin seeking the return of the artwork, *see id.* at 64. Plaintiff's replevin claim here is nearly identical: she alleges that the government is in possession of the film, *e.g.*, Compl. ¶ 54, and that she is its rightful owner, *e.g.*, *id.* ¶ 53; she seeks "its return without further delay," *e.g.*, *id.* ¶ 55.[12] As in *Mac'Avoy*, therefore, plaintiff must comply with the FTCA's requirements in order to press her replevin claim. *See* 757 F. Supp. at 67-68.

The FTCA requires plaintiffs to exhaust their administrative remedies prior to filing suit:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

---

*Verma v. United States*, 19 F.3d 646, 647 (D.C. Cir. 1994))); *Jost v. U.S. Post Office*, No. 1:05-cv-1360, 2007 WL 1517695, at *1 (E.D. Cal. May 22, 2007) (similar), *aff'd*, 412 F. App'x 957 (9th Cir. 2011).

[12] Seemingly as part of her replevin claim, plaintiff also demands that the government "produce all documents related to the [film] including any chain of custody, index or its whereabouts if it cannot be found." Compl., Prayer for Relief ¶ 1. But plaintiff has not alleged that any such documents have been wrongfully taken or detained, as would be required to pursue an action in replevin. *See Mac'Avoy*, 757 F. Supp. at 67. In any event, no common law replevin claim would lie because, as noted above, the "FOIA . . . provides an adequate remedy" for plaintiff to pursue this request. *See Inst. for Policy Studies*, 885 F. Supp. 2d at 153-54.

28 U.S.C. § 2675(a). Exhaustion is a jurisdictional requirement that plaintiffs bear the burden of establishing, *see GAF Corp.*, 818 F.2d at 917-20, and a plaintiff's "fail[ure] to heed" the FTCA's "clear statutory command" warrants dismissal of his or her claim, *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Congress included the exhaustion requirement in the FTCA to "enable the agency to investigate and ascertain the strength of a claim" and "to determine whether settlement or negotiations . . . are desirable." *GAF Corp.*, 818 F.2d at 920. To satisfy the requirement, a claimant must "file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *Id.* at 919;[13] *accord, e.g.*, *Smith v. United States*, -- F. Supp. 3d --, 2016 WL 370702, at *3 (D.D.C. 2016) (noting that "the presentment requirement is hardly onerous").

Plaintiff's complaint contains no indication that she has satisfied the FTCA's claim presentment requirement. Although, as recounted above, plaintiff has described her efforts to locate the film since the late 1980s, including by making inquiries of the FBI and NARA, she has not claimed to have presented any government agency with a demand that satisfies the FTCA's well-established requirements. Her replevin claim must therefore be dismissed for lack of jurisdiction. *See, e.g.*, *Hemingway v. State & Fed. Gov't*, 561 F. App'x 12, 13 (D.C. Cir. 2014) (per curiam) (affirming dismissal of FTCA claim where the plaintiff had failed "to satisfy the exhaustion requirement of the [FTCA], a prerequisite to filing an FTCA complaint in district

---

[13] *See* 28 C.F.R. § 14.2(a) ("a claim shall be deemed to have been presented" under the FTCA "when a Federal agency receives from a claimant, his duly authorized agent or legal representative, a . . . written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative").

court"); *Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010)

(per curiam) (similar); *Rodriguez v. Editor in Chief*, 285 F. App'x 756, 759 (D.C. Cir. 2008)

(affirming dismissal of FTCA claim where the plaintiff's "complaint fail[ed] to demonstrate that

he exhausted his administrative remedies as to each of his FTCA claims"); *Mensah-Yawson v.*

*Raden*, 14-cv-1948, 2016 WL 1091064, at *7 (D.D.C. Mar. 21, 2016) (dismissing FTCA claim

for lack of subject matter jurisdiction where the plaintiff had "not exhausted his administrative

remedies prior to filing [his] lawsuit").

### III. PLAINTIFF'S REPLEVIN CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.  Plaintiff's Replevin Claim Is Barred By The FTCA's Statute of Limitations

"[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction,

it can proceed no further." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997). Yet even

if this Court determines that it has subject matter jurisdiction over plaintiff's replevin claim,

dismissal would still be required under Federal Rule of Civil Procedure 12(b)(6) because the

FTCA's statute of limitations has expired. The FTCA "provides that a tort claim against the

United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency

within two years after such claim accrues' and then brought to federal court 'within six months'

after the agency acts on the claim." *Kwai Fun Wong*, 135 S. Ct. at 1629 (quoting 28 U.S.C.

