# EXHIBIT 29

)
**GAIL NIX JACKSON,**                  )
                                       )
                                       )
**Plaintiff,**                         )
                                       )
**v.**                                 )   **Case No: 15-cv-2035-RCL**
                                       )
**UNITED STATES OF AMERICA, et al.,**  )
                                       )
                                       )
**Defendants.**                        )
                                       )

## MEMORANDUM OPINION

## I.    INTRODUCTION

On November 22, 1963, in what has become a defining moment of modern American history, President John F. Kennedy was shot and killed while riding in a motorcade through Dealey Plaza in Dallas, Texas, while surrounded by onlookers. In this crowd stood several citizens filming the presidential motorcade before, during, and after the assassination. The films shot by such individuals became significantly important to both investigators, such as the Warren Commission, and to the American people for decades to come. Nearly every American is aware of the most famous of these—the Zapruder film, which clearly captured the fatal shot—and younger generations are taught about it in their history classes. Underscoring its significance, in 1999 the United States government was ordered to pay the family of Abraham Zapruder $16 million for the film, which it had retained since 1978, calling it a "unique historical item of unprecedented worth."

A much lesser known video of the assassination and the ensuing aftermath was filmed by Orville Nix (the "Nix film"). Like the Zapruder film, it eventually made its way into the possession of the United States government, which used the film in its investigation of the assassination. The

granddaughter of Mr. Nix, Gayle Nix Jackson, who now brings this lawsuit to recover the Nix film from the government or for just compensation in the amount of $10 million, argues that the Nix film is nearly as important as the Zapruder film. She brings claims for replevin and for taking without just compensation.

The government has moved to dismiss based on lack of standing, lack of jurisdiction, and failure to state a claim. The Court finds that it lacks subject matter jurisdiction over both of Ms. Jackson's claims and will accordingly dismiss this case.

## II. BACKGROUND

The Nix film, shot from the corner of Main and Houston Streets in Dealey Plaza, captured the presidential motorcade entering Dealey Plaza, the fatal shot to President Kennedy (from behind and to the left of the President, with the grassy knoll in the background), and the aftermath of the assassination.[1] On December 1, 1963, Mr. Nix delivered the developed film to the office of Gordon Shanklin, head of the FBI field office in Dallas. Four days later, a copy of the film made for the FBI was sent to FBI headquarters. During this time, United Press International ("UPI"), Time, and other media outlets sought to purchase film of the assassination. While the Nix film was in the possession of the FBI in Dallas, Mr. Nix was contacted by Life magazine and also met with Burt Reinhardt, the general manager of UPI's newsfilm division. On December 6, 1963, Mr. Nix sold the original film to UPI for $5,000, and Mr. Reinhardt agreed that he would return the film to Mr. Nix's family in 25 years. The FBI then used a copy of the Nix film to study the assassination and the Warren Commission used the film in its investigation. On January 17, 1972, Mr. Nix passed away.

---

[1] The facts described in this section are taken from the plaintiff's complaint and, for the purposes of this motion to dismiss, are to be considered true.

In 1988, 25 years after Mr. Nix sold his original film to UPI, plaintiff Gayle Nix Jackson made inquiries to UPI in an effort to have the original Nix film and copyrights returned to the Nix family per the agreement between Mr. Nix and Mr. Reinhardt, who confirmed the agreement. In 1991, UPI's successor returned all material related to the film to the Nix family except the original Nix film. Since 1988, Ms. Jackson has been attempting to find the missing original film. In 2014, Ms. Jackson learned that in 1978 the United States House Select Committee on Assassinations ("HSCA") obtained the original Nix film and used it in its investigation of the Kennedy assassination. After the HSCA completed its tenure, the Nix film was to be accounted for and stored by the National Archives and Records Administration ("NARA"), including an index of the chain of custody. In 2015, Ms. Jackson requested the original film and the chain of custody index from the NARA. The NARA told Ms. Jackson that it never possessed the original film and that it had no information about it from the HSCA. It also stated that the chain of custody index was missing. The original film and the chain of custody index remain missing to this day.