§ 2401(b)). While the FTCA's statute of limitations is "nonjurisdictional and subject to equitable

tolling," *id.* at 1638, for the same reasons that plaintiff's takings claim is time-barred, *see supra*

Part II(B)(2), plaintiff's replevin claim is as well.

Similar to claims under the Tucker Act, claims under the FTCA accrue "by the time a

plaintiff 'has discovered both his injury and its cause.'" *Sexton v. United States*, 832 F.2d 629,

633 (D.C. Cir. 1987) (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). As described

above, in her verified complaint, plaintiff claims that the government obtained the film in 1978,

Compl. ¶ 61; that she began looking for it in 1988, *id.* ¶ 36; and that she contacted the FBI about

the "missing original" in 1991, *id.* ¶ 41. She also pleads awareness of the 1992 JFK Act, which

she characterizes as having "required the expeditious public transmission to NARA . . . of all

assassination records," including those that had been in the possession of the HSCA. *Id.* ¶ 42.

Finally, she avers that, "[f]rom 1998 to the present, [she] has attempted [to] locate the . . . film

with the last known chain of custody of the . . . film residing with the HSCA." *Id.* ¶ 50. Plaintiff,

therefore, knew of both her alleged injury and the government's alleged liability at least as of

1998, if not a decade before. Yet she has not claimed to have ever presented an FTCA claim to a

federal agency, much less to have filed the present lawsuit within six months after the denial of

such a claim. As with her takings claim, plaintiff's replevin claim is "conclusively time-barred"

and subject to dismissal even if this Court had jurisdiction over it. *Firestone*, 76 F.3d at 1209.

### B.  The JFK Act Preempts Plaintiff's Replevin Claim

The JFK Act provides yet another reason why plaintiff's replevin claim fails as a matter

of law. Unlike, for example, the Federal Records Act, 44 U.S.C. §§ 2101-18, 2901-09, 3101-07,

3301-24, which permits for the "alienat[ion]" of federal records under certain circumstances, *see*

*id.* §§ 3314 *et seq.*, the JFK Act makes no provision for the Archivist of the United States to

dispose of any assassination records, *see id.* § 2107 note; *see also Assassination Archives &*

*Research Ctr.*, 43 F.3d at 1543-44. To the contrary, the JFK Act requires assassination records to

be "preserved, protected, archived, and made available to the public at the National Archives,"

effectively  preventing NARA from releasing the actual assassination records in NARA's

collection to plaintiff or anyone else. 44 U.S.C. § 2107 note, § 4(d)(1); *see id.* § 2107 note, § 9(c)

(providing for public disclosure of assassination records).

NARA has told plaintiff that it does not have the film. Compl. ¶ 1. Yet even if NARA did have the film, it would be an assassination record under the JFK Act, *see* 44 U.S.C. § 2107 note, § 3(2), (11), § 5(a)(4), and the Act would preempt plaintiff's common law replevin claim seeking its return, *see id.* § 2107 note, § 11(a) ("When this Act requires transmission of a record to the Archivist or public disclosure, it shall take precedence over any other law . . ., judicial decision construing such law, or common law doctrine that would otherwise prohibit such transmission or disclosure . . . ."); *cf. Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 936-37 (D.C. Cir. 2003) (holding that the FOIA preempts common law claims seeking agency records).

## CONCLUSION

For all the foregoing reasons, defendants respectfully request that the Court dismiss all of plaintiff's claims.

Dated:   May 17, 2016

Respectfully Submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
    General

MARCIA BERMAN
Assistant Director, Federal Programs
    Branch

/s/ *Adam Grogg*
ADAM GROGG
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
phone: (202) 514-2395
fax: (202) 616-8470
email: adam.a.grogg@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2016, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Adam Grogg*
ADAM GROGG

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GAYLE NIX JACKSON, | |
| *Plaintiff*, | |
| v. | No. 15-cv-2035 |
| UNITED STATES OF AMERICA, *et al.*, | |
| *Defendants*. | |

**[PROPOSED] ORDER**

Upon consideration of defendants' Motion to Dismiss, it is hereby

**ORDERED** that defendants' Motion is **GRANTED**; and it is further

**ORDERED** that this case is **DISMISSED**.

**SO ORDERED.**

_____                    _____
Date                                                              United States District Judge

## **NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER**

Pursuant to LCvR 7(k), the following attorneys are entitled to be notified of the entry of

the foregoing:

Athan T. Tsimpedes
1200 New Hampshire Ave. NW, Suite 725 A
Washington, D.C.  20036
phone: (202) 464-9910
email: athan@tsimpedeslaw.com

Adam Grogg
Trial Attorney, U.S. Department of Justice, Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
phone: (202) 514-2395
fax: (202) 616-8470
email: adam.a.grogg@usdoj.gov