In 1992, President George W. Bush signed into law the John F. Kennedy Records Collection Act, which sought to preserve all records related to the assassination of President Kennedy, and which required the disclosure and transmission of all assassination records to the National Archives and Records Administration ("NARA"). As defined by the Act, "assassination records" included the Nix film. According to the Act, the NARA is directed to release media and film related to the assassination in October of 2017. Ms. Jackson contends that it is at this time that a proper accounting and inventory of the HSCA and/or NARA records including the original Nix film will be produced if such records exist. Otherwise, a permanent taking of the film has taken place.

Ms. Jackson raises two causes of action in this lawsuit. First, she raises a claim for replevin, contending that she is the owner of the Nix film, that the film's value is at least $10 million, and that the government is the last known possessor of the film but has failed to produce the film, acting with ignorance, negligence, omission, or concealment. She also raises a claim under the Fifth Amendment for taking of private property for public purpose without just compensation. She argues that the government possessed the film and had a duty to protect and preserve it, but lost it or allowed it to be stolen or destroyed.

The government raises several grounds for dismissal, the most relevant of which are failure to exhaust administrative remedies for the replevin claim, and lack of jurisdiction over the takings claim. The Court will address each in turn.

## III.    MS. JACKSON HAS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES WITH RESPECT TO HER REPLEVIN CLAIM

Ms. Jackson's replevin claim is brought pursuant to the Federal Tort Claims Act,[2] which waives sovereign immunity and gives district courts jurisdiction to hear tort claims brought against the government. *See* 28 U.S.C. 1346(b)(1). The FTCA requires plaintiffs to first exhaust their administrative remedies before filing suit in court; the plaintiff must have "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). To meet the exhaustion requirement, a plaintiff must have filed "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987). This "enable[s] the agency to

---

[2] Replevin is a common law action for "the repossession of personal property wrongfully taken or detained by the defendant." Black's Law Dictionary (10th ed. 2014). Replevin actions are classified as torts and are governed by the FTCA. *See Mac'Avoy v. The Smithsonian Inst.*, 757 F. Supp. 60, 67 (D.D.C. 1991). Ms. Jackson concedes that her replevin claim is brought under the FTCA. *See* Pl.'s Opp'n at 6, 8, ECF No. 21.

investigate and ascertain the strength of a claim" and "to determine whether settlement or negotiations to that end are desirable." *Id.* at 920. This is "a burden of notice, not substantiation, of claims." *Id.* at 919.

Plaintiffs bringing claims under the FTCA must fully comply with its provisions; "absent full compliance with the conditions the Government has placed upon its waiver [of sovereign immunity], courts lack jurisdiction to entertain tort claims against it." *Id.* at 904, 917–18. The "administrative exhaustion requirement [of the FTCA] is a jurisdictional prerequisite; and the Court lacks subject matter jurisdiction over common law tort claims against the United States for which a plaintiff has not exhausted his administrative remedies." *Hayes v. United States*, 539 F. Supp. 2d 393, 398–99 (D.D.C. 2008). Thus if a plaintiff has not exhausted her administrative remedies before initiating a civil action under the FTCA, the court must dismiss for lack of subject matter jurisdiction. *See Johnson v. Allen*, No. CIV.A. 04-0316(GK), 2005 WL 607911, at *2 (D.D.C. Mar. 14, 2005). Plaintiffs bear the burden of establishing jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Ms. Jackson's complaint does specifically allege that she exhausted her administrative remedies. It states that her "request and inquiry to the NARA for the index of the chain of custody of the original Nix film confirmed it was non-existent." Pl.'s Compl. at n.8, ECF No. 1. Her opposition brief states that she sent a letter (to an unidentified agency, but presumably the NARA) "requesting the original film and the index that would uncover who had it last and have it returned. Unfortunately the index is missing according to the NARA." Pl.'s Opp'n at 2. Her opposition brief does specifically not discuss exhaustion.

Ms. Jackson has failed to sustain her burden of showing that she exhausted her administrative remedies, and therefore that this Court has jurisdiction over her replevin claim.

5

Although she appears to allege that she at least had some contact with the NARA about the Nix film and chain of custody index, requesting that they be returned to her, she does not allege that she filed—with the NARA or any other agency—"(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp.*, 818 F.2d at 919. She does not allege submitting anything that would have allowed the agency to investigate her claim and determine whether to engage in settlement negotiations. *See id.* at 920. She does not allege that any such claim was "denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). Therefore, the Court finds that it lacks subject matter jurisdiction over Ms. Jackson's replevin claim due to failure to exhaust administrative remedies.[3]

## IV.   THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S TAKINGS CLAIM

The Tucker Act waives sovereign immunity for claims founded upon the Constitution, *i.e.*, takings claims under the Fifth Amendment. *See* 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346 (a)(2); *Clark v. Library of Cong.*, 750 F.2d 89, 104 n.31 (D.C. Cir. 1984). Under the Tucker Act, the United States Court of Federal Claims has exclusive jurisdiction over suits seeking more than $10,000 in damages. *See Havens v. Mabus*, 759 F.3d 91, 96 n.10 (D.C. Cir. 2014). Ms. Jackson's takings claim seeks more than $10,000; she seeks at least $10 million. This claim thus falls within the exclusive jurisdiction of the Court of Federal Claims and this Court has no jurisdiction to adjudicate this issue.[4]

---

[3] Ms. Jackson's arguments regarding equitable tolling are inapplicable. Tort claims, such as replevin, must be presented to the appropriate federal agency within two years after the claim accrues, and must be filed in court within six months of the agency's denial of the claim. *See* 28 U.S.C. § 2401. Any arguments regarding tolling are premature until it is shown that the plaintiff presented her claim to the agency, and then that claim was denied. At that point, if the plaintiff failed to present her claim within two years of accrual or within six months of denial, equitable tolling arguments may be considered.

[4] Ms. Jackson herself appears to acknowledge that that claims exceeding $10,000 fall within the exclusive jurisdiction of the Court of Federal Claims. *See* Pl.'s Opp'n at 3.

Ms. Jackson, characterizing her takings claim as an alternative to her replevin claim, asks that this Court stay consideration of her takings claim until a determination is made regarding whether she has been permanently deprived of her property. This determination will be made in October 2017, after the release of records by the NARA under the JFK Act. The government is correct, however, that "the rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997). Ms. Jackson has not presented any authority allowing this Court to proceed with respect to her takings claim given its determination that it lacks subject matter jurisdiction over the claim. It will therefore deny Ms. Jackson's request to stay. The Court will dismiss Ms. Jackson's takings claim for lack of subject matter jurisdiction.[5]

## V.    CONCLUSION

The Court concludes that it lacks subject matter jurisdiction over both of Ms. Jackson's claims. It lacks subject matter jurisdiction over Ms. Jackson's replevin claim because Ms. Jackson has failed to allege that she exhausted her administrative remedies. It lacks subject matter jurisdiction over Ms. Jackson's takings claim because exclusive jurisdiction over such a claim is vested in the Court of Federal Claims under the Tucker Act. This case shall be dismissed without prejudice.

A separate order accompanies this Memorandum Opinion.

Date: March 3¹, 2017

Royce C. Lamberth
United States District Court

---

[5] Ms. Jackson has requested that the Court allow her to dismiss her takings claim if she is denied a stay so that she may bring it in the Court of Federal Claims. The government asks that this Court dismiss Ms. Jackson's takings claim instead of transferring it to the Court of Federal Claims under 28 U.S.C. § 1631, which allows transfer to cure want of jurisdiction, because it argues that the takings claim is time-barred. It appears that both parties are essentially asking the Court to take the same action—dismiss the takings claim. The takings claim shall be dismissed without prejudice for lack of jurisdiction